IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAURA LEE PETERSON, Individually and on Behalf of All Others Similarly Situated, and MATTHEW SMITH, HILARY FISHER, and JENNIFER CARGILE, <br><br> Plaintiffs, <br><br> v. <br><br> ALASKA COMMUNICATIONS SYSTEMS GROUP, INC. AND ALASKA COMMUNICATIONS SYSTEMS HOLDINGS, INC., <br><br> d/b/a ALASKA COMMUNICATIONS, <br><br> Defendants. | Case No. 3:12-cv-00090-TMB <br><br> ORDER |

## I. INTRODUCTION

Plaintiff Laura Lee Peterson, a former sales employee at Alaska Communications ("ACS"), sued ACS on behalf of herself, additional named plaintiffs, and a class of potential plaintiffs for allegedly violating the overtime provisions of the Fair Labor Standards Act ("FLSA"). Plaintiffs request the Court to conditionally certify the class by finding that the potential plaintiffs are similarly situated, as the FLSA requires. Plaintiffs also request the Court to toll the statute of limitations for the potential plaintiffs. Because the standard for conditional certification is lenient, and because Plaintiffs have provided evidence showing that the potential plaintiffs had similar job descriptions, were subject to similar compensation structures, were considered as a group to be exempt from FLSA requirements, and regularly worked overtime, the Court **GRANTS** Plaintiffs' motion for conditional certification **at Docket No. 61**. Because

1

the potential plaintiffs are not yet parties to this action, however, the Court **DENIES without prejudice** Plaintiffs' motion **at Docket No. 68** to toll the statute of limitations on their behalf.

## II. BACKGROUND

Plaintiff Laura Lee Peterson is a former employee of ACS. From 2004 until 2011 Peterson worked in sales. Peterson alleges that she predominantly worked more than forty hours per week during that period.[1] Peterson did not receive overtime compensation and she alleges that ACS misclassified sales positions, including her position, as being exempt from the overtime provisions of the FLSA and the Alaska Wage and Hour Act ("AWHA").[2] She further alleges that ACS "forces" its sales and marketing employees to complete false time sheets indicating that they do not work overtime hours.[3]

Peterson filed a wage claim with the Alaska Department of Labor and Workforce Development (the "Alaska DOL") in 2011. The Alaska DOL determined that Peterson was not exempt from the overtime provisions of the AWHA and was therefore entitled to overtime benefits; the Department declined to comment, however, as to whether Peterson was exempt as a matter of federal law under the FLSA.[4]

In 2012, Peterson filed the present suit against ACS on behalf of herself and a class of certain other employees, alleging violations of the FLSA and the AWHA. Peterson initially

---

[1] Dkt. 64 at ¶ 6.

[2] Dkt. 1 at ¶ 9.

[3] *Id.* at ¶ 6.

[4] Dkt. 63-1 at Ex. 1.

2

defined the class[5] as all persons who worked for ACS as a sales or marketing employee below the level of Vice President.[6] In 2013, however, after receiving additional information from ACS through the discovery process, Peterson and other named plaintiffs ("Plaintiffs") filed an Amended Complaint that narrowed the class definition to full-time ACS employees from ACS's Anchorage office whose primary job duties included selling ACS products and/or services.[7] The Amended Complaint also identified a list of non-exclusive job titles in the proposed class.[8]

Plaintiffs have now filed a motion asking the Court to conditionally certify the proposed class under the FLSA.[9] Plaintiffs have also filed a motion requesting the Court to toll the statute of limitations, which would otherwise run on the FLSA claims of class members not yet party to the suit.[10] The Court will address each of these motions in turn.

---

[5] Although actions under the FLSA are referred to as "collective actions" and not "class actions," the Court will adopt the nomenclature of other courts in denominating the group of potential plaintiffs as part of a "class."

[6] Dkt. 1 at ¶¶ 25, 35.

[7] Dkt. 52 at ¶ 45. The additional named plaintiffs (Matthew Smith, Hilary Fisher, and Jennifer Cargile) do not fall within the amended class definition, but they opted in to the suit before the definition changed and the Court allowed Peterson to file an amended complaint listing them as named parties. Dkt. 51.

[8] *Id.*

[9] Dkt. 61.

[10] Dkt. 68.

## III.   CONDITIONAL CERTIFICATION

*A.   LEGAL BACKGROUND*

The FLSA grants a private right of action to enforce its wage and overtime provisions.[11] This right extends to an employee's ability not just to bring an action on his or her own behalf, but also to bring a collective action on behalf of other employees that are "similarly situated."[12] Before an employee can proceed with a collective action, however, a court must determine that the other employees are in fact similarly situated – this is known as "certifying" the collective action.

Neither the FLSA nor the Ninth Circuit have defined the term "similarly situated" for purposes of certifying a collective action.[13] District courts in this circuit, however, have adopted a two-stage approach to certification.[14] At the first stage, often referred to as the "notice stage," the district court determines whether to certify the collective action for the sole purpose of notifying potential plaintiffs (the employees on whose behalf the suit was brought) of the suit,

---

[11] 29 U.S.C. § 216(b).

[12] *Id.*

[13] *E.g.*, *Nen Thio v. Genji, LLC*, No. 12-CV-05756 NC, 2014 WL 3884289, at *11 (N.D. Cal. Aug. 7, 2014); *Lillehagen v. Alorica, Inc.*, No. SACV 13-0092-DOC, 2014 WL 2009031, at *3 (C.D. Cal. May 15, 2014); *Daniels v. Aéropostale West, Inc.*, No. C 12-05755 WHA, 2013 U.S. Dist. LEXIS 59514, at *4 (N.D. Cal. Apr. 24, 2013).

[14] *E.g.*, *Lillehagen*, 2014 WL 2009031, at *3; *Troy v. Kehe Food Distributors, Inc.*, 276 F.R.D. 642, 649 (W.D. Wash. 2011); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466–67 (N.D. Cal. 2004). At least five courts of appeals have also adopted the two-stage approach. *See White v. Baptist Mem'l Health Care Corp.,* 699 F.3d 869, 877 (6th Cir. 2012); *Myers v. Hertz Corp.,* 624 F.3d 537, 554–55 (2d Cir. 2010); *Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 915 n.2 (5th Cir. 2008); *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1260 (11th Cir. 2008); *Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1105 (10th Cir. 2001).

4

thereby facilitating their ability to opt in to the suit.[15] Providing early notice helps avoid duplicative suits and allows a court to set opt-in cutoff dates to help expedite the action.[16] Because of its limited purpose, the standard at the first stage is "fairly lenient" and typically results in certification.[17] Plaintiffs need only make a modest factual showing that the potential plaintiffs were subject to a common policy or plan that violated the law.[18]

The first stage occurs before discovery ends, and courts typically limit review to the pleadings and any submitted affidavits when determining whether to allow notice to be sent.[19]

---

[15] *E.g.*, *Lillehagen*, 2014 WL 2009031, at *3; *Troy*, 276 F.R.D. at 649. Collective actions under the FLSA differ in this regard from class actions formed under Federal Rule of Civil Procedure 23. While plaintiffs in an FLSA collective action must affirmatively opt in to the suit, 29 U.S.C. § 216(b), class actions under Rule 23 treat individuals as members of the class unless they affirmatively opt out, Fed. R. Civ. P. 23(c)(2)(B)(v).

[16] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

[17] *Lillehagen*, 2014 WL 2009031, at *3; *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2013 WL 4552493, at *3 (N.D. Cal. Aug. 27, 2013); *Warren v. Twin Islands, LLC*, No. 1:11-CV-00098-BLW, 2012 WL 346681, at *2 (D. Idaho Feb. 2, 2012) (citing *Edwards v. City of Long Beach*, 467 F.Supp.2d 986, 990 (C.D.Cal.2006)).

[18] *Mitchell v. Acosta Sales, LLC*, 841 F. Supp. 2d 1105, 1117 (C.D. Cal. 2011); *see also Khadera*, 701 F. Supp. 2d 1190, 1194 (W.D. Wash. 2010); *Deane v. Fastenal Co.,* No. C 11-00042 SI, 2011 WL 5520972, at *2 (N.D. Cal. Nov. 14, 2011). ACS urges the Court to adopt a balancing test of factors discussed in *Trinh v. JP Morgan Chase & Co.*, No. 07-CV-1666 W (WMC), 2008 WL 1860161, at *3 (S.D. Cal. Apr. 22, 2008), when evaluating whether plaintiffs are similarly situated for purposes of conditional certification. However, the court in *Trinh* merely provided some of "several factors" that courts could consider; it did not require or discuss any balancing. *Id.* The court in *Trinh* also affirmed that, "[i]n general, courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan [that violated the law]." *Id.* For reasons discussed further below, the Court finds that Plaintiffs have met this burden.

[19] *See Lillehagen*, 2014 WL 2009031, at *3; *Khadera*, 701 F. Supp. 2d at 1194 (W.D. Wash. 2010).

Certification at the first stage is often referred to as "conditional certification" because it is subject to further review at the second stage.

The second stage occurs when discovery is complete and usually arises from a defendant's motion for decertification.[20] At this stage, courts apply a stricter standard when reviewing whether potential plaintiffs are similarly situated.[21] Courts review various factors, including whether individual plaintiffs' claims involve disparate factual or employment settings, available defenses that are individual to each plaintiff, and fairness and procedural considerations.[22]

B. DISCUSSION

Plaintiffs propose an FLSA collective action of:

Every person who works or has worked as an Alaska Communications full-time employee, with no direct reports, whose primary job duties included selling Alaska Communications' products and/or services to customers, and who performed work at the Alaska Communications' Anchorage office ("Sales employees"), at any time from April 30, 2009 (or such prior date as set by the Court due to the tolling of claims) until the date of judgment. "Sales employees" include all persons who currently or previously worked at the Alaska Communications' Anchorage office with the job title of Client Account Manager (I, II, and/or III), Account Executive (I, II, and/or III), Senior Manager, Carrier Sales, Senior Manager, Business Sales, Senior Manager, Federal Sales, Client Account Manager (Business), Client Account Manager (Enterprise), Client Account Manager (Rural and Healthcare Specialist), Client Account Manager (Growth), and/or Client Account Manager (Strategic), and any other employee who performed substantially the same work as employees with those titles (discovery may reveal additional titles and employees that should be included).[23]

---

[20] *Brewer v. Gen. Nutrition Corp.*, No. 11-CV-03587 YGR, 2013 WL 100195, at *3 (N.D. Cal. Jan. 7, 2013); *see also Troy*, 276 F.R.D. at 649.

[21] *Brewer*, 2013 WL 100195, at *3; *Troy*, 276 F.R.D. at 649.

[22] *Brewer*, 2013 WL 100195, at *3 (citing *Thiessen*, 267 F.3d at 1103); *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010)); *Troy*, 276 F.R.D. at 649.

[23] Dkt. 52 at 12.

The proposed class is limited by its terms to sales employees in ACS's Anchorage office. This encompasses about 50 to 60 people.[24] Plaintiffs argue that the sales employees of the proposed class are similarly situated because, among other things, they are all subject to ACS's common policy of misclassifying them as exempt from FLSA overtime requirements.[25]

As ACS notes, merely alleging a misclassification is insufficient to justify conditional certification.[26] Plaintiffs must still make at least a "modest factual showing" that members of the proposed class are similarly situated.[27] Here, however, Plaintiffs have done more than just allege a misclassification – they have submitted declarations, ACS job descriptions, ACS compensation policies, and additional documentary evidence to support their allegations.

The declarations, for example, support Plaintiffs' allegations that ACS sales employees worked and were expected to work more than forty hours per week.[28] The job descriptions demonstrate that the various sales positions generally require understanding customer needs, developing or maintaining relationships with customers, and, ultimately, selling ACS products to those customers.[29] The job descriptions also include a field for "FLSA Status," which indicates

---

[24] Dkt. 63 at ¶ 2.

[25] Dkt. 62 at 19.

[26] Dkt. 78 at 12.

[27] *Hensley v. Eppendorf N. Am., Inc.*, No. 14-CV-419-BEN NLS, 2014 WL 2566144, at *6 (S.D. Cal. June 6, 2014) (citation omitted); *Trinh*, 2008 WL 1860161, at *4.

[28] Dkt. 64 at ¶¶ 17–22; Dkt. 65 at ¶¶ 16–19; Dkt. 66 at ¶¶ 16–19.

[29] Dkt. 64 at ¶¶ 7–9; Dkt. 65 at ¶¶ 6–8; Dkt. 66 at ¶¶ 6–8; Dkt. 63-1 at Exs. 6–11 and 13–19 (generally describing job requirements as including understanding customer needs, selling products, and developing or maintaining customer relationships); Dkt. 63-2 at Exs. 20–22 (same). One exception in the provided job descriptions is that for "Sr. Manager, Carrier Sales

that ACS generally considered its sales employees to be exempt from FLSA overtime requirements.[30] The compensation policies describe a common payment structure that includes at least a base salary and a discretionary incentive.[31] And at least for the year 2012, the sales employees as a group were subject to a specific incentive compensation plan.[32]

Plaintiffs' evidence is similar to what other courts in this district have found sufficient to establish that proposed members of a collective action are similarly situated for purposes of conditional certification. For example, in *Hart v. U.S. Bank NA*,[33] the court conditionally certified a collective action under the FLSA where the plaintiff provided deposition testimony and defendant's internal documents showing that proposed class members were subject to the same internal job description, had the same primary job duty, followed the same guidelines, and

---

and Service," which appears to describe a position for managing loss claims and helping with hiring and discipline – not a sales position. *See* Dkt. 63-1 at Ex. 12; Dkt. 63-2 at Ex. 23. However, the proposed class does not specifically include this title, and it is unclear if and how it may relate to the position for "Sr. Manager, Carrier Sales" that is listed as part of the proposed class. In any case, Peterson worked as a Sr. Manager, Carrier Sales, and there is no dispute that her position was a sales position. *See* Dkt. 64 at ¶ 10.

[30] Dkt. 63-1 at Exs. 6–11, 13, and 15–19 (ACS job descriptions); Dkt. 63-2 at Exs. 20–22 (same). The one exception appears to be "Client Account Manager I, Inside Sales," which has an FLSA status of "Non-Exempt." Dkt. 63-1 at Ex. 14. However, neither party has addressed this fact and the Court does not find it sufficient to deny conditional certification at this first stage.

[31] Dkt. 63-2 at Exs. 25–29 (ACS compensation policies for the years 2008-2012). These compensation policies use varying language to identify the employees covered by the policies, but with the exception of the 2012 policy they all generally apply to non-represented employees at ACS. The 2012 policy applies to all non-executive corporate employees at ACS. *Id.* at Ex. 25. Both of these characterizations would appear to include sales employees and ACS has not suggested otherwise.

[32] *Id.* at Ex. 25 at 5 ("Employees in sales position [sic] are not eligible for Incentive Compensation under this plan. Sales employees Incentive Compensation will be administered in accordance with the Alaska Communications Sales Compensation Plan.")

[33] No. CV 12-2471-PHX-JAT, 2013 WL 5965637, at *5 (D. Ariz. Nov. 8, 2013).

would occasionally work over forty hours per week. Similarly, in *Deane v. Fastenal Co.*,[34] the court conditionally certified a collective action where the plaintiffs provided declarations, job postings, an expectations policy, an organizational chart, and a store operations guide.

Plaintiffs' evidence distinguishes this case from various cases that ACS cites, many of which decline to certify collective actions because the plaintiff submitted no evidence or extremely limited evidence.[35] Plaintiffs' relatively small and geographically compact proposed class further distinguishes this case from others in which plaintiffs sought national or multi-state collective actions.[36] Plaintiffs are not attempting to represent a group from disparate offices

---

[34] No. C 11-00042 SI, 2011 WL 5520972, at *3 (N.D. Cal. Nov. 14, 2011); *accord Sanchez v. Sephora USA, Inc.*, No. 11-03396 SBA, 2012 WL 2945753, at *3 (N.D. Cal. July 18, 2012) (conditionally certifying collective action where evidence showed that potential plaintiffs "were employed with a common job description, performed similar job duties, under identical pay provisions").

[35] *E.g.*, *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 928 (D. Ariz. 2010) (denying a motion for conditional certification of a nationwide collective action where declarants in support lacked personal knowledge about national practices and where exhibits were inadmissible evidence); *Trinh*, 2008 WL 1860161, at *4 (plaintiffs provided "no real evidence, beyond their own speculative beliefs"); *Chemi v. Champion Mortg.*, No. 05-cv-1238 WHW, 2006 U.S. Dist. LEXIS 100917, at *14 (D.N.J. June 19, 2006) ("[T]he Court may not blithely assume, as suggested by plaintiffs, that satisfying the similarly situated standard can be accomplished by alleging in a conclusory fashion that all loan officers throughout the country were subject to the same policy of an allegedly improper exemption. Plaintiff must demonstrate more facts than this to establish a common policy.") (internal quotations and citation omitted); *Marsh v. Butler Cnty. Sch. Sys.*, 242 F. Supp. 2d 1086, 1095 (M.D. Ala. 2003) (no evidentiary support provided to conclude that the defendant had systemic violations of the FLSA); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (named plaintiffs made no showing that their job responsibilities were the same or similar to those of the remaining members of the proposed class).

[36] *E.g.*, *O'Donnell v. Robert Half Int'l, Inc.*, 534 F. Supp. 2d 173, 181 (D. Mass. 2008) (plaintiff failed to identify a common policy applied to all members of the proposed class, which numbered in the thousands and were located in different parts of the country); *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) (proposed class was employed by different subsidiaries of defendant and varied in geography, work sites, and payment systems).

throughout the country, each of which may be run differently from the others; the proposed class is instead for employees in a specific office, in a specific city, and for which Plaintiffs have presented specific evidence.

ACS argues that courts disfavor proposed classes where the alleged common policy is a misclassification because exemption classifications involve facts specific to individual plaintiffs.[37] However, ACS relies strongly on cases that relate to certification under Federal Rule of Civil Procedure 23,[38] which is "independent of, and unrelated to" FLSA certification requirements.[39] These cases are inapposite for evaluating conditional certification of an FLSA claim. Further, though reviewing exemption classifications may require some individualized inquiry, the Court agrees with other courts within this circuit that the details of an exemption inquiry are better left to the second stage of the certification process.[40] This is more consistent

---

[37] Dkt. 78 at 8.

[38] *E.g.*, *Marlo v. United Parcel Service, Inc.*, 639 F.3d 942 (9th Cir. 2011); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2009); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009).

[39] *Lillehagen*, 2014 WL 2009031, at *6; *see also Khadera*, 701 F. Supp. 2d at 1194 ("The Court's analysis [of FLSA stage one claims] is less exacting than it would be under Rule 23 . . . .").

[40] *E.g.*, *Alvarez v. Farmers Ins. Exch.*, No. 14-CV-00574-WHO, 2014 WL 4685031, at *4 (N.D. Cal. Sept. 19, 2014) (finding, in a suit alleging that employees were improperly denied overtime in violation of the FLSA, that "[w]hether the disparate factual and employment settings of the individual plaintiffs' means that this case cannot proceed collectively . . . is a matter to be determined at the second stage of the certification process.") (internal quotations and citations omitted); *Sanchez*, 2012 WL 2945753, at *4 (noting that arguments "that determining whether Plaintiff and putative class members [allegedly misclassified as exempt] are similarly situated will entail individualized inquiries . . . go to the merits and are better addressed at the second stage, after discovery has closed"); *Lemus v. Burnham Painting & Drywall Corp.*, No. 2:06-CV-01158-RCJPAL, 2007 WL 1875539, at *5 (D. Nev. June 25, 2007) ("The fact intensive inquiries concerning whether the plaintiffs are independent contractors or employees for purposes of the FLSA, and detailed analysis of whether the plaintiffs are sufficiently similarly situated to

with the purpose of the first stage, which is solely to provide notice to potential plaintiffs and has a correspondingly lenient standard.[41]

For the same reason, the Court declines to review at this time ACS's arguments regarding specific differences among the potential plaintiffs, such as differences relating to their employment responsibilities, compensation plans, discretion, and travel. The details of any differences, and their relevance to maintaining a collective action, are more appropriate for the second stage of certification.[42] So too is the additional evidence[43] that ACS has submitted to support its arguments.[44]

---

maintain the class are more appropriately decided after notice has been given, the deadline to opt in has passed, and discovery has closed.").

[41] *Lillehagen*, 2014 WL 2009031, at *3; *Troy v. Kehe Food Distributors, Inc.*, 276 F.R.D. 642, 649 (W.D. Wash. 2011).

[42] *See Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 468–69 (N.D. Cal. 2004) ("Defendants' arguments in their opposition brief focus on the more stringent second tier analysis and raise issues that may be more appropriately addressed on a motion for decertification after notice is given to the proposed class."); *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2013 WL 4552493, at *4 (N.D. Cal. Aug. 27, 2013) (the various defenses available to the defendant with respect to each plaintiff, and whether disparate factual and employment settings exist with respect to putative class members, are "inquiries reserved for the second stage of the certification process"). *Accord Brewer v. Gen. Nutrition Corp.*, No. 11-CV-03587 YGR, 2013 WL 100195, at *3 (N.D. Cal. Jan. 7, 2013) (describing second stage considerations as including whether individual plaintiffs' claims involve disparate factual or employment settings, available defenses that are individual to each plaintiff, and fairness and procedural considerations).

[43] ACS provides (1) letters regarding various plaintiffs' positions and salaries and (2) declarations from a former ACS Senior Attorney and from the Vice President of Enterprise Sales and Business Sales and Service. Dkt. 79, 80, 81-1, 81-2, and 81-3.

[44] *See Wellens v. Daiichi Sankyo Inc.*, No. C-13-00581 DMR, 2014 WL 1422979, at *3 (N.D. Cal. Apr. 11, 2014) ("[C]ourts in this district generally do not consider evidence provided by defendants in determining conditional class certification."); *Otey*, 2013 WL 4552493, at *3 ("In determining whether a plaintiff has satisfied her burden to establish that conditional certification is proper, 'courts need not consider evidence provided by defendant.'" (quoting *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 629–30 (E.D.Cal.2009)); *Sanchez*, 2012 WL

At the first stage, the question is just "whether there is a reasonable basis to conclude that there are 'potentially' similarly-situated class members who would 'benefit' from notice"[45] – in other words, whether plaintiffs have made "substantial allegations that the putative class members were subject to a single illegal policy, plan or decision."[46] Plaintiffs have met this burden. Their evidence that the potential plaintiffs had similar job descriptions, similar compensation structure, were considered by ACS as a group to be exempt from FLSA overtime requirements, and regularly worked more than forty hours a week is sufficient for the Court to conclude that the proposed class should be conditionally certified.

## IV. EQUITABLE TOLLING

### A. LEGAL BACKGROUND

Collective actions under the FLSA are time-sensitive because the statute includes a default two-year limitations period for bringing a claim and a three-year limitations period where violations of the statute are willful.[47] Additionally, because members of the collective action must opt in, the statute of limitations runs for each individual until he or she files a written consent to join the suit.[48]

---

2945753, at *4 ("[F]ederal courts are in agreement that evidence from the employer is not germane at the first stage of the certification process . . . .").

[45] *Wellens v. Daiichi Sankyo, Inc.*, No. 13-CV-00581-WHO, 2014 WL 2126877, at *4 (N.D. Cal. May 22, 2014) (citing *Carrillo v. Schneider Logistics, Inc.*, No. CV 11-8557 CAS (DTBx), 2012 U.S. Dist. LEXIS 26927 at *45).

[46] *Alvarez*, 2014 WL 4685031, at *3.

[47] 29 U.S.C. § 255(a).

[48] 29 U.S.C. § 256(b).

12

Despite the statutory deadlines for bringing a claim under the FLSA, it is "hornbook law that limitations periods are customarily subject to equitable tolling," which halts the running of a limitations period. [49] "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."[50]

### B. DISCUSSION

Plaintiffs request the Court to toll the statute of limitations for potential plaintiffs to account for various delays that have occurred during the pendency of this case. Much of ACS's response centers on whether the particular delays may justify tolling. ACS also argues, however, that the Court lacks jurisdiction to toll the statute of limitations for potential plaintiffs who have not yet opted in to the suit. Because the Court agrees with ACS that ruling on issues relevant to only the potential plaintiffs is premature, the Court will not address at this time whether any delays warrant tolling. [51]

Federal courts are without power to "decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before [them]."[52] In this case, the statute of limitations has already tolled for the current named Plaintiffs.[53] Plaintiffs are not adverse to ACS on the issue of tolling since it has no bearing on their rights. And the individuals

---

[49] *Young v. United States*, 535 U.S. 43, 49 (2002).

[50] *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

[51] *See United States v. Cook*, 795 F.2d 987, 994 (Fed. Cir. 1986).

[52] *Princeton Univ. v. Schmid*, 455 U.S. 100, 102 (1982).

[53] *See* 29 U.S.C. § 256(b).

who may be adverse to ACS – the potential plaintiffs – have not yet consented to the suit and are therefore not part of a class before the Court.[54] Thus, no party before the court is adverse to ACS on the issue of tolling. Further, the Court will not know which of the potential plaintiffs may have claims affected by the statute of limitations, making them adverse to ACS on that issue, until they opt in or decide to not opt in.

Plaintiffs argue that the Supreme Court's holding in *Hoffmann-La Roche Inc. v. Sperling* authorizes district courts to grant relief, such as equitable tolling, to protect the interests of potential plaintiffs. In *Hoffman*, the court held that the FLSA's affirmative grant of permission for employees to proceed on behalf of those similarly situated also granted authority for the court to manage joinder of multiple parties.[55] Thus, the Supreme Court affirmed a district court's decision to order discovery relating to contact information of potential plaintiffs and to monitor preparation and distribution of notice to the potential plaintiffs.[56]

*Hoffman*, however, does not authorize district courts to award just any relief to potential plaintiffs of a collective action. *Hoffman* was founded on the FLSA's grant of managerial authority to oversee joinder of potential plaintiffs.[57] But neither *Hoffman* nor the FLSA say anything about a court's authority to advance one step further – to rule on issues specific to

---

[54] *See* 29 U.S.C. § 216(b). Even conditional certification under the FLSA is not sufficient to "produce a class with an independent legal status, or join additional parties to the action." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013).

[55] *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170–171 (1989).

[56] *Id.* at 170.

[57] *Id.* at 170.

14

potential plaintiffs but that only may become relevant after joinder is complete. Such a ruling would not be "pertinent to resolution of the controversy before the court."[58]

The Court therefore declines to take this next step, notwithstanding district court decisions from this circuit and others that have granted equitable tolling for potential plaintiffs before they opt in to a collective action.[59] Importantly, neither party has pointed to controlling opinions from the Ninth Circuit Court of Appeals. The only relevant Ninth Circuit opinion that Plaintiffs cite is *Partlow v. Jewish Orphans' Home of Southern California, Inc.*, in which the Ninth Circuit affirmed a district court's tolling of the statute of limitations for potential plaintiffs after the district court determined that the plaintiffs' consents to opt in were improperly filed and ineffective.[60] Tolling the statute of limitations in that situation, however, did not decide a hypothetical issue but instead provided relief to specific individuals who were attempting to opt in.

*Partlow* is analogous in this regard to its Rule 23 cousin *American Pipe & Construction Co. v. Utah*, in which the Supreme Court held that filing a class action suit, even where class action status is ultimately denied, tolls the statute of limitations for purported members of the

---

[58] *Id.* at 179 (Scalia, J., dissenting).

[59] *E.g.*, *Koval v. Pac. Bell Tel. Co.*, No. C 12-1627 CW, 2012 WL 3283428, at *7 (N.D. Cal. Aug. 10, 2012) ("[C]ourts within this district have applied equitable tolling prospectively where the court's discretionary case management decisions have led to procedural delay beyond the control of the putative collective action members."); *Antonio-Morales v. Bimbo's Best Produce, Inc.*, No. CIV.A.8:5105, 2009 WL 1591172, at *1 (E.D. La. Apr. 20, 2009) ("Courts routinely grant equitable tolling in the FLSA collective action context to avoid prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of collective actions.").

[60] 645 F.2d 757 (9th Cir. 1981), abrogated on other grounds by *Hoffmann-La Roche*, 493 U.S. 165.

class who timely intervene following the denial of class action status.[61] In both *Partlow* and *American Pipe*, tolling allowed potential plaintiffs to correct a mistake made when attempting to join a class. These cases are conceptually distinct from the present case, in which Plaintiffs seek tolling for potential class members who have yet to attempt to join the collective action and who may never decide to do so.

In sum, equitable tolling is more appropriately evaluated after potential plaintiffs have opted in (or decided to not opt in) and it is clear whether tolling is relevant to the parties present before the Court. The Court also notes that by declining to review equitable tolling now the Court prejudices neither party. ACS has been aware of its scope of potential liability and is not prejudiced by delaying the evaluation of equitable tolling. Similarly, potential plaintiffs need only complete the paperwork to opt in before any claims they may have for tolling can be reviewed.

## V. CONCLUSION

For these reasons, Plaintiffs' motion for conditional certification (Docket No. 61) is GRANTED and Plaintiffs' motion for equitable tolling (Docket. No. 68) is DENIED without prejudice. Plaintiffs are requested to file with the Court a proposed notice form with a proposed opt-in deadline. ACS shall have 14 days from the filing of the proposed notice form to submit any comments on the form. Plaintiffs shall have 7 additional days to file a response. Finally, Plaintiffs are invited to refile their motion for equitable tolling, if needed, after the opt-in deadline passes.

---

[61] 414 U.S. 538 (1974).

Dated at Anchorage, Alaska, this 17th day of December, 2014.

/s/ Timothy M. Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE