IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAURA LEE PETERSON, Individually and on Behalf of All Others Similarly Situated, and MATTHEW SMITH,<br><br>Plaintiffs,<br><br>v.<br><br>ALASKA COMMUNICATIONS SYSTEMS GROUP, INC., and ALASKA COMMUNICATIONS SYSTEMS HOLDINGS, INC., d/b/a ALASKA COMMUNICATIONS,<br><br>Defendants. | Case No. 3:12-cv-00090-TMB<br><br>ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING PLAINTIFF MATTHEW SMITH |

## I.   INTRODUCTION

Plaintiff Laura Peterson, individually and on behalf of others similarly situated, initiated this action against Defendants Alaska Communications Group, Inc. and Alaska Communications Systems Holdings, Inc., d/b/a Alaska Communications (collectively, "ACS") in April 2012, alleging violations of the overtime provisions of the Fair Labor Standards Act ("FLSA") and the Alaska Wage and Hour Act ("AWHA").[1] After filing his consent-to-join form on July 30, 2012,[2] Plaintiff Matthew Smith joined this action as a named Plaintiff in March 2014.[3] ACS now moves for summary judgment on all of Smith's claims against it.[4] Plaintiffs oppose ACS'

---

[1] Dkt. 1 (Compl.); Dkt. 51 (Am. Compl.).

[2] Dkt. 19-1.

[3] Dkt. 51.

[4] Dkt. 183; *see also* Dkt. 184 (Defs.' Mem. Supp. Mot. Summ. J.); Dkt. 195 (Defs.' Reply).

1

motion at docket 192. The Court heard oral argument on June 16, 2016.[5] Based on the parties' submissions and that oral argument, and for the reasons that follow, the Court **DENIES** ACS' Motion for Summary Judgment Regarding Plaintiff Matthew Smith at docket 183.[6]

## II. BACKGROUND

### a. Smith's Employment with ACS

ACS is a telecommunications company incorporated in Delaware and with its principal place of business in Anchorage, Alaska.[7] It provides integrated communications services, such as voice data and IP telecommunications services, to individual consumers, businesses, and wholesale customers in Alaska and other parts of the United States.[8]

Smith, who holds an associate's degree in electronics engineering technology,[9] began his employment at ACS in April 2009, when he was hired as a Business Systems IT Analyst.[10] He was promoted to Service Assurance Manager I ("SAM I") effective February 15, 2010,[11] and to SAM II effective October 10, 2010.[12] Smith then became a Process Advisor in or around January 2012, a position he held until he left ACS in June 2012 for a job with Wells Fargo in

---

[5] *See* Dkt. 236.

[6] The Court has federal question jurisdiction over Smith's FLSA claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claim pursuant to 29 U.S.C. § 1367.

[7] Dkt. 52 at ¶¶ 19–20.

[8] *Id.*

[9] Dkt. 151-1 at 9.

[10] Dkt. 151-1 at 21, 24; Dkt. 151-2 at 3.

[11] Dkt. 151-1 at 19–20; Dkt. 151-2 at 1–2; Dkt. 151-2 at 3.

[12] Dkt. 151-2 at 27.

Texas.[13] Prior to working at ACS, Smith had worked for AT&T in various capacities for approximately ten years.[14] Smith's claims against ACS in this lawsuit relate only to his SAM positions.[15]

In his role as a SAM at ACS, Smith was initially supervised by Brian Roark and then, beginning in January 2011, by Oscar Hall.[16] As a SAM I, Smith earned an annual base salary of $66,000, plus a $10,000 target cash incentive.[17] As a SAM II, Smith earned an annual base salary of $75,000, plus $15,000 target cash incentive.[18]

According to ACS' written job descriptions for the SAM I and SAM II positions, a SAM performs the following "essential functions" for ACS:

- Ensures the accuracy and completeness of appropriate customer information, including services and circuits' inventory, contact and escalation information, Service Level Agreement information, etc.

- Acts as customer's advocate within ACS and is the proactive owner within ACS of the customer's network performance.

- Proactively monitors customer specific network performance.

- Creates customer facing network performance reports, and ensures that customer facing web portal is updated per requirements or specifications.

- Build and lead staff/teams – Hire and lead a team of staff or multiple teams with background and experience in performance development, evaluations, etc.

---

[13] Dkt. 151-1 at 18, 20–21; Dkt. 151-2 at 58.

[14] Dkt. 151-1 at 11–17.

[15] Dkt. 184 at 12 & nn. 8–9.

[16] Dkt. 151-3 at 11; Dkt. 161-4 at 15.

[17] Dkt. 151-2 at 1.

[18] Dkt. 151-2 at 27.

- Manages customer relationships as it relates to proactively managing the services we provide, and responds to customer issues escalating them within ACS on behalf of the customer.

- Prepares and delivers professional presentations to customers using various network management and reporting tools.

- Works closely with other departments to ensure the most efficient business process from end to end for delivery of Managed Services.

- Ensures all service level agreement metrics are measured and reported in a timely manner at the individual customer level.

- Manages project level budgets and resources as well as vendor and internal resources for project execution.

- Mentor and coach individuals or teams, develop skills, identify developmental opportunities and invest in building high performing teams.[19]

While their "essential functions" are the same, a SAM II "typically performs tasks characterized by greater complexity and sensitivity and having more impact to the organization" as compared to a SAM I.[20]

When asked at his deposition to describe his responsibilities as a SAM at ACS, Smith disputed the accuracy of ACS' written job descriptions,[21] and instead described his duties as "a customer liaison, service assurance representative, dealing with the customers, helping them resolve any issues . . . that may occur with them. Escalating per whatever processes were in place, as directed by management"[22] and, to a lesser extent, "work[ing on] special projects as

---

[19] Dkt. 151-2 at 4; Dkt. 151-2 at 29.

[20] Dkt. 151-2 at 29.

[21] *See, e.g.*, Dkt. 151-1 at 54 (disputing accuracy of third bullet point); *id.* at 63 ("Nor did I hire and lead a team of staff or anything else in this statement."); *id.* at 79 (disputing last two bullet points).

[22] Dkt. 151-1 at 21.

directed by senior managers."[23] Throughout his deposition, Smith stressed that in his primary capacity as a SAM, he simply served as an intermediary between ACS and the customers assigned to him, responding to complaints from those customers about degradations or outages in their telecommunication connectivity and delivering routine reports to those customers. Smith also emphasized that his responses to customer concerns were almost always dictated by the terms of the service contract and escalation matrix specific to the particular ACS customer.[24]

Hall, Smith's supervisor beginning in January 2011, described the role and responsibilities of a SAM somewhat differently. During his deposition, for example, Hall testified that he considered ACS' written job description for the SAM position "to be an accurate duty description."[25] He further testified that "[t]he role of the [SAM] was to build the relationships with our most highly valued enterprise customers" and that "the intent [of the SAM] is to be very proactive and manage those accounts, making sure that the contracts or the services that were sold to those customers were maintained in accordance with the service level agreement."[26] Elsewhere, Hall wrote that "SAMs are independent and play a proactive and sufficient role managing ALL aspects ACS [sic] most important clients," and that they "are

---

[23] Dkt. 151-1 at 23; *see also* Dkt. 151-2 at 24–25 (describing responsibilities and listing special projects).

[24] *See, e.g.*, Dkt. 151-1 at 26 (stating, with respect to Aircell, that he did "[t]he same thing that [he] did for all the other customers"—"to meet with them once a month, deliver reports to them. Escalate per the contract or senior management direction in the case of an outage or a degradation in service"); *id.* at 47 (testifying that he never unilaterally made changes to any service provided to an ACS customer, but rather acted according to the escalation matrix); *id.* at 64 (explaining that he never responded to a customer issue without escalating the issue to other ACS employees).

[25] Dkt. 151-3 at 53.

[26] Dkt. 151-3 at 14.

5

charged to interact with ACS [sic] most important customers on a daily basis," "continuously exercise independent judgment in matters that are significant to the customer and ACS," and "act as the customer advocates."[27]

   b.  **ACS Internal Audit**

In early 2011, ACS conducted an internal audit of its non-union positions to determine whether the company was in compliance with wage and hour requirements as set by the FLSA and the AWHA.[28] As part of that audit, Hall (who had by then replaced Roark as Smith's supervisor) was asked to describe the SAM job duties and to assess whether a FLSA and/or AWHA exemption applied to the SAM position.[29] Based on conversations with Hall and the "FLSA Position Checklist Administrative Exemption" form Hall filled out,[30] Debra English, who at that time was ACS' Director of Human Resources, concluded that ACS should reclassify the SAM position as non-exempt.[31] English then sent a letter to Smith informing him that his job was being reclassified as non-exempt under the FLSA and that his job status would change from salaried to hourly.[32] Shortly thereafter, on May 11, 2011, Foster Williams, who at that time was ACS' Chief Human Resources Officer, determined that the SAM position should remain classified as exempt, as SAMs "administer [ACS'] largest clients and they continuously exercise

---

[27] Dkt. 151-2 at 53; *see also* Dkt. 151-3 at 128.

[28] Dkt. 161-5 at 5.

[29] *See* Dkt. 151-2 at 46; Dkt. 151-3 at 35–36.

[30] *See* Dkt. 151-2 at 44–47.

[31] Dkt. 161-8 at 2–3.

[32] Dkt. 161-10 at 2.

independent judgment/make decision in matters of significant to our customers and ACS."[33] Five days later, on May 16, 2011, Smith received a letter from Williams apologizing "for the confusion generated by [ACS'] position review process" and informing Smith that his position was being reclassified as exempt.[34]

### c. Procedural Background[35]

Plaintiff Laura Peterson, a former employee at ACS, initiated this class and collective action against ACS on April 30, 2012, alleging that ACS violated the FLSA and the AWHA by misclassifying her as a salaried, exempt employee and by not paying her overtime.[36] The original complaint defined the proposed collective class as "[e]very person who works or has worked as a full-time sales or marketing employee below the level of Vice President at Alaska Communications for at least one day in any state, commonwealth or territory of the United States of America during the period from April 30, 2009 to the date of judgment who timely opt in to this action,"[37] and the AWHA class as "[e]very person who works or has worked as a part-time or full-time sales or marketing employee below the level of Vice President for Alaska Communications for at least one day in the State of Alaska during the period April 30, 2010 to the date of judgment who does not timely opt out of this action." [38]

---

[33] Dkt. 161-14 at 2.

[34] Dkt. 161-16 at 2.

[35] The Court presumes the parties' familiarity with the procedural history in this case, and therefore summarizes only that history most relevant to ACS' motion.

[36] Dkt. 1 at ¶¶ 6, 9.

[37] *Id.* at ¶ 6.

[38] *Id.* at ¶ 35.

Three months later, on July 30, 2012, Smith filed his consent to suit with this Court.[39] His consent stated that he had "worked for [ACS] at some point since April 13, 2009," that he had "worked overtime for which [he] was not paid," and that he "consent[ed] to join the FLSA action titled *Peterson v. Alaska Communications Systems Group, Inc., et al.* (D. Alaska), to recover unpaid overtime pay under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b)."[40]

Approximately 18 months after Smith consented to join the collective action, and after conducting some initial discovery, Peterson moved to amend her complaint so that she could "refine the class and collective action definitions" and "designate three long-time opt-in plaintiffs who no longer [met] the refined class definition, Matthew Smith, Hilary Fisher, and Jennifer Cargile, as individually named plaintiffs."[41] ACS did not oppose amendment (though it noted that "[s]uch non-opposition is made . . . without waiver of any factual or procedural arguments or defenses that may be asserted against the new individual plaintiffs, including that their claims are barred in whole or in part by the applicable statutes of limitation"[42]), and the Court gave Peterson leave to file the amended complaint on March 14, 2014.[43] The First Amended Complaint ("FAC") narrows the collective and class action definitions to certain sales employees and designates Smith, Fisher, and Cargile as individually named plaintiffs.[44]

---

[39] Dkt. 19-1.

[40] *Id.*

[41] Dkt. 47.

[42] Dkt. 50.

[43] Dkt. 51.

[44] Dkt. 52.

8

After amending the complaint, Plaintiffs moved to conditionally certify the collective class[45] and, separately, for an order equitably tolling of the statute of limitations for all potential collective action members.[46] The Court addressed the two motions in a single order, granting Plaintiffs' motion for conditional certification and denying without prejudice Plaintiffs' motion to toll the statute of limitations as premature.[47] In denying Plaintiffs' request for an order equitably tolling the statute of limitations for all potential collective action members, the Court noted that "the statute of limitations has already tolled for the current named Plaintiffs," including Smith.[48]

The parties then proceeded to discovery, and on February 19, 2016, ACS filed the motion for summary judgment presently before the Court.[49]

### III.   LEGAL STANDARD

Summary judgment is appropriate where, viewing the evidence in the light most favorable to the nonmoving party and drawing all justifiable inferences in his favor,[50] "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[51] The moving party bears the initial burden to demonstrate the

---

[45] Dkt. 61.

[46] Dkt. 68.

[47] Dkt. 100.

[48] *Id.* at 13.

[49] Dkt. 183.

[50] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Hooper v. Cty. of San Diego*, 629 F.3d 1127, 1129 (9th Cir. 2011).

[51] Fed. R. Civ. P. 56(a).

absence of a genuine issue of material fact.[52] Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial.[53] Material facts are those which may affect the outcome of the case.[54] A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[55]

## IV. DISCUSSION

ACS maintains that it is entitled to summary judgment on Smith's FLSA and AWHA claims against it because the position for which he seeks overtime pay—the SAM position—was properly classified by ACS as within the administrative employee exemption recognized under both state and federal law.[56] In the alternative, ACS seeks a summary determination that Smith's wage claims did not "commence" until March 17, 2014, when the First Amended Complaint was filed.[57] The Court addresses each ground in turn.

### a. Whether Smith was employed in a bona fide administrative capacity

The FLSA, 29 U.S.C. § 201 *et seq.*, is a remedial statute enacted "to protect all covered workers from substandard wages and oppressive working hours."[58] It requires, among other things, that an employer pay an employee one-and-a-half times that employee's regular rate of

---

[52] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[53] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[54] *Liberty Lobby*, 477 U.S. at 248–49.

[55] *Id.* at 248.

[56] Dkt. 184 at 27–39.

[57] *Id.* at 39–44.

[58] *Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)).

10

pay for any hours that employee worked in excess of forty hours in a workweek.[59] That overtime pay requirement does not apply, however, to any employee who is employed in a "bona fide administrative capacity," as that term is defined by the U.S. Department of Labor ("DOL").[60]

The AWHA similarly requires overtime pay for employees who work in excess of a forty-hour workweek.[61] As with the FLSA, the AWHA's overtime pay requirements do not apply to an individual who is employed "in a bona fide executive, administrative, or professional capacity."[62] Whether an individual is administratively exempt under the AWHA is interpreted in accordance with the FLSA and related federal regulations.[63]

Under the FLSA regulations, an employee employed in a "bona fide administrative capacity" is any employee:

(1) Compensated on a salary of fee bases at a rate of not less than $455 per week . . . ;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

---

[59] 29 U.S.C. § 207(a)(1).

[60] 29 U.S.C. § 213(a)(1).

[61] Alaska Stat. 23.10.060(a)–(b).

[62] Alaska Stat. 23.10.055(a)(9)(A).

[63] Alaska Stat. 23.10.055(c)(1) (stating " 'bona fide executive, administrative, or professional capacity' has the meaning and shall be interpreted in accordance with 29 U.S.C. 201–219 (Fair Labor Standards Act of 1938), as amended, or the regulations adopted under those sections"); *see also Resurrection Bay Auto Parts, Inc. v. Alder*, 338 P.3d 305, 308 (Alaska 2014) (recognizing Alaska's law "specifically directs" that the term "bona fide executive" employee shall be interpreted in accordance with the FLSA). *But see Black v. Colaska Inc.*, No. C07-823JLR, 2008 U.S. Dist. LEXIS 88507, at *12 n.1 (W.D. Wash. Oct. 20, 2008) (noting applicable standard of proof for AWHA claim is an unsettled question of law).

11

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.[64]

Although the employee bears the ultimate burden of proving that his employer violated the FLSA, an employer who asserts that the employee is exempt because he falls within the executive, administrative, or professional exemptions bears the burden of establishing that such category applies.[65] Moreover, because the FLSA "is to be liberally construed to apply to the furthest reaches consistent with Congressional direction," the Ninth Circuit has instructed that "FLSA exemptions are to be narrowly construed against . . . employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit."[66]

The parties in this case do not dispute that Smith, whose salary during the relevant time period was at least $66,000, meets the salary requirement under the administrative exemption.[67] They do, however, dispute whether ACS has satisfied its burden with respect to the other two prongs of the administrative exemption test.[68]

---

[64] 29 C.F.R. § 541.200(a); *see also Dannenbring v. Wynn Las Vegas, LLC*, 626 F. App'x 556, 557 (9th Cir. 2016). The text of subsection (a)(1) was amended effective December 1, 2016; that amendment has no effect on this case.

[65] *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983).

[66] *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124–25 (9th Cir. 2002) (quoting *Klem v. Cty. of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000)); *see also Mitchell v. Williams*, 420 F.2d 67, 69 (8th Cir. 1969) ("The criteria provided by the regulations are absolute and the employer must prove that any particular employee meets every requirement before the employee will be deprived of the protection of the Act.").

[67] *See* Dkt. 184 at 27; Dkt. 192 at 22 n.7.

[68] *See Nigg v. United States Postal Serv.*, 555 F.3d 781, 788 (9th Cir. 2000) (stating employer must prove that "any particular employee meets every requirement before the employee will be deprived of the protection under the Act").

"In FLSA cases, a court must first determine the employee's primary duty, and then determine whether that primary duty disqualifies the employee from FLSA's protections."[69] The FLSA regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs."[70] The determination of an employee's primary duty "must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."[71] In determining the primary duty of an employee, the DOL instructs courts to consider the following non-exhaustive factors: (1) "the relative importance of the exempt duties as compared with other types of duties;" (2) the amount of time spent performing exempt work;" (3) "the employee's relative freedom from direct supervision;" and (4) "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."[72]

The parties in this case sharply dispute both how to characterize Smith's primary duties and which of Smith's duties are primary. ACS claims that Smith's primary duty as a SAM "was to manage all aspects of ACS's relationships with critical enterprise customers" and also included his "project-based responsibilities."[73] ACS further claims that these responsibilities—which included spending significant time responding to the needs and resolving service issues of some of ACS' most important and high-paying customers—directly related to the management

---

[69] *Blotzer v. L-3 Communcs. Corp.*, No. CV-11-274-TUC-JGZ, 2012 U.S. Dist. LEXIS 173126, *12 (D. Ariz. Dec. 6, 2012).

[70] 29 C.F.R. § 541.700(a).

[71] *Id.*

[72] *Id.*

[73] Dkt. 184 at 28; Dkt. 195 at 9.

13

and general business operations of ACS and its customers and required Smith to exercise discretion and independent judgment with respect to matters of significance. Plaintiffs, on the other hand, argue that ACS overstates the scope and nature of Smith's primary duty as a SAM. They contend that Smith's primary duty as a SAM was simply to act as an intermediary between ACS customers and ACS, and that in that role, his actions and decisions were dictated by previously set guidelines established by the applicable customer service contract and escalation matrix.[74]

In a FLSA overtime-wage case, "the question of how an employee spends his or her workday is one of fact, while the question of whether his or her activities exclude him or her from the over-time pay requirement is one of law."[75] Because the primary duty inquiry presents a question of fact, summary judgment in ACS' favor is proper only if there is no genuine dispute regarding Smith's primary duties as a SAM.[76] Here, the Court finds that Plaintiffs have put forward evidence, primarily Smith's deposition testimony, sufficient to create a genuine and material dispute as to the scope of Smith's primary duty as a SAM. Furthermore, while not dispositive of the issue, the fact that individuals within ACS, including individuals within its human resources department, disagreed about whether ACS should classify the SAM position as exempt or non-exempt indicates that a jury could reasonably come to different conclusions about the scope of a SAM's primary duties and, perhaps even more so, about the nature of those duties. This being the case, the Court finds that genuine issues of material fact relating to how to

---

[74] Dkt. 192 at 22–23.

[75] *Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383, 391 (9th Cir. 2011) (citing *Icicle Seafoods v. Worthington*, 475 U.S. 709, 714 (1986)).

[76] *See Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 828 (10th Cir. 2012) (denying summary judgment, where parties disputed the plaintiffs' primary duty under FLSA).

characterize Smith's primary duties and which of Smith's duties are primary preclude summary judgment on the administrative exemption issue.

### b. Statutes of Limitations

Having found that factual disputes preclude the Court from finding, as a matter of law, that the administrative exemption applies to Smith, the Court turns to the question of whether and to what extent Smith's claims against ACS are barred by the applicable statutes of limitations.

#### i. Whether Smith's FLSA claim is timely

Under the FLSA, an action for unpaid overtime compensation may be brought within two years after the alleged violation occurs unless the violation is willful, in which case the statute of limitations is three years.[77] An individual action under the FLSA is commenced for statute of limitations purposes when the complaint is filed.[78] A collective action under the FLSA is considered to be commenced in the case of an individual claimant either (1) "on the date when the complaint is filed, if [the claimant] is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought;" or (2) "if such written consent was not so filed or if his name did not so

---

[77] 29 U.S.C. § 255(a).

[78] 29 U.S.C. § 256.

appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced."[79] The limitations period is subject to tolling.[80]

In this case, Smith filed his consent to become a party plaintiff on July 30, 2012,[81] approximately eight months after he was promoted from a SAM II to a Process Advisor and three months after Peterson filed the original class and collective action complaint. Despite this, ACS argues that Smith's claims against ACS did not commence for statute of limitation purposes until March 17, 2014, when the FAC identifying Smith as a named Plaintiff was filed, and are therefore time barred.[82] Specifically, ACS argues that because Smith did not perform sales or marketing duties for ACS, he did not meet the definition of a putative collective member articulated in the original complaint at the time he filed his consent, and that his consent to join the collective action was therefore invalid and, moreover, insufficient to toll the statute of limitations for his individual FLSA claims.[83]

---

[79] 29 U.S.C. § 256; *see also Partlow v. Jewish Orphans' Home of Southern Cal., Inc.*, 645 F.2d 757, 760 (9th Cir. 1981) ("It is true that the statute of limitations continues to run until a valid consent is filed."); *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1133 (D. Nev. 1999) ("[T]he action is not deemed commenced with respect to each individual plaintiff until his or her consent has been filed.").

[80] *See Partlow*, 645 F.2d at 760–61.

[81] Dkt. 19-1

[82] Dkt. 184 at 40.

[83] Dkt. 195 at 20–23; *see also* Dkt. 184 at 39 (arguing Smith was "[a]t all times, . . . a stranger to the allegations in the original Complaint").

In response, Plaintiffs concede that Smith is not similarly situated to the collective class as defined in the FAC,[84] but maintain that the statute of limitations on Smith's individual FLSA claim has been tolled since July 30, 2012, when Smith filed his consent to join form.[85]

The Court agrees with Plaintiffs. Indeed, although it appears that the scenario presented in this case is somewhat atypical, decisions from district courts within the Ninth Circuit addressing analogous scenarios counsel that the statute of limitations on Smith's individual FLSA claims against ACS should be tolled as of the date Smith filed his consent to join the collective action. In *Bonilla v. Las Vegas Cigar Co.*, for example, the district court judge reasoned that "[t]he only tolling which makes sense with respect to § 216(b) is to toll the statute of limitations between the time each individual plaintiff consents to the suit, and the time the court dismisses the plaintiff if the court determines that the plaintiff is not 'similarly situated,' and must pursue their claim individually."[86] And in *Piper v. RGIS Inventory Specialists, Inc.*, the district court judge favorably cited an Eastern District of Texas case in which the judge, upon decertifying a conditionally certified collective class on the basis that certain opt-in plaintiffs were not sufficiently similar, invoked its equitable powers to toll the statute of limitations to allow the opt-in plaintiffs to file individual FLSA actions.[87] By amending their complaint and

---

[84] *See* Dkt. 236.

[85] Dkt. 192 at 41.

[86] 61 F. Supp. 2d 1129, 1137 (D. Nev. 1999) (citing *Lusardi v. Xerox Corp.*, 747 F.2d 174, 178 (3d Cir. 1984) (noting that probable effect of decertification for opt-in plaintiffs would be "revocation of the consents, a tolling of the statute of limitations, and a notice to the parties that they may proceed individually")).

[87] No. C-07-00032 (JCS), 2007 WL 1690887, at 1–2 (N.D. Cal. June 11, 2007); *see also Orduna v. Champion Drywall, Inc.*, No. 2:12-cv-1144-LDG-VCF, 2013 U.S. Dist. LEXIS 43367, at *2 (D. Nev. Mar. 26, 2013) (holding statute of limitations tolled from time plaintiff filed his consent to join form until the court denied class certification in that case).

adding Smith as a named Plaintiff, Plaintiffs essentially anticipated a determination by this Court at the decertification phase that Smith is not similarly situated to the collective class; that should not deprive Smith of the benefit of tolling he would have received had Plaintiffs not amended the complaint. Accordingly, the Court finds that the statute of limitations on Smith's individual FLSA claim has tolled from July 30, 2012 (the date Smith filed his consent-to-join form) through March 17, 2014 (the date the FAC identifying Smith as a named Plaintiff was filed).[88]

### ii. Whether Smith's AWHA claim is timely

Having determined that Smith's individual FLSA claim is not time-barred, the Court now turns to the issue of whether Smith may also go forward with his individual AWHA claim.

An action for unpaid overtime compensation under the AWHA "is forever barred unless it is started within two years after the cause of action accrues."[89] An AWHA action "is considered to be started on the date when the complaint is filed."[90] As with the FLSA, the AWHA limitations period is subject to tolling.[91]

Here, ACS argues that Smith's AWHA claim against it is time-barred because Smith did not assert his individual AWHA claim until March 17, 2014, when the FAC identifying Smith as a named Plaintiff was filed.[92] But ACS' argument forgets that the original complaint asserts

---

[88] *See also* Dkt. 100 at 13 ("In this case, the statute of limitations has already tolled for the current named Plaintiffs.").

[89] Alaska Stat. § 23.10.130.

[90] *Id.*

[91] *See Dayhoff v. Temsco Helicopters, Inc.*, 772 P.2d 1085, 1087–88 (Alaska 1989).

[92] Dkt. 184 at 39.

18

class AWHA claims,[93] that Smith's consent-to-join form put ACS on notice that he was pursuing overtime pay claims against it, and that "[i]n a Rule 23 class action, the statute of limitations for plaintiffs' individual claims is suspended for all purported members of the class until a formal decision on class certification has been made, or until the individual plaintiff opts out."[94] That discovery later revealed that Smith may not have fallen within the original AWHA class definition should not bar him from now pursuing his individual AWHA claim against ACS. Indeed, fairness dictates otherwise.[95] Accordingly, the Court finds that the statute of limitations for Smith's individual AWHA claim was tolled from April 30, 2012 (the date Peterson filed the original complaint) until March 17, 2014 (the date the FAC identifying Smith as a named Plaintiff was filed).

## V. CONCLUSION

For the reasons set forth above, the Court **DENIES** ACS' Motion for Summary Judgment Regarding Plaintiff Matthew Smith at docket 183.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 29th day of September, 2016.

/s/ Timothy M. Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[93] Dkt. 1.

[94] *Bonilla*, 61 F. Supp. 2d 1129, 1135 (D. Nev. 1999) (citing, among other sources, *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974)).

[95] *See Fred Meyer of Alaska, Inc. v. Bailey*, 100 P.3d 881, 886 (Alaska 2004) (noting equitable tolling applies when an initial court action "is dismissed or proves unavailing").