IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAURA LEE PETERSON, Individually and on Behalf of All Others Similarly Situated, and MATTHEW SMITH, HILARY FISHER, AND JENNIFER CARGILE,<br><br>               Plaintiffs,<br><br>      v.<br><br>ALASKA COMMUNICATIONS SYSTEMS GROUP, INC., and ALASKA COMMUNICATIONS SYSTEMS HOLDINGS, INC., dba ALASKA COMMUNICATIONS,<br><br>               Defendants. | Case No. 3:12-cv-00090-TMB<br><br>ORDER ON PLAINTIFFS' MOTION FOR CERTIFICATION OF A RULE 23 CLASS ACTION (DKT. 278) |

## I.   INTRODUCTION

The matter comes before the Court on the Motion for Certification of a Rule 23 Class Action (the "Motion") by Plaintiff Laura Lee Peterson and opt-in Plaintiffs Sharon Hubbs and Carrie (McDermott) Shephard (all together, "Plaintiffs", unless otherwise noted) based on violations of the Alaska Wage and Hour Act ("AWHA").[1] Defendants Alaska Communications System Group, Inc. and Alaska Communications Systems Holdings, Inc. (together, "ACS"), oppose the Motion.[2] The Motion was fully briefed by the parties.[3] The parties did not request oral

---

[1] Dkt. 278 (Motion).

[2] Dkt. 289 (Opposition).

[3] Dkt. 298 (Reply).

1

argument, and the Court finds that it would not be helpful. For the reasons stated below, Plaintiffs'

Motion for Certification of a Rule 23 Class Action is **GRANTED**.

## II. BACKGROUND[4]

Plaintiff Laura Peterson, a former sales employee at ACS, sued ACS on behalf of herself,

additional named plaintiffs, and a class of potential plaintiffs for allegedly violating the overtime

provisions of the Fair Labor Standards Act ("FLSA") and the AWHA.[5] The instant dispute centers

on Plaintiffs' allegation that ACS improperly classified them and other Client Account Managers

("CAMs") as exempt under the outside sales exemption, and that ACS failed to pay overtime in

violation of state and federal law.[6]

Plaintiffs sought,[7] and the Court granted,[8] conditional certification of a collective action

under the FLSA. Since conditional certification, 21 individuals have opted-in to the FLSA

collective action.[9] To the date of this Order, six of these opt-in Plaintiffs have either withdrawn or

been dismissed, and are no longer part of the FLSA collective action.[10] ACS also filed a motion in

---

[4] The Court incorporates the factual summaries from its previous orders (*see* Dkts. 20, 100, 252) and only provides a brief recitation of the facts herein. The Court in its analysis cites to the evidentiary record where appropriate.

[5] Dkt. 52 (Amd. Compl.).

[6] *Id.*

[7] Dkt. 61 (Motion to Certify Conditional Collective Action). *See also* Dkt. 76 (Opposition); Dkt. 83 (Reply).

[8] Dkt. 100. *See also Peterson v. Alaska Communications Sys. Group, Inc.*, No. 3:12-cv-90-TMB, 2014 WL 12696527 (D. Alaska Dec. 17, 2014).

[9] *See* Dkt. 259, n. 4 (citing to FLSA opt-ins on the docket).

[10] Dkt. 178 (Catherine Bradley); Dkt. 203 (Justin Burgess); Dkt. 204 (Jane Erickson); Dkt. 233 (Linda Gutierrez); Dkt. 263 (Phoebe Roden); Dkt. 266 (Jeremy Provencio)

2

limine to exclude Plaintiff Peterson's deposition errata.[11] After briefing by the parties,[12] the Court denied the motion without prejudice but noted that ACS "may also argue that those nine changes warrant little, if any, weight on any other motions (including certification and decertification motions)."[13]

Plaintiffs filed the instant Motion on September 29, 2017, seeking to certify a class based on violations of the AWHA.[14] Plaintiffs state that they seek to appoint Plaintiff Laura Lee Peterson and opt-in Plaintiffs Carrie Shephard and Sharon Hubbs as class representatives of the proposed class.[15] Plaintiffs propose the following class definition:

> All full-time exempt employees who work or worked for ACS in the job position which is currently titled "Client Account Manager (I, II, or III)," (formerly known as "Account Executive" or, in the case of the Carrier/Federal group, "Senior Manager" or "Sr. CAM"), in the ACS Anchorage office from April 30, 2010 through the date of judgment.[16]

Plaintiffs note that they have narrowed the class definition from the proposed definition in the First Amended Complaint.[17] ACS did not raise any objection or concern with the narrowing of the proposed class definition from the First Amended Complaint.

---

[11] Dkt. 238.

[12] *See* Dkt. 242, Dkt. 250.

[13] Dkt. 262, at 6.

[14] Dkt. 278 (Motion).

[15] *Id.*; *see also* Dkt. 282 (Memo. ISO Mot.) at 4.

[16] Dkt. 278 (Motion).

[17] Dkt. 282 (Memo. ISO Mot.) at 4 n.5 (citing *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 306 (S.D. Cal. 2015)).

ACS filed its Response in Opposition on November 16, 2017, opposing certification of the proposed class.[18] Plaintiffs filed their Reply to the Response in Opposition on January 24, 2018.[19]

### III.    JURISDICTION

As a preliminary matter, ACS raises three jurisdictional arguments in its opposition to class certification: (1) the Court should decline jurisdiction over those class members that did not opt into the conditionally certified FLSA collective action;[20] (2) the Court should decline to exercise supplemental jurisdiction because the state law claims would predominate over federal law claims because of the low proportion of opt-in plaintiffs under the FLSA (16 individuals) as compared to the total number of class members under the state law claims (67 individuals);[21] and (3) the Court should decline to exercise supplemental jurisdiction because of the exceptional circumstances and compelling reasons that exist as evidenced by six putative class members withdrawing their prior FLSA consents.[22] For the reasons stated below, the Court disagrees that it lacks jurisdiction over those class members that did not opt into the FLSA collective action, and further concludes that it must continue to exercise supplemental jurisdiction over the related state law claims.

It is undisputed that the FLSA, as a federally enacted statute, confers federal question subject-matter jurisdiction to the Court.[23] Moreover, this Court has recognized—in a prior analogous case regarding an FLSA collective action—that the statute conferring supplemental

---

[18] Dkt. 289 (Opposition).

[19] Dkt. 298 (Reply).

[20] Dkt. 289 (Opp'n) at 21.

[21] *Id.* at 22–23 (citing 28 U.S.C. § 1367(c)(2)).

[22] *Id.* at 23 (citing 28 U.S.C. § 1367(c)(4)).

[23] *See* 28 U.S.C. § 1331.

4

jurisdiction, 28 U.S.C. § 1367(a), only permits a court to decline supplemental jurisdiction under one of the four specifically enumerated categories in subsection (c).[24] The language conferring supplemental jurisdiction is clear: "…in any civil action of which the district courts have original jurisdiction, the district courts *shall have* supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[25] Courts that have considered the word "shall" have indicated that the court *must* exercise this jurisdiction absent exceptions enumerated in subsection (c).[26] Under this rationale, the Court exercised supplemental jurisdiction here over Plaintiffs' AWHA claim.

ACS' first argument—that the Court should decline jurisdiction over those class members that did not opt into the FLSA collective action—is without merit. ACS' solely cited case, *Bartleson v. Winnebago*, addressed whether it was appropriate to grant leave to amend to include class allegations and corresponding state law claims that related to the FLSA claim already

---

[24] *Thorton v. Crazy Horse, Inc.*, No. 3:06-cv-00251-TMB, Dkt. 64., at 4–5 (Sept. 30, 2008).

[25] 28 U.S.C. § 1367(a) (emphasis added).

[26] *See Executive Software N. Am. v. U.S. Dist. Court for Cent. Dist. Of Cal.*, 24 F.3d 1545, 1555–56 (9th Cir. 1994) ("Section 1367(a) . . . confers power to entertain supplemental jurisdiction in mandatory terms. By use of the word "shall," the statute makes clear that if power is conferred under section 1367(a), and its exercise is not prohibit by section 1367(b), a court can decline to assert supplemental jurisdiction over a pendent claim only if one of the four categories specifically enumerated in section 1367(c) applies."), *overruled* on other grounds, *Cal. Dept. of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008); *Lindsay v. Gov't Employee Ins. Co.*, 448 F.3d 416, 424 (D.C. Cir. 2006) ("[The district court's] ability to decline to exercise supplemental jurisdiction over the claims of those class members with state law claims only, however, is circumscribed. In declining to exercise supplemental jurisdiction, it did not rely on section 1367(c)(1)-(4) and, we think, with good reasons."). *See also Bamonte v. City of Mesa*, No. CV 06-01860, 2007 WL 2022011, at *2–5 (D. Ariz. July 10, 2007).

asserted.[27] Bound by Eighth Circuit precedent,[28] the *Bartleson* court held that only employee "*class members who have asserted a FLSA claim in this action are properly in federal court*; supplemental jurisdiction cannot extend to [employee] class members who have no FLSA claim."[29] The *Bartleson* court concluded that amendment to include state law claims of employees who were not already opt-in plaintiffs in the FLSA certified action would be "futile" or "frivolous."[30] The court further denied the motion for certification of a class pursuing relief under the related state law, because the only class members consisted solely of the opt-in plaintiffs, totaling twenty-one members, which was far below the numerosity threshold required under Fed. R. Civ. P. 23(a).[31]

ACS argues that the Court should follow the *Bartleson* court's lead by concluding that the Court lacks jurisdiction over the class members that did not opt in to the FLSA collective action.[32] But this Court is neither bound nor persuaded by *Bartleson*.[33]  ACS' argument is contrary to the

---

[27] 219 F.R.D. 629, 632–633 (N.D. Iowa 2003).

[28] *See Fiedler v. Credit Acceptance, Corp.*, 188 F.3d 1031 (8th Cir. 1999). The Court notes that the Eighth Circuit in *Fiedler* left open the possibility that a district court *could* exercise supplemental jurisdiction over state law claims that were not "separate and independent" from the federal law claims, and that otherwise met the criteria for exercising supplemental jurisdiction, *id.* at 1039, despite the holding in *Bartleson*.

[29] 219 F.R.D. at 637 (emphasis in original).

[30] *Id.* at 637–38.

[31] *Id.* at 638–39.

[32] Dkt. 289 (Opp'n) at 21.

[33] The Court notes that some courts have disagreed with *Bartleson. See Schultz v. Am. Family Ins. Co.*, No. 04-cv-5512, 2005 WL 5909003, at *6 (N.D. Ill. Nov. 1, 2005); *see also Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 94 (S.D.N.Y. 2001) ("Defendants argue also that every putative class member's claim forms a separate case, and that I therefore have to evaluate, for each

overwhelming authority in the Ninth Circuit, which routinely exercises supplemental jurisdiction over state law claims brought in a Rule 23 class action in conjunction with claims under the FLSA, including state law claims of class members who did not opt in to the FLSA collective action.[34] Plaintiffs' FLSA claim and the putative class members' AWHA state law claim derive from a common nucleus of operative fact—ACS' allegedly improper classification of them as exempt employees[35]—and therefore satisfy the plain language of section 1367 extending supplemental jurisdiction to "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."[36]   Accordingly, the Court rejects

---

member of the class, if that member has a viable federal FLSA claim as to which his [state law claim] may be considered supplemental . . . . The members of a class, however, are not parties.").

[34] *See Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 761 (9th Cir. 2010) (holding that, "[a]lthough the number of claimants and amount of potential damages in the [state law claim] may have been higher," it was appropriate to exercise supplemental jurisdiction where state law claims "essentially replicate the FLSA claims"), *vacated on other grounds*, 565 U.S. 801 (2011); *Busk v. Integrity Staffing Sols., Inc.*, 713 F.3d 525, 529 n.3 (9th Cir. 2013) ("[A]ll circuit courts to consider the issue have rejected the argument that the larger size of a state law class alone is reason for a district court not to exercise supplemental jurisdiction."), *rev'd* on other grounds, 135 S. Ct. 513 (2014). *See also Acuna v. So. Nev. T.B.A. Supply Co.*, 324 F.R.D. 367, 378–79 (D. Nev. 2018) (discussing "hybrid actions" involving Rule 23 and FLSA collective action classes); *Chastain v. Cam*, No. 3:13-cv-01802, 2016 WL 1562542, at *4–5 (D. Ore. Apr. 19, 2016) (certifying a class based on violations of state law where there were five named plaintiffs, eleven plaintiffs that opted-in to the FLSA collective action, and at least seventy-two potential class members); *Baughman v. Roadrunner Communications, LLC*, No. CV-12-565-PHX-SMM, 2013 WL 4230819, at *2 (D. Ariz. Aug. 13, 2013) ("Prior to *Busk*, it was not well established in the Ninth Circuit whether it was appropriate for district courts to allow simultaneous FLSA collective action and a state law-based Rule 23 class action."); *Gessele v. Jack in the Box, Inc.*, No. 3:10-cv-960-ST, 2013 WL 1326563, at *15–16 (D. Ore. Jan. 28, 2013) ("It is well-established that it is 'within the district court's discretion to exercise supplemental jurisdiction' over state law claims in an FLSA case."); *Rose v. Wildflower Bread Co.*, No. CV 09-1348-PHX-JAT, 2011 WL 196842, at *2–4 (D. Ariz. Jan. 20, 2011) (discussing supplemental jurisdiction over state law claims in an FLSA collective action).

[35] Dkt. 52 (Amd. Compl.) at 12–15.

[36] 28 U.S.C. § 1367(a). *See also Schultz*, 2005 WL 5909003, at *6.

7

ACS' assertion that it lacks jurisdiction over the class members that did not opt in to the FLSA collective action.

ACS' second and third arguments are based on exceptions enumerated in subsections (c)(2) and (c)(4) of section 1367. The two categories relevantly state that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if-- . . . (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, . . . or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."[37] The Court accordingly addresses each exception in turn.

ACS' argument based on subsection (c)(2) of section 1367—that the low proportion of opt-in plaintiffs to the total class members would lead to state law claims predominating in the litigation[38]—does not persuade the Court that it can decline supplemental jurisdiction of the AWHA claim. It is well-settled that where state law claims essentially replicate the FLSA claims, they do not predominate such that courts must decline to exercise supplemental jurisdiction under subsection (c)(2), and courts have rejected arguments that numerical disparity between the opt-in class and the proposed Rule 23 class alone is a reason for declining supplemental jurisdiction.[39] Declining supplemental jurisdiction would be appropriate where "it appears that the state issues

---

[37] 28 U.S.C. § 1367(c).

[38] Dkt. 289 (Opp'n) at 22–23.

[39] *See Wang*, 623 F.3d 743, 761-62; *Busk*, 713 F.3d 525, 529 n.3 (collecting cases). *See also Gessele*, 2013 WL 1326563, at *16 (citing *Wang*); *Lindsay*, 448 F.3d 416, 42 (D.C. Cir. 2006) ("Predomination under section 1367 (c)(2) relates to the type of claim and here the state law claims essentially replicate the FLSA claims—they plainly do not predominate); *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 980 ("A simple disparity in numbers should not lead a court to the conclusion that a state claim 'substantially predominates' over the FLSA action, as section 1367(c) uses that phrase . . . . As long as the claims are similar between the state plaintiffs and the federal action, it makes no real difference whether the numbers vary."). The Court notes that the authority relied upon ACS predates both *Wang* and *Busk*, and appears at odds with prevailing court trends.

substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought."[40] As discussed, the AWHA and the FLSA claims are both based on the purported misclassification of employees as exempt, and the AWHA claim essentially replicates the FLSA claim.[41] The Court cannot thus hold that the AWHA claim would "substantially predominate" over the FLSA claim, and therefore cannot decline supplemental jurisdiction under subsection (c)(2).

ACS' argument based on (c)(4) of section 1367—that the number of withdrawn prior FLSA consents evidences exceptional circumstances and compelling reasons—is also unavailing. As Plaintiffs have correctly noted, other courts do not generally find withdrawn FLSA consents, without more, to constitute evidence of exceptional circumstances.[42] Moreover, the Ninth Circuit

---

[40] *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

[41] *See Resurrection Bay Auto Parts, Inc. v. Alder*, 338 P.3d 305, 307–8 (Alaska 2014) (noting concurrent application of the FLSA and the AWHA in an employee misclassification case).

[42] *See Woods v. Vector Mktg. Corp.,* No. C-14-0264, 2015 WL 5188682, at *14 (N.D. Cal. Sept. 4, 2015) ("As this Court has previously recognized, there may be a number of reasons the employees failed to opt-in to the action that have nothing to do with a belief that the lawsuit is a bad idea or a belief they were not actually aggrieved." (internal quotations omitted)). *See also Meyers v. Crouse Health Sys., Inc.*, 274 F.R.D. 404, 410 n.7 (N.D.N.Y. 2011) (certifying Rule 23 class where 12 of the 76 FLSA opt-in plaintiffs were previously dismissed for not responding to discovery); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 163 (S.D.N.Y. 2008) ("Fairness also weighs in favor of supplemental jurisdiction, to the extent that employees may feel intimated about volunteering to participate in an opt-in collective action.").

ACS does not identify, and the Court cannot find, any evidence of hostility among the six individuals who withdrew or were dismissed due to non-responsiveness. *See Leuthold v. Destination Am.*, 224 F.R.D. 462, 470 (N.D. Cal. 2004) (identifying several declarations produced by the defendant from proposed absent class members that evidenced "substantial hostility"). ACS' singular citation to testimony from Sean Lindamood about his beliefs about the applicability of the exemption does not convince that there exists hostility among the proposed class members sufficient to decline supplemental jurisdiction under subsection (c)(4).

The Court notes that, in the absence of other evidence, the 10% of class members who withdrew their FLSA consents identified by ACS is substantially less than the percentage in other situations where courts have identified hostility among absent class members. *See McDonald v. Ricardo's*

has defined "compelling reasons" as used in subsection (c)(4) to mean instances where declining jurisdiction would "'best accommodate the values of economy, convenience, fairness, and comity.'"[43] The Court does not find that there are compelling reasons to decline supplemental jurisdiction, nor does the Court find that the six withdrawn FLSA consent forms are an exceptional circumstance where application of subsection (c)(4) is warranted. Six withdrawn FLSA consents, without additional information or factors present, is not sufficient for this Court to conclude that subsection (c)(4) applies.[44] The Court therefore cannot decline supplemental jurisdiction under (c)(4).

For these reasons, the Court finds that it continues to have both federal question jurisdiction over the FLSA claim, and supplemental jurisdiction over the AWHA claim.

## IV. LEGAL STANDARD

Fed. R. Civ. P. 23 governs the appropriateness of certifying a class action in federal court. The decision whether to certify the class "involve[s] a significant element of discretion" by the district court.[45] "The class action is 'an exception to the usual rule that litigation is conducted by

---

*on the Beach, Inc.*, No. CV 11-9366 PSG (MRWx), 2013 WL228334, at *6 (identifying hostility where over 60% of the proposed putative class members executed individual settlement agreements with the defendants).

[43] *Exec. Software N.A., Inc.*, 24 F.3d 1545, 1556 (citing *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 351 (1988)).

[44] The Court further agrees with Plaintiffs that two of the former opt-in plaintiffs do not meet the proposed Rule 23 class. Thus, at most, ACS has identified four individuals, less than 6% of the proposed class, that may not wish to be part of the proposed class action. This percentage is still inadequate to convince the Court to decline to exercise supplemental jurisdiction.

[45] *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010).

and on behalf of the individual named parties.'"[46] Rule 23's requirements are not merely a pleading standard to be met.[47] "[A] district court facing a class certification motion is required to conduct 'a rigorous analysis' to ensure that the Rule 23 requirements are satisfied."[48] This analysis "will entail some overlap with the merits of [Plaintiffs'] underlying claims."[49] However, the Court "is required to examine the merits of the underlying claim[s] . . . only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims."[50] "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."[51]

---

[46] *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)).

[47] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

[48] *Connecticut Retirement Plans and Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

[49] *Dukes*, 564 U.S. at 351.

[50] *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 983 n.8 (9th Cir. 2011) (citing *Dukes*, 564 U.S. at 351 n.6). *See also Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983) (noting that although a decision on the merits is improper at the class-certification stage, some inquiry into the substance of the case may be necessary to determine whether commonality and typicality are met).

[51] *Falcon*, 457 U.S. at 161.

11

The first step in the analysis of a motion for class certification is to determine whether the proposed class meets the requirements of Rule 23(a).[52] These four requirements are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.[53]

If these four Rule 23(a) requirements are met, the analysis proceeds to a determination of whether the proposed class meets the applicable requirements of Rule 23(b).[54] Here, Plaintiffs seek certification under subsection (b)(3).[55] Rule 23(b)(3) provides that certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[56] In other words, parties seeking certification must meet these two predominance and superiority tests before a class action can be certified under Rule 23.[57] Only if all of the above Rule 23 requirements are satisfied is class certification appropriate.

Although ACS will bear the burden on the merits of any AWHA claim, Rule 23 "governs the class certification issue even if the underlying claim arises under state law."[58] Under Rule 23,

---

[52] *Dukes*, 564 U.S. at 350–51; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

[53] Fed. R. Civ. P. 23(a)(1)–(4).

[54] *See e.g.*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

[55] Dkt. 278 (Motion) at 2.

[56] Fed. R. Civ. P. 23(b)(3).

[57] *Yokoyama*, 594 F.3d at 1090 n.1.

[58] *Marlo v. United Parcel Service, Inc.*, 639 F.3d 942, 947 (2011) (citing *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*¸559 U.S. 393, 398 (2010) (stating that if Rule 23 answers the question in dispute, "it governs—[state] law notwithstanding . . . . The question in dispute is whether [the plaintiff's] suit may proceed as a class action. Rule 23 provides an answer")).

"[t]he party seeking class certification bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met."[59] Accordingly, Plaintiffs bear the burden of demonstrating that class certification is appropriate.

Here, as explained below, the Court holds that Plaintiffs have satisfied the requirements of Rule 23, and **GRANTS** the Motion for Certification of a Rule 23 Class.

## V.    ANALYSIS

### A.    *Opt-In Plaintiffs Sharon Hubbs and Carrie Shephard May Be Appointed Class Representatives Without Formal Amendment*

Prior to undertaking the Rule 23 analysis, the Court must first address a disagreement between Plaintiffs and ACS that impacts the Rule 23 analysis. Plaintiffs seek in the Motion to appoint opt-in Plaintiffs Sharon Hubbs and Carrie Shephard as class representatives. In the alternative, Plaintiffs state that opt-in Plaintiffs Hubbs and Shephard are willing to serve as named plaintiffs in this action if the Court requires formal amendment in order to serve as additional class representatives.

In its opposition, ACS urges the Court to neither permit Hubbs and Shephard to serve as class representatives of the proposed Rule 23 class or to allow Plaintiffs to amend the First Amended Complaint to include Hubbs and Shephard as additional named plaintiffs. ACS states that Plaintiffs' request is not diligent and is prejudicial to ACS, as ACS' defense was based on Plaintiff Peterson's status as the sole class representative, and ACS has not had the opportunity to vet either Hubbs or Shephard as class representatives.[60] ACS argues that Fed. R. Civ. P. 15 and 16 provide the framework with which to analyze Plaintiffs' request to appoint Hubbs and Shephard

---

[59] *Marlo*, 639 F.3d at 947 (quoting *United Steel Workers v. ConocoPhillips Co.*, 593 F.3d 802, 807 (9th Cir. 2010)).

[60] *See* Dkt. 289 (Opposition) at 29.

Case 3:12-cv-00090-TMB   Document 300   Filed 08/28/18   Page 13 of 39

as a class representatives or, alternatively, whether amendment to add Hubbs and Shephard as additional plaintiffs is appropriate, and that the Court should decline both of Plaintiffs' requests under this framework.

The Court agrees that Rule 16 would provide the governing framework in reviewing a request to amend a complaint to add additional named plaintiffs beyond the deadline imposed by the scheduling and planning order.[61] The Court disagrees, however, that such framework is applicable in determining whether Hubbs and Shephard may be appointed class representatives in addition to named Plaintiff Peterson. As Plaintiffs correctly point out, "Rule 23(a) does not explicitly require that a class representative must be a named plaintiff in the action."[62] Courts that have considered the rare circumstance of whether to appoint a non-named plaintiff as an additional class representative have not undertaken a Rule 15 or Rule 16 analysis, nor have they required the pleadings be amended to include class representatives as a named plaintiff in the action.[63] The Court thus declines both to undertake an analysis under Rule 16 that it is not required to do or to

---

[61] *See Rosales v. FitFlop USA, LLC*, No. 11-cv-0973, 2013 WL 3049122, at *1 (S.D. Cal. June 17, 2013); *Osakan v. Apple Am. Grp.*, No. 08-cv-4722, 2010 WL 1838701, at *2 (N.D. Cal. May 5, 2010).

[62] *Morales v. Stevco, Inc.*, No. 1:09-cv-704, 2011 WL 5511767, at *8 (E.D. Cal. Nov. 10, 2011). *See also Norwood v. Raytheon Co.*, 237 F.R.D. 581, 588 n.12 (W.D. Tex. 2006) ("Rule 23(a) does not explicitly require that class representatives be named plaintiffs.").

[63] *Morales*, 2011 WL 551767, at *8 (stating that class representatives must still meet the requirements of Rule 23(a), before holding that the proposed non-named plaintiff class representatives did not meet these requirements); *Norwood*, 237 F.R.D. at 586-605 (applying Rule 23 requirements to party and non-named plaintiff class representatives). *See also In re Teletronics Pacing Sys., Inc.*, 172 F.R.D. 271, 283 (S.D. Ohio 1997) ("[W]e find it unnecessary for a class member to have filed an individual action in order to qualify as a class representative . . . . [W]e note that courts make an inquiry into the adequacy of the class representatives in order to protect the rights of absent class members, not to ensure that the party opposing certification is satisfied with the representatives.").

14

require Plaintiffs to amend the First Amended Complaint to add Hubbs and Shephard as named plaintiffs.[64]

The Court is sensitive to ACS' concerns that the appointment of Hubbs and Shephard is prejudicial. However, the Court finds that there is not any prejudice to ACS here from considering and appointing Hubbs and Shephard as class representatives of the proposed class. Plaintiffs relevantly point out that both Hubbs and Shephard have—as opt-in Plaintiffs in the FLSA collective action—extensively participated in discovery by responding to interrogatories, complying with document requests, and individually being deposed for a significant time.[65] As the Court stated earlier, the FLSA and AWHA claims are essentially replicated claims based on the same facts and circumstances; any unique defense against Hubbs or Shephard regarding their FLSA claim would also be generally applicable to their AWHA claim, and related and necessary documents would already be disclosed through discovery by Hubbs and Shephard. Thus, the Court fails to see any need for additional discovery as to Hubbs and Shephard.[66] The Court finds no prejudice to ACS and can see no other reason to deny Plaintiffs' request to consider and potentially appoint Hubbs and Shephard as class representatives.

---

[64] Even if the Court required the Plaintiffs to amend the pleadings to add Hubbs and Shephard as named plaintiffs, there is authority suggesting that leave to substitute or add class representative as plaintiffs would be appropriate. *See Tait v. BSH Home Appliances, Corp.* ¸289 F.R.D. 466, 476-77 (C.D. Cal. 2012) (collecting cases).

[65] *See* Dkt. 299, ¶¶ 6–8.

[66] The Court would share ACS' concerns if a party seeking class certification added non-named plaintiffs as class representatives who, until the motion for certification, had been passive participants in the litigation, and these non-named plaintiffs had otherwise dissimilar claims and factual circumstances than the named plaintiffs. None of that is present here.

15

For the following reasons, the Court holds that opt-in Plaintiffs Hubbs and Shephard may be appointed class representatives – pending satisfaction of the Rule 23 requirements – without formal amendment of the First Amended Complaint.

B. *Whether the Requirements of Fed. R. Civ. P. 23(a) Have Been Met*

1. Numerosity

The numerosity requirement in Rule 23 is satisfied when "the class is so numerous that joinder of all members is impracticable."[67] Although the Supreme Court has instructed that the "numerosity requirement . . . imposes no absolute limitations,"[68] in application, a proposed class consisting of less than 16 individuals fails to meet the numerosity requirement.[69] On the other hand, courts have held that classes of at least 40 individuals easily satisfy the numerosity requirement under Rule 23.[70] A class size between 16 and 39 individuals presents a closer question of whether numerosity can be satisfied, although courts have found the numerosity requirement satisfied where a class has consisted of 18 or 20 individuals.[71]

---

[67] F.R.C.P. Rule 23(a)(1).

[68] *Gen. Tel. Co. of the Nw., Inc. v. Equal Emp't Opportunity Comm'n*, 446 U.S. 318, 330 (1980).

[69] *See id.* ("When judged by the size of the putative class in various cases in which certification has been denied, [15 individuals] would be too small to meet the numerosity requirement.").

[70] *See Akaosugi v. Benihana Nat. Corp.*, 282 F.R.D. 241, 253–54 (N.D. Cal. 2012) ("[C]ourts generally find the numerosity requirement satisfied when a class includes at least forty members."); *Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015) ("A class or subclass with more than 40 members raises a presumption of impracticability based on numbers alone." (internal quotations omitted)).

[71] *See Rannis v. Recchia*, 380 Fed. App'x 646, 650–52 (9th Cir. 2010) (collecting cases, affirming certification of a class of 20 individuals based on specific facts of the case).

Here, the parties do not dispute that there are 67 potential class members in the proposed class. Under prior precedent, the proposed class would satisfy the numerosity requirement under Rule 23(a)(1) because joinder of this many individuals would be impracticable.

ACS, however, argues that the correct number to use for the numerosity analysis is not the 67 potential class members, but rather the 16 individuals who have opted-in to the FLSA collective action as plaintiffs. For this proposition, ACS cites *Thiebes v. Wal Mart Stores, Inc.* as its sole authority.[72] However, as Plaintiffs correctly identify, *Thiebes* is the minority holding amongst district courts in the Ninth Circuit, and the prevailing trend is to consider the overall proposed putative class size for the numerosity requirement, not just the number of opt-in plaintiffs to a related FLSA collective action.[73] The Court agrees with the prevailing trend that a Rule 23 class numerosity determination is a separate inquiry that is not bound by the number of opt-in plaintiffs in a related FLSA collective action.[74] Thus, the Court bases its numerosity analysis on the 67 individuals identified by the parties.

---

[72] No. CIV 98-802-KI, 2002 WL 479840, at *7–8 (D. Or. Jan. 9, 2002).

[73] *See Collinge v. IntelliQuick Delivery, Inc.¸* No. 2:12-cv-824, 2015 WL 1292444, at *11 (D. Ariz. Mar. 23, 2015) ("*Thiebes* represents a minority view and is unpersuasive."). *See also Esparza v. Two Jinn, Inc.*, No. SACV090099AGRNBX, 2009 WL 10670957, at *3–4 (C.D. Cal. Sept. 21, 2009) (rejecting *Thiebes*, holding numerosity satisfied before the FLSA opt-in period expired); *Robinson v. Open Top Sightseeing S.F., LLC*, No. 14-cv-852, 2015 WL 9304041, at *2–3 (N.D. Cal. Dec. 22, 2015) ("[D]efendant does not provide any authority for considering the numerosity of FLSA opt-ins when conducting the Rule 23 numerosity analysis. The Numerosity of a potential Rule 23 class is a determination separate from any developments with regard to the FLSA collective action.").

[74] The Court further agrees with the reasoning articulated in *Collinge*, 2015 WL 1292444, at *11. "A court's task under Rule 23 (a)(1) is to determine whether joinder of 'all members' of the proposed class would be impracticable-not merely members who believe they were aggrieved." *Id.* "Further, it does not necessarily follow that employees who do not opt-in do not believe they were aggrieved." *Id.* "Fear of retaliation may deter potential plaintiffs from opting-into a FLSA collective action or from suing individually." *Id.* "This factor weighs in favor of class certification, not against it." *Id.*

17

Accordingly, the Court holds that the numerosity requirement is satisfied.

2. <u>Commonality</u>

The commonality requirement is satisfied where "there are questions of law or fact common to the class."[75] Commonality requires a showing that "the class members have suffered the same injury" and "does not mean merely that they have all suffered a violation of the same provision of law."[76] The class claims "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[77] For the purposes of commonality, "even a single common question will do."[78] The commonality requirement is "less rigorous than the companion requirements of Rule 23(b)(3)," and is "construed permissively."[79] Finally, "[c]ourts ordinarily find that the commonality requirement is satisfied where a putative class of employees challenges their classification as exempt from overtime requirements under state law."[80]

---

[75] Fed. R. Civ. P. 23(a)(2).

[76] *Dukes*, 564 U.S. 338, 349–50.

[77] *Id.* at 350.

[78] *Id.* at 359 (internal quotation marks omitted). *See also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("[C]ommonality only requires a single significant question of law or fact.").

[79] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

[80] *Payala v. Wipro Tech., Inc.* No. 15-04063 JAK (JPRx), 2016 WL 6094158, at *5 (C.D. Cal. Aug. 23, 2016). *See also Benedict v. Hewlett-Packard Co.*, 2016 WL 1691893, at *10 (N.D. Cal. Apr. 8, 2016) (commonality satisfied where putative class members were similarly classified and shared a set of generic descriptions, notwithstanding that they performed a variety of actual tasks); *Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 233 (C.D. Cal. 2006), *affirmed*, 464 Fed. App'x 636 (9th Cir. 2011) (commonality satisfied where putative class challenged employer's exemption classification despite varying actual bases among class members); *Sirko v. Int'l Bus. Machines Corp.*, 2014 WL 4452699, at *10 (C.D. Cal. Sept. 3, 2014) (same); *Iontchev v. AAA Cab*

18

Here, Plaintiffs Peterson, Hubbs, Shephard, and potential class members all work or worked for ACS during the proposed class period as CAMs and challenge their classification as exempt from overtime requirements under the AWHA. Plaintiffs have pointed to evidence in the record that: (1) the primary job duties of CAMs are similar;[81] (2) their job duties and practices are performed pursuant to common job descriptions, job postings, and performance appraisals;[82] (3) CAMs are trained on and expected to follow an ACS sales process;[83] (4) CAMs' job duties and the ACS sales policies require that CAMs work from Defendants' place of business to perform their job;[84] (5) CAMs regularly have to work over 40 hours per work in order to perform their

---

[81] *Serv., Inc.*, No. CV-12-256-PHX-ROS, 2014 WL 12768158, at *2 (D. Ariz. Mar. 26, 2014) ("In fact, this case is a classic case for treatment as a class action because the commonality linking the class members, *i.e.* their employment classification, is one of the dispositive questions in the lawsuit." (internal quotation marks omitted)).

[81] *See* Dkt. 279 (Peterson Decl.), ¶¶ 15, 16, 18; Dkt. 280 (Hubbs Decl.), ¶¶ 16, 17, 19; Dkt. 281 (Shephard Decl.) ¶¶ 18, 19, 21; Dkt. 283-25 (Palmer Decl., Ex. Y), at 12.

[82] *See* Dkt. 279 (Peterson Decl.), ¶ 17; Dkt. 280 (Hubbs Decl.), ¶ 18; Dkt. 281 (Shephard Decl.), ¶ 20; Dkt. 283-4 (Palmer Decl., Ex. D); Dkt. 283-5 (Palmer Decl., Ex. E); Dkt. 283-6 (Palmer Decl., Ex. F); Dkt. 283-9 (Palmer Decl., Ex. I); Dkt. 283-10 (Palmer Decl., Ex. J); Dkt. 283-11 (Palmer Decl., Ex. K); Dkt. 283-18 (Palmer Decl., Ex. R), at 6; Dkt. 283-19 (Palmer Decl., Ex. S), at 8; Dkt. 283-20 (Palmer Decl., Ex. T), at 4;

[83] *See* Dkt. 279 (Peterson Decl.), ¶¶ 19–34, 43–45; Dkt. 280 (Hubbs Decl.), ¶¶ 20–35; Dkt. 281 (Shephard Decl.) ¶¶ 22–36, 45–47; Dkt. 283-12 (Palmer Decl., Ex. L); Dkt. 283-18 (Palmer Decl., Ex. R), at 8–18, 20–23, 25–27, 31; Dkt. 283-19 (Palmer Decl., Ex. S), at 9–12; Dkt. 283-20 (Palmer Decl., Ex. T), at 3, 5–7; Dkt. 283-21 (Palmer Decl., Ex. U), at 3, 5; Dkt. 283-22 (Palmer Decl., Ex. V), at 3–6; Dkt. 283-23 (Palmer Decl., Ex. W), at 3–6, 11–17; Dkt. 283-24 (Palmer Decl., Ex. X), at 5; Dkt. 283-25 (Palmer Decl., Ex. Y), at 6–8, 9–10; Dkt. 283-26 (Palmer Decl., Ex. Z), at 3–6, 11; Dkt. 283-27 (Palmer Decl., Ex. AA), at 3, 5–7; Dkt. 283-28 (Palmer Decl., Ex. BB), at 3–5, 8; Dkt. 283-29 (Palmer Decl., Ex. CC), at 3–4; Dkt. 283-30 (Palmer Decl., Ex. DD), at 4–6; Dkt. 283-31 (Palmer Decl., Ex. EE), at 3–4.

[84] *See* Dkt. 279 (Peterson Decl.), ¶¶ 25, 35–39; Dkt. 280 (Hubbs Decl.), ¶¶ 26, 36–39; Dkt. 281 (Shephard Decl.) ¶¶ 28, 38–44; Dkt. 283-13 (Palmer Decl., Ex. M); Dkt. 283-18 (Palmer Decl., Ex. R), at 11–12, 17, 19; Dkt. 283-22 (Palmer Decl., Ex. V), at 3; Dkt. 283-23 (Palmer Decl., Ex. W), at 7–10, 14; Dkt. 283-24 (Palmer Decl., Ex. X), at 3–4; Dkt. 283-25 (Palmer Decl., Ex. Y), at 7; Dkt. 283-26 (Palmer Decl., Ex. Z), at 5–6, 9–10; Dkt. 283-27 (Palmer Decl., Ex. AA), at 4; Dkt.

job;[85] (6) CAMs are paid pursuant to the similar compensation policies and are not compensated for overtime work;[86] and (7) ACS classifies CAMs as exempt under the outside sales exemption.[87]

Based on this evidence, Plaintiffs identify several factual and legal questions that are common to the class, including:

1. What are the principal job duties and tasks performed by CAMs?

2. What are the indispensable components of the sales efforts performed by CAMs?

3. Were most or virtually all of the indispensable components of CAMs' sales efforts performed outside the office?

4. Did ACS classify all CAMs as exempt from overtime based upon the outside sales exemption?

5. Can ACS prove beyond a reasonable doubt that CAM's "primary duty" was "making sales or contracts for sales, consignments, or shipments, or obtaining orders for services" under the AWHA?

---

283-28 (Palmer Decl., Ex. BB), at 6–9; Dkt. 283-30 (Palmer Decl., Ex. DD), at 3, 6; Dkt. 283-31 (Palmer Decl., Ex. EE), at 5–8.

[85] *See* Dkt. 279 (Peterson Decl.), ¶¶ 40–42; Dkt. 280 (Hubbs Decl.), ¶¶ 40–42; Dkt. 281 (Shephard Decl.) ¶¶ 45–47; Dkt. 283-18 (Palmer Decl., Ex. R), at 28–30; Dkt. 283-19 (Palmer Decl., Ex. S), at 13–14; Dkt. 283-20 (Palmer Decl., Ex. T), at 8; Dkt. 283-21 (Palmer Decl., Ex. U), at 5; Dkt. 283-26 (Palmer Decl., Ex. Z), at 7–8; Dkt. 283-28 (Palmer Decl., Ex. BB), at 9.

[86] *See* Dkt. 279 (Peterson Decl.), ¶¶ 43–45; Dkt. 280 (Hubbs Decl.), ¶¶ 43–45; Dkt. 281 (Shephard Decl.) ¶¶ 48–50; Dkt. 283-18 (Palmer Decl., Ex. R), at 32–34; Dkt. 283-19 (Palmer Decl., Ex. S), at 13, 15–16.

[87] *See* Dkt. 283-4 (Palmer Decl., Ex. D.); Dkt. 283-5 (Palmer Decl., Ex. E); Dkt. 283-6 (Palmer Decl., Ex. F); Dkt. 283-14 (Palmer Decl., Ex. N); Dkt. 283-15 (Palmer Decl., Ex. O); Dkt. 283-16 (Palmer Decl., Ex. P); Dkt. 287 (Palmer Decl., Ex. A); Dkt. 287-1 (Palmer Decl., Ex. Q).

6. Can ACS prove beyond a reasonable doubt that CAMs were "customarily and regularly engaged away from the employer's place of business" under the AWHA?[88]

These identified legal and factual questions get at the heart of the litigation: whether employees working as CAMs were properly classified as exempt under the AWHA. Thus, Plaintiffs have demonstrated there are questions of law or fact common to the class.

ACS argues that commonality cannot be satisfied where there is no uniform policy dictating how, when, and where CAMs performed duties and spent work hours. ACS cites to evidence in the record that the percentage of time spent on certain tasks varied between individual CAMs.[89] ACS does not otherwise argue that the CAMs employees are situated differently in their tasks or duties.[90] But under Ninth Circuit authority, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."[91] In other words, class members do not have to be identical – they only have to be similar enough to satisfy the commonality requirement.[92] Here,

---

[88] *See* Dkt. 282 (Memo. ISO Mot.) at 16–17; Dkt. 298 (Reply) at 9.

[89] *Compare* Dkt. 289-1 (Hart Decl., Ex. 9), at 58 (citing 30% figure representing amount of time spent on in-person customer visits) *with* Dkt. 289-3 (Hart Decl., Ex. 27), at 36 (citing 10% figure representing amount of time spent on customer site visits).

[90] The Court acknowledges that ACS does provide background on the different groups in which CAMs worked during the class period. *See* Dkt. 289 (Opposition) at 10–15. But ACS only notes that the time spent by each CAM doing their similar tasks varied, which ACS contends could impact the employee exemption analysis. *Id.* at 18-19.

[91] *Hanlon*, 150 F.3d 1011, 1019.

[92] *See Ambrosia v. Cogent Comm'ns*, 213 F.R.D. 544, 553–54 (N.D. Cal. 2016) (holding commonality satisfied despite "wide variation in how and where each [class member] performed their individual job"). *See also Pole v. Estenson Logistics, LLC*, No. 15-cv-7196m 2016 WL 4238635, at *7 (C.D. Cal. Aug. 10, 2016) ("While there appears to be some variation in the tasks individual Fleet Managers perform, there is also substantial commonality in the tasks Fleet

21

the Court concludes that the class members are similarly situated enough that there are common questions of law and fact that can be resolved through classwide resolution.

ACS' argument is essentially that individual issues predominate among the class; this an argument more appropriate for the predominance inquiry under Rule 23(b)(3) than for the commonality analysis under Rule 23(a).[93] Rule 23(a)'s "less rigorous" commonality analysis only requires identifying a single common legal or factual question, which Plaintiffs have satisfied. Arguments advanced by ACS, including that there is a lack of common proof such as the absence of company-wide policies governing how employees spend their time or the absence of uniformity in work experiences, are more appropriately discussed under the more rigorous predominance analysis in subsection (b)(3).[94] The Court therefore addresses these arguments under the predominance inquiry.

---

Managers are expected to perform according to both job descriptions issued by Estenson and the individual testimony submitted before the court. Determining whether these tasks satisfy the requirements for classifying an employee as exempt under California law is the sort of question amenable to classwide resolution and adequate to satisfy the commonality requirement under Rule 23(a)(2)."); *Whiteway v. FedEx Kinko's Office and Print Servs., Inc.*, No. 05-cv-2320, 2006 WL 2642528, at *5–6 (N.D. Cal. Sept. 14, 2006) ("Even assuming there are some variations among the daily tasks performed by CMs, as Defendant alleges, the similarities create common questions as to whether CMs are properly classified as executive exempt.").

[93] ACS cites *Marlo v. United Parcel Servs., Inc.*, 639 F.3d 942 (9th Cir. 2011), in discussing the commonality requirement, and that a court could reach into the merits of the underlying claims at the class certification stage. But *Marlo* regarded the Ninth Circuit affirming a district court's decertification of a class based on a failure to meet the predominance requirement under (b)(3), not the commonality requirement under (a)(2). *Marlo*, 639F.3d at 948–49. Moreover, although ACS' other cited authority, *Wong v. AT&T Mobility Servs., LLC*, 2011 U.S. Dist. LEXIS 125988, at *13 (C.D. Cal. Oct. 20, 2011) found that "while there might be common issues," it bases its conclusion in part on the failure to meet the predominance inquiry under section (b)(3). *Id.* at *21–22.

[94] *See infra* Section V.C.1. *See also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957–59 (9th Cir. 2009) (discussing similar arguments under predominance inquiry of subsection (b)(3)); *Vinole v. Countrywide Home Loans, Inc.¸* 571 F.3d 935, 945–48 (9th Cir. 2009) (same).

22

Thus, the Court holds that the commonality requirement is satisfied.

3.  Typicality

The typicality requirement is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class."[95] "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."[96] This requirement is "permissive, such that representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."[97] "A court should not certify a class if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'"[98]

Plaintiffs contend that they allege similar injuries and pursue the same claims as the proposed class members based on the same course of conduct and the same legal theory: that ACS improperly classified CAMs as exempt outside salespeople and that this misclassification violates the AWHA. Plaintiffs argue that their claims are therefore "reasonably coextensive" with those of absent class members. ACS, on the other hand, argues that typicality fails due to three reasons: (1) Plaintiffs failed to produce evidence that the job duties were similar across the class; (2) Plaintiff Peterson will be subject and preoccupied with responding to alternative exemption defenses that

---

[95] Fed. R. Civ. P. 23(a)(3).

[96] *Hanon*, 976 F.2d 497, 508 (internal quotation marks omitted). *See also Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017).

[97] *Buono,* 847 F.3d at 1108.

[98] *Id.* (quoting *Hanon*, 976 F.2d at 508).

Case 3:12-cv-00090-TMB   Document 300   Filed 08/28/18   Page 23 of 39

are not otherwise common, typical or predominant; and (3) Plaintiff Peterson will be subject and preoccupied with responding to attacks to her credibility on material issues related to her work.

The Court agrees that Plaintiffs have demonstrated that their claims are "reasonably coextensive" with those of the absent class members. First, despite ACS' contentions, Plaintiffs have demonstrated significant similarities between CAMs, including: performance of the same job duties and tasks; performance of these duties and tasks under similar job descriptions, postings, and performance appraisals; training on and expectations of adhering to a specific sales process; performance of these duties and tasks primarily from the ACS office in Anchorage; expectation of working more than 40 hours a week; payment under the same compensation policies, which did compensate for overtime; and their classification as exempt under the outside sales exemption.[99] Plaintiffs have provided evidence that they have been injured by ACS' failure to provide overtime compensation, that they share this injury with members of the proposed class, and that this injury stems from the same conduct, including classification as exempt, similar policies and practices, and similar duties and tasks.[100] Plaintiffs have therefore demonstrated that their claims are reasonably co-extensive with those of the proposed class members.

ACS' contention that Plaintiff Peterson is subjected to unique defenses is also without merit. ACS raises the specter of a defense unique to Plaintiff Peterson – that there is an alternate basis for her exemption – without adequately establishing or explaining how such defense would be unique or applicable as to her. The record demonstrates that ACS classified all CAMs, including Plaintiff Peterson, as subject only to the outside sales exemption.[101] Moreover, as Plaintiffs

---

[99] *See supra* nn. 81–87.

[100] *See Ambrosia*, 312 F.R.D. 544, 554.

[101] *See* Dkt. 287 at 4.

relevantly point out, ACS later contends that numerous other class members, including Plaintiff Peterson, are subject to these same defenses, suggesting that any such defense would not be unique to Plaintiff Peterson and could potentially be resolved through classwide resolution.[102] Because ACS does not demonstrate how Plaintiff Peterson is subject to a unique defense—and the Court cannot determine how these defenses are unique to or applicable to Plaintiff Peterson—the Court rejects ACS' argument that Plaintiff Peterson's AWHA claim is not typical.[103]

Finally, the Court rejects ACS' contention that Plaintiff Peterson is atypical because of credibility concerns. Some courts do not consider credibility part of the typicality analysis,[104] while other courts consider that credibility for both the adequacy and typicality analyses.[105] Where courts have considered credibility in assessing the appropriateness of a class representative, they have held that "credibility issues will defeat typicality only where those credibility problems are directly relevant to the issues in the case, and are 'so sharp as to jeopardize the interests of absent class members.'"[106] Courts that have considered credibility explain that "th[is] standard is extremely difficult to satisfy," and is limited to "flagrant cases where putative class representatives display

---

[102] *See* Dkt. 289 (Opposition), at 36–39.

[103] The Court later holds, when conducting its predominance inquiry, that ACS' two claimed affirmative defenses, (1) the administrative exemption, and (2) the highly compensated exemption, can be resolved through a classwide basis. *See* Section V.C.1.

[104] *See Krzesniak v. Cendant Corp.*, No. 05-cv-05156, 2007 WL 1795703, at *9 (N.D. Cal. June 20, 2007) ("[A]ny potential credibility challenges are not relevant to the Court's preliminary typicality finding-whether Defendants challenge Plaintiff's credibility is not relevant to a determination that his claims regarding misclassification are typical of the class.").

[105] *See Alakozai v. Chase Inv. Servs. Corp.*, No. CV 11-0917 SJO (JCx), 2014 WL 5660697, at *14 (N.D. Cal. Oct. 6, 2014) ("In some circumstances, a class representative's lack of credibility may weigh against a finding of typicality or adequacy.").

[106] *In re Myford Touch Cons. Litig.*, No. 13-cv-3072-EMC, 2016 WL 7734558, at *11 (N.D. Cal. Sept. 14, 2016) (internal quotation marks omitted).

Case 3:12-cv-00090-TMB   Document 300   Filed 08/28/18   Page 25 of 39

an alarming unfamiliarity with the suit, display an unwillingness to learn about the facts underlying their claims, or are so lacking in credibility that they are likely to harm their case."[107]

ACS' argument is an extension of a dispute between the parties involving Plaintiff Peterson's deposition testimony, and her subsequent errata sheet which altered responses Plaintiff Peterson gave during her deposition.[108] ACS at the time categorized the nine challenged and inconsistent statements into three categories: (1) statements regarding Plaintiff Peterson's resume; (2) statements regarding her responsibilities at ACS; and (3) familiarity with duties performed by other sales employees.[109]

While some of these statements may have relevance to the issues in the litigation, the Court cannot conclude, on the basis of the evidence in the record, that such credibility issues are so sharp as to jeopardize absent class members, nor is this a flagrant case where credibility concerns are likely to predominate or preoccupy the litigation. Plaintiff Peterson previously explained that many of her clarifications to her deposition transcript in the errata were consistent with statements made throughout the deposition.[110] Based on the record before it, including the deposition transcript[111] and the explanations offered by Plaintiff Peterson, the Court determines that Plaintiff Peterson's corrections to her testimony do not rise to the level that would implicate the typicality

---

[107] *Romo v. GMRI, Inc.*, 2013 U.S. Dist. LEXIS 56898, *6 (C.D. Cal. Feb. 16, 2013). *See also Cones v. Parexel Int'l Corp.*, No. 16cv3084, 2018 WL 3046424, at *6, n.10 (S.D. Cal. June 20, 2018).

[108] *See* Dkt. 238 (Motion in Limine); Dkt. 242 (Response to Motion in Limine); Dkt. 250 (Reply to Response to Motion in Limine); Dkt. 262 (Order).

[109] Dkt. 238 at 3-6.

[110] *See* Dkt. 243 (explaining reasons for proposed alterations).

[111] *See* Dkt. 244-2.

requirement.[112] As ACS does not otherwise make any other credibility challenges under typicality, the Court rejects ACS' argument that Plaintiff Peterson is atypical based on credibility concerns.

Thus, the typicality requirement is satisfied.

4. Adequacy

The adequacy requirement is satisfied where "the representative parties will fairly and adequately protect the interests of the class."[113] A determination of adequacy involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[114] In this determination, courts have reviewed numerous factors, including "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive."[115]

Here, Plaintiffs assert that they harbor no known conflicts of interest with the potential class members, that they are fully prepared to prosecute this action, and that their counsel is well qualified and experienced in labor class actions.[116] The Court agrees that there is no indication of conflicts of interest between Plaintiffs and other class members, and that Plaintiffs and their

---

[112] While these statements may not be so sharp as to affect the typicality or adequacy analyses, these inconsistent statements are certainly relevant for cross-examination at trial. *See Moore v. Int'l Cosmetics and Perfumes, Inc.*, No ED CV 14-1179, 2016 WL 7644849, at *18 (C.D. Cal. March 27, 2016) ("These statements, while certainly fodder for cross-examination at trial, are not so contradictory as to raise alarming credibility issues at this stage of the proceedings.").

[113] Fed. R. Civ. P. 23(a)(4).

[114] *Hanlon*, 150 F.3d 1011, 1020. *See also Ellis*, 657 F.3d 970, 985.

[115] *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992).

[116] *See* Dkt. 279 at 2; Dkt. 280 at 2; Dkt. 281 at 2; Dkt. 283 at 2–4.

counsel appear ready to prosecute the action vigorously on behalf of the class. On this basis, Plaintiffs appear to have met the adequacy requirement under subsection (a)(4).

ACS does not dispute these points. Instead, ACS argues that Plaintiffs Peterson and Hubbs are not adequate class representatives due to credibility issues.[117] The Court has already determined Plaintiff Peterson's credibility issues do not rise to the level where they would implicate her typicality; the Court extends its reasoning to hold that it does not implicate her adequacy to serve as a class representative.[118] Plaintiff Hubb's potential credibility issues— namely, ACS' assertion that her deposition testimony is inconsistent with a resume or application she drafted after she left ACS—are similarly not significant enough to implicate the adequacy analysis.[119]

Accordingly, the adequacy requirement is satisfied.[120] Thus, Plaintiffs have demonstrated that the proposed class has satisfied the requirements of Rule 23(a).

---

[117] ACS does not challenge the credibility of Plaintiff Shepherd, nor does ACS otherwise challenge the adequacy of her serving as a class representative.

[118] *See supra* Section V.B.3.

[119] As discussed, minor inconsistencies in testimony generally do not rise to the level that would implicate the adequacy requirement. *See Ambrosia*, 312 F.R.D. 544, 555 ("The relatively minor discrepancies [defendant] highlights do not give rise to a reasonable suspicion about the adequacy of the representative plaintiffs.").

[120] As the Court addressed Plaintiffs' ability to appoint non-named plaintiff class representatives (e.g. Hubbs and Shephard) in addition to Plaintiff Peterson in a prior section, it declines to address ACS' arguments again under the adequacy requirement.

*C. Whether the Requirements of Fed. R. Civ. P 23(b) Have Been Met*

  1. Predominance of Common Questions

Rule 23(b)(3) first requires that "the questions of law or fact common to class members *predominate* over any questions affecting only individual members."[121] "The predominance inquiry focuses on 'the relationship between the common and individual issues' and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"[122] "While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3) asks whether these common questions predominate."[123] Although courts have noted there is overlap between the commonality requirement under (a)(2) and the predominance inquiry under (b)(3), the predominance inquiry "is far more demanding."[124]

The Ninth Circuit has provided additional guidance and considerations in determining whether to certify a class action challenging employees' exemption classification. First, the Ninth Circuit has made it clear that a uniform exemption policy, while "a permissible factor for consideration under Rule 23(b)(3),"[125] cannot by itself be used to establish that common issues predominate, and cannot be used "to the near exclusion of other factors relevant to the predominance inquiry."[126] Second, the outside salesperson exemption "will militate against certification because . . . it requires a fact-intensive inquiry into each potential plaintiff's

---

[121] Fed. R. Civ. P. 23(b)(3) (emphasis added).

[122] *Vinole*, 571 F.3d at 944.

[123] *Wolin v. Jaguar Land Rover N.A., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).

[124] *Id.* (internal quotation marks omitted).

[125] *In re Wells Fargo*, 571 F.3d 953, 957.

[126] *Id.* at 959.

employment situation."[127] Third, certification of a class challenging the outside salesperson exemption is appropriate where there are "centralized rules . . . suggest[ing] a uniformity among employees that is susceptible to common proof,"[128] and where "the employer exercised some level of centralized control in the form of standardized hierarchy, standardized corporate policies and procedures governing employees, uniform training programs, and other factors susceptible to common proof."[129]

The Court begins by noting that determining whether common questions will predominate over individual questions here is a close question. Evidence pointed to by both ACS and Plaintiffs have made this an especially tough determination. Having considered the record before it, the Court determines that Plaintiffs have demonstrated that common questions will predominate over individual questions.

First, Plaintiffs pointed to evidence in the record that CAMs in the Anchorage office all performed the same job duties and tasks, and that these duties and tasks were reflected in job descriptions, job postings, and performance appraisal materials.[130] Second, ACS exercised close control over the sales process, by both training CAMs on their specific sales process, and expecting CAMs to follow this sales process when interacting with clients.[131] For instance, the "Alaska Communications Sales Process" is defined by a seven step process, including: (1) "Call Preparation/Pre-Work;" (2) "Customer Appointment;" (3) "Vision Confirmation;" (4) "Solution

---

[127] *Id.* (internal quotation marks omitted).

[128] *Id.* 958–59.

[129] *Vinole*, 571 F.3d 935, 946.

[130] *See supra* nn. 81–82.

[131] *See supra* n. 83.

30

Development;" (5) "Proposal Preparation;" (6) "Working the Power map;" and (7) "Client Decision/Closing."[132] Testimony from current and former CAMs, as well as ACS management, reflect that this sales process is closely followed by CAMs, and that ACS exercised control over this process through controlling the pricing of products, establishment of sales revenue quotas, and routine check-in meetings of CAMs work.[133] Third, evidence shows that CAMs – following the ACS sales process – conducted these duties and tasks primarily from the ACS office in Anchorage, and this process regularly required CAMs to work in an excess of 40 hours per week.[134] Finally, CAMs' work schedules were subject to control by ACS, CAMs were paid under the same compensation policies, and all CAMs were classified as exempt under the outside sales exemption.[135]

The collective evidence demonstrates that there is uniformity that is susceptible to common proof. The proposed class is unlike the proposed classes in *Vinole*[136] or *In re Wells Fargo*;[137] here, Plaintiffs have pointed to several uniform policies and practices beyond just the uniform outside sales exemption. For instance, Plaintiffs have pointed to the uniform job descriptions and job appraisal forms of CAMs, the uniform ACS sales process for which CAMs receive training, and are expected to adhere to in their employment, ACS' close management and supervision of CAMs, and the uniform policy of requiring CAMs to work more than 40 hours per week. Plaintiffs have

---

[132] Dkt. 283-12 (Palmer Decl., Ex. L), at 3.

[133] *See supra* n. 83.

[134] *See supra* nn. 84–85.

[135] *See supra* nn. 86–87.

[136] 571 F.3d 935.

[137] 571 F.3d 953.

Case 3:12-cv-00090-TMB   Document 300   Filed 08/28/18   Page 31 of 39

also highlighted deposition testimony that demonstrates that, while the percentage of time spent on certain tasks and duties varies by each CAM, the jobs and duties of CAMs closely follow the ACS sales process. Although the percentages of the tasks and duties performed by CAMs varied by individual, CAMs only varied in their time spent out of the office between 10% and 30%, and otherwise performed the same tasks and duties and were subject to the same supervision, training, and guidance. District courts have found the predominance inquiry satisfied under similar factual and evidentiary circumstances.[138] Moreover, to the extent that ACS argues that the proposed class members lack common proof as to each member's damages due to a lack of time keeping records, individualized damages alone cannot defeat a finding that the predominance inquiry is satisfied.[139]

---

[138] *See Ambrosia*, 312 F.R.D. 544, 557 (predominance satisfied where "all of the putative class members sell roughly the same products, are recruited and hired using the same job description, and are paid under the same compensation plan," and employee testimony corroborated that the duties and tasks were similar); *Chastain*, 2016 WL 1572542, at *9 (predominance satisfied where "uniform policies and procedures led to the alleged under-compensation and that [d]efendants never singled out employees for different treatment," and "all employees were equally subjected to late paychecks, off-the-clock requirements, time shaving, and unpaid breaks"); *Martino v. Ecolab, Inc.*, No. 14-cv-04358-PSG, 2016 WL 614477, at *5–6 (N.D. Cal. Feb. 16, 2016) (predominance satisfied where, despite "hands-off approach to [employees] means that each of them does the job differently," where employee declarations demonstrated that less than 50% of tasks were related to sales, not including tasks that were incidentally related to sales); *Troy v. Kehe Food Distributors, Inc.*, 276 F.R.D. 642, 657 (W.D. Wash. 2011) (predominance satisfied where employees' "job duties and responsibilities are consistent and subject to centralized control," and common questions such as "whether the [state law] exemption applies," among others, predominate over the "individualized questions of damages").

[139] *See Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("[D]amage calculations alone cannot defeat certification. We have said that the amount of damages is invariably an individual question and does not defeat class action treatment." (internal quotations omitted)). The Court explicitly notes that it does not express an opinion on the use of a representative sample in determining damages in this proposed class action. *See Tyson Foods v. Bouaphakeo*, 136 S.Ct. 1036 (2016). The Court does note that Alaska state law requires employers to keep adequate and accurate records of the hours worked, and that ACS was required to maintain such records. *See* Alaska Stat. § 23.10.100; Alaska Admin. Code tit. 8, § 15.900(b). The Court also recognizes that Courts have used representative sampling and/or representative testimony to supply common evidence as to damages where employers have kept accurate records of the hours worked. *See Ambrosia*, 312 F.R.D. at 557–58 (noting that plaintiffs expect to demonstrate damages through "representative testimony and statistical analysis" where records kept were "unreliable"

Accordingly, as Plaintiffs have provided evidence that common questions predominate over the individual questions, the predominance inquiry is satisfied.

ACS additionally argues that individual issues will predominate because some class members may have to defend against the invocation of two additional exemptions: (1) the administrative exemption; and (2) the highly compensated exemption. But neither of these affirmative defenses will lead to individual issues predominating over the common questions of law and fact, as—based on the evidence in the record demonstrating similarly situated CAMs— both the administrative exemption and the highly-compensated exemption are amenable to classwide resolution.

Alaska law provides that individuals employed "in a bona fide executive, administrative, or professional capacity" are exempt under the AWHA.[140] The AWHA states that the meaning of "bona fide executive, administrative, or professional capacity" has the meaning as interpreted under the FLSA.[141] In interpreting the FLSA, the Ninth Circuit has noted that the administrative exemption covers work which "contributes to running the business itself" or "determin[es] the business'] overall course or policies."[142] FLSA guidelines further highlight that the selling of

---

and hours worked varied widely); *Mooney v. Domino's Pizza, Inc.*, No. 1:14-cv-13723-IT, 2016 WL 4576996, at *7 (D. Mass. Sept. 1, 2016) ("[T]o the extent that [the defendants'] time records are insufficient to allow adjudication of Plaintiffs' 'inside work' claim on an individual or class basis, representative testimony as to how many hours class members typically spent performing particular duties while inside will supply the necessary common evidence.").

[140] Alaska Stat. § 23.10.055(a)(9).

[141] Alaska Stat. § 23.10.055(c)(1).

[142] *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1127-28 (9th Cir. 2002) (internal quotation marks omitted). As Plaintiffs have correctly identified, Alaska courts will look to federal court interpretation of the FLSA for their own interpretation of consistent aspects in the AWHA. *See McKeown v. Kinney Shoe Corp.*, 820 P.2d 1068, 1070 n.2 (Alaska 1991).

products or services generally does not qualify for the administrative exemption.[143] Additionally, under the FLSA, "[a]n employee with annual compensation of at least $100,000 is deemed exempt . . . if the employee customarily and regularly performs any one of more of the exempt duties or responsibilities of an executive, administrative or professional employee."[144] The highly compensated exemption is not satisfied where the primary role of an employee is sales.[145]

To the extent these exemptions are applicable in the present case, they would not raise the type of individualized inquiries which defeat predominance. In contrast to cases in which putative class members had different job titles and performed a wide range of tasks,[146] CAMs at ACS all held the same job and performed substantively the same duties and tasks under a uniform sales process.[147] Whether the common duties and tasks of CAMs contributed to the running of ACS, or of determining ACS' overall course or policies is a question that can be resolved classwide. Thus,

---

[143] See 29 C.F.R. § 541.201 ("To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers . . . . To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from . . . selling a product in a retail or service establishment."); 69 Fed. Reg. 22122-01, 22,146 ("The Department agrees that employees whose primary duty is inside sales cannot qualify as exempt administrative employees.").

[144] See McCoy v. North Slope Borough, No. 3:13-cv-64-SLG, 2013WL 4510780, at *8 (D. Alaska Aug. 26, 2013) (citing 29 C.F.R. § 541.601(a)).

[145] See Misra v. Decision One Mortg. Co., LLC, 673 F. Supp. 2d 987, 998 (C.D. Cal. 2008) (rejecting highly compensated exemption where primary duty of employees was sales (citing 29 C.F.R. § 541.203(b)).

[146] See, e.g., Payala v. Wipro Techs., Inc., No. LACV1504063JAKJPRX, 2016 WL 6094158, at *10 (C.D. Cal. Aug. 23, 2016) (collecting cases and finding that individual inquiries would be necessary where "members of the putative class in the present action hold ten different job titles," and "Plaintiff did not submit evidence of any uniform job descriptions for the ten job titles").

[147] See supra nn. 81-82.

common issues would predominate over individualized issues even with respect to potential alternative exemptions.

Additionally, while the Court does not reach a conclusion on these issues, the Court notes that neither exemption is so plausible as to impact predominance.[148] ACS argues that deposition testimony reflects that some CAMs had significant responsibility, autonomy, and discretion, and that at least one CAM viewed herself as a "quarterback." But the current record demonstrates that the duties and tasks of CAMs are more in line with salespeople than with employees working in an administrative capacity. The evidence also shows that ACS originally believed that only the outside sales exemption applied, and that the administrative exemption was inapplicable based on these duties and tasks of CAMs.[149] Moreover, as Plaintiffs correctly point out, it is not clear that the AWHA has adopted or recognizes an analogous highly compensated exemption as under the FLSA.[150]

---

[148] This Court stresses that this is not a firm conclusion—merely that the evidence in the record does not clearly support the alternative exemptions ACS claims are applicable to potential class members. *See, e.g., Jackson v. Bloomberg, L.P.,* 298 F.R.D. 152, 167 (S.D.N.Y. 2014) (explaining that "it is appropriate to consider the merits of Bloomberg's exemption defense to determine its plausibility" and concluding that "the widespread existence of plausible administrative exemptions is too low to conclude that individualized issues will predominate over common ones").

[149] *See* Dkt. 283-13 (Palmer Decl., Ex. M) at 7 ("I do not think the administrative exemption is applicable here because sales representatives do not perform duties 'directly related to management policies or general business operations of the employer of the employer's customers.'"); Dkt. 287 (listing applicable exemption as outside sales).

[150] *See* Dkt. 299-1 (Palmer Decl., Ex. 1) ("The State of Alaska has not adopted the highly compensated exemption . . . . Therefore, while it is possible that [Peterson] may be exempt under federal law, State of Alaska overtime regulations under AS 23.10.060 are still applicable."). *See also Janes v. Otis Eng'g Corp.,* 757 P.2d 50, 54 (Alaska 1988) ("[Alaska Department of Labor letter] accord[ed] some deference [due] to the agency's expertise in evaluating pay plans of employers.").

35

Thus, there are no unique or individual defenses that would predominate over the common questions of law or fact. Plaintiffs have otherwise shown that appropriate evidence in the record demonstrates that there are issues that are susceptible to common proof. Accordingly, the predominance inquiry under (b)(3) is satisfied.

2. Superiority

Rule 23(b)(3) additionally requires that the "class action [be] *superior* to other available methods for fairly and efficiently adjudicating the controversy."[151] Subsection (b)(3) provides that relevant findings include: "(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."[152] "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis."[153]

Plaintiffs argue that each of these four factors weighs in favor of certification. First, Plaintiffs contend that class treatment is superior because there is no indication that the class members have an interest in individually controlling the prosecution of the action. Plaintiffs note that this case has been pending for almost six years, the parties have already expended considerable resources, and, to the extent that class members desire to individually control their own prosecution

---

[151] Fed. R. Civ. P. 23(b)(3) (emphasis added).

[152] *Id.*

[153] *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).

of the AWHA claim, they can opt out of the class.[154] Second, Plaintiffs stress that there are no known competing lawsuits pending against ACS over the claims in this litigation, and that there is no risk of either multiplicity of suits or inconsistent adjudication. Third, Plaintiffs maintain that concentrating the claims in a single forum would foster efficiency where the employees all worked at one office located in Anchorage, and the Court and counsel are familiar with the claims and evidence. Finally, Plaintiffs emphasize that this class action is manageable as the class is subject to common proof regarding the application and effect of companywide policies and practices, and as there are only 67 potential class members, all of whom are either former or current employees of one ACS office.

ACS advances only three arguments against superiority: (1) that individuals have a significant interest in prosecuting separate actions where the individual recovery amount for each class member is high; (2) that class treatment is unmanageable due to the prevalence of individualized issues; and (3) superiority is lacking because of the low FLSA opt-in rate. These arguments lack merit. First, courts have rejected the argument that a potentially high award value for each individual class member weighs *against* class certification; instead, it merely does not weigh *for* class certification.[155] Second, the Court has already determined that common questions of law and fact predominate over any individualized issue. The individualized issues identified by

---

[154] *See Ellis v. Costoco Wholesale Corp.*, 285 F.R.D. 492, 539–40 (N.D. Cal. 2012) (noting that ability to opt out of the class under (b)(3) diminishes a class member's "interest in individually controlling the common portions of this action").

[155] *See Zinser*, 253 F.3d at 1191 ("However, the minimum amount alleged to be in controversy for each putative class member does not argue persuasively for class certification."); *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 444 (C.D. Cal. 2014) ("[T]he potentially high value of the claims does not weigh against class certification . . . . [T]he fact that the claims are high value simply means that the value of the claims does not weigh *in favor* of certifying the class; it does not necessarily mean that the value of the claims weighs *against* certifying the class." (emphasis in original)).

Case 3:12-cv-00090-TMB   Document 300   Filed 08/28/18   Page 37 of 39

ACS would not make the class unmanageable. Lastly, the Court rejects the contention that a low FLSA opt-in rate would indicate a lack of superiority for the same reasons the Court refused to limit the numerosity analysis to the opt-in Plaintiffs.[156] There are several reasons that employees may not wish to opt in as a plaintiff in an FLSA collective action but may wish to be part of a class seeking recovery under a state law. To the extent that putative class members do not wish to be part of the class, they may opt out of the class.[157]

The Court agrees with Plaintiffs' reasoning, and further agrees that the four factors weigh in favor of certifying the proposed class. The Court finds that class treatment is likely to reduce litigation costs and promote efficiency, and that it is superior to other forms of adjudicating the controversy. Thus, the superiority inquiry under (b)(3) is satisfied. Plaintiffs have demonstrated that they satisfy the requirements of Rule 23(b)(3). As Plaintiffs have also satisfied the requirements of Rule 23(a), Plaintiffs have demonstrated that certification of the proposed class seeking recovering of claims based on violations of the AWHA is appropriate.

D. *Partial Certification Under Rule 23(c)(4)*

Because the Court has agreed that class certification is appropriate under Rule 23(b)(3), the Court declines to address at this time Plaintiffs' alternative argument for partial certification under Rule 23(c)(4).

---

[156] *See supra* Section V.B.1.

[157] Should the proposed class ultimately suffer from a low participation rate among class members, the Court is willing to revisit its conclusion that the class action is the superior form of adjudicating the controversy.

Case 3:12-cv-00090-TMB   Document 300   Filed 08/28/18   Page 38 of 39

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Certification of a Rule 23 Class Action at docket 278 is **GRANTED**. Accordingly:

(1) The Court **GRANTS** Plaintiffs' Motion for Class Certification of Plaintiffs' state-law claim pursuant to Rule 23(b)(3);

(2) The Court **APPOINTS** Michael D. Palmer of the law firm Sanford Heisler Sharp, LLP as class counsel; and **APPOINTS** Laura Lee Peterson, Carrie Shephard, and Sharon Hubbs as class representatives; and

(3) The Court **ORDERS** the parties to (i) contact the Court within 10 days of this order to schedule a status conference and (ii) submit a status report and proposed scheduling order within 14 days of this order. Prior to the scheduled status conference, counsel shall file a proposed form of a class notice consistent with Rule 23(c)(2)(B).


IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 28th day of August, 2018.

*/s/Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE