IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAURA LEE PETERSON, ET AL.,<br><br>                 Plaintiffs,<br><br>      v.<br><br>ALASKA COMMUNICATIONS SYSTEM GROUP INC., ET AL.,<br><br>                 Defendants. | Case No. 3:12-cv-00090-TMB<br><br>**ORDER ON DEFENDANTS' MOTIONS TO AMEND CLASS DEFINITION (DKT. 357) AND MOTION REGARDING MANAGER CLASS MEMBERS (DKT. 363)** |

## I.     INTRODUCTION

The matter comes before the Court on Defendants Alaska Communications Systems Group, Inc. and Alaska Communications Systems Holdings, Inc.'s (collectively, "ACS") Motion to Amend Class Definition ("Motion to Amend") and Motion Regarding Manager Class Members ("Motion Regarding Managers").[1] Plaintiff Laura Lee Peterson, on behalf of the those similarly situated, filed Responses opposing each Motion.[2] ACS filed a Reply to each of Peterson's Responses.[3] The matter is now ripe for resolution. For the reasons discussed below, the Motion to Amend is **GRANTED** and the Motion Regarding Managers is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Dkts. 357 (Motion to Amend), 363 (Motion Regarding Managers).

[2] Dkts. 362 (Response), 371 (Response).

[3] Dkts. 366 (Reply), 373 (Reply).

## II. BACKGROUND[4]

Peterson, a former sales employee at ACS, sued ACS on behalf of herself, additional named plaintiffs, and a class of potential plaintiffs for allegedly violating the overtime provisions of the Fair Labor Standards Act ("FLSA") and the AWHA.[5] The instant dispute centers on Plaintiff's allegation that ACS improperly classified them and other Client Account Managers ("CAMs") as exempt under the outside sales exemption, and that ACS failed to pay overtime in violation of state and federal law.[6] On August 28, 2018, the Court certified the class represented by Peterson as:

> All full-time exempt employees who work or worked for ACS in the job position which is currently titled "Client Account Manager (I, II, or III)," (formerly known as "Account Executive" or, in the case of the Carrier/Federal group, "Senior Manager" or Sr. CAM"), in the ACS Anchorage office from April 30, 2010 through the date of judgment.[7]

ACS filed the present Motion to Amend on August 13, 2019, requesting the Court amend the class definition to clarify that it includes only current and former ACS employees who were employed on or before March 14, 2019—the date Class Counsel notified the Class Members pursuant to Fed. R. Civ. P. 23.[8] Specifically, ACS argues the Court should adopt the following definition:

> All full-time exempt employees who work or worked for ACS in the job position which is currently titled "Client Account Manager (I, II, or III)," (formerly known as "Account Executive" or, in the case of the Carrier/Federal group, "Senior Manager" or Sr. CAM") *("Covered Positions")*, in the ACS Anchorage office from

---

[4] The Court incorporates the factual summaries from its previous orders, *see* Dkts. 20, 100, 252, 300, and only provides a brief recitation of the facts herein. The Court in its analysis cites to the evidentiary record where appropriate.

[5] Dkt. 52 (Amended Complaint).

[6] *Id.*

[7] Dkt. 300 at 3 (Order Certifying Class).

[8] Dkt. 357 at 7–8.

April 30, 2010 through the date of judgment, *but provided their employment in a Covered Position commenced on or before March 14, 2019.*[9]

Peterson filed a Response to the Motion to Amend on September 17, 2019. Proposing the alternative definition:

All current and former full-time exempt employees who worked for ACS in the job position which is currently titled "Client Account Manager (I, II, or III)," (formerly known as "Account Executive" or, in the case of the Carrier/Federal group, "Senior Manager" or "Sr. CAM"), in the ACS Anchorage office at any point between April 30, 2010 and March 14, 2019.[10]

In its Reply, ACS stated that it did not oppose Peterson's proposed definition.[11]

On September 19, 2012, ACS filed its Motion Regarding Managers, which raised several questions related to eight absent class members who currently manage or directly supervise other class members ("Manager Class Members" or the "MCMs").[12] Specifically, ACS raises four issues: (1) whether the class definition should be amended to exclude the MCMs due to a conflict of interest with the non-manager class members;[13] (2) if not, whether ACS may communicate *ex parte* with the MCMs concerning their supervision of class members;[14] (3) whether Class Counsel can communicate *ex parte* with the MCMs about their supervision of class members;[15] and (4) if the class definition is not amended and ACS is not allowed to communicate *ex parte* with the

---

[9] *Id.*

[10] Dkt. 362 at 3.

[11] Dkt. 366.

[12] Dkt. 363.

[13] Dkts. 363 at 17; 373 at 3–6.

[14] Dkts. 363 at 8–12; 373 at 6–9.

[15] Dkts. 363 at 14–17; 373 at 9.

MCMs about their subordinates, whether ACS will be allowed to conduct additional depositions. Peterson filed her Response on October 18, 2019; [16] and ACS filed its Reply on October 25, 2019.[17]

Each of ACS's Motions has been fully briefed and are ripe for resolution.

## III. LEGAL STANDARD

### A. Amending a Class Definition

Under Federal Rule of Civil Procedure 23(c)(1), a class definition may be altered or amended at any time prior to the issuance of a final judgment. District courts have broad authority to amend, modify, or withdraw certification during the course of class litigation.[18] When considering a proposed class definition courts must look to "each of the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the requirements of Rule 23(b)."[19] Modifications to a class definition are generally favored where "the proposed modifications are minor, require no additional discovery, and cause no prejudice to [the opposing party]."[20]

---

[16] Dkt. 271.

[17] Dkt. 273.

[18] *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 546 (9th Cir. 2013). *See also United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010); *Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir. 2001), *abrogated on other grounds*, *Tinsley v. Snyder*, 922 F.3d 957 (9th Cir. 2019) ("Where appropriate, the district court may redefine the class."); *Penk v. Oregon State Bd. of Higher Educ.*, 816 F.2d 458, 467 (9th Cir. 1987).

[19] *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017), *cert. denied sub nom.*, *ConAgra Brands, Inc. v. Briseno*, 138 S. Ct. 313 (2017).

[20] *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 590-91 (N.D. Cal. 2010). *See also Patten v. Vertical Fitness Grp., LLC*, No. 12CV1614-LAB (MDD), 2013 WL 12069031, at \*4 (S.D. Cal. Nov. 8, 2013).

## B. *Conflicts of Interest Among Class Members*

Rule 23(a)(4) allows a class action to be certified only if "the representative parties will fairly and adequately protect the interests of the class." To determine whether the representation meets this standard, the Ninth Circuit employs a two-part inquiry: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[21] There is no *per se* rule concerning whether a named plaintiff can adequately represent employees at different levels of the employment hierarchy, such as subordinates representing supervisors.[22] Instead, Courts must examine whether the context of the case demands that certain members be excluded due to an intractable conflict.[23]

## IV.    DISCUSSION

### A. *ACS's Motion to Amend*

The Court originally certified the class represented by Peterson as:

> All full-time exempt employees who work or worked for ACS in the job position which is currently titled "Client Account Manager (I, II, or III)," (formerly known as "Account Executive" or, in the case of the Carrier/Federal group, "Senior Manager" or Sr. CAM"), in the ACS Anchorage office from April 30, 2010 through the date of judgment.[24]

---

[21] *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

[22] *Id.* at 958.

[23] *See e.g. In re Anthem, Inc. Data Breach Litig.,* 327 F.R.D. 299, 309 (N.D. Cal. 2018*), appeal dismissed sub nom. In re Anthem, Inc., Customer Data Sec. Breach Litig.*, No. 18-16866, 2018 WL 7890391 (9th Cir. Oct. 15, 2018), *and appeal dismissed sub nom. In re Anthem, Inc., Customer Data Sec. Breach Litig.*, No. 18-16826, 2018 WL 7858371 (9th Cir. Oct. 17, 2018).

[24] Dkt. 300 at 3.

ACS now requests that the Court amend the class definition to clarify that it includes only current and former ACS employees who were employed on or before March 14, 2019—the date Class Counsel notified the Class Members pursuant to Fed. R. Civ. P. 23.[25] Specifically, ACS requests the Court adopt the following definition:

> All full-time exempt employees who work or worked for ACS in the job position which is currently titled "Client Account Manager (I, II, or III)," (formerly known as "Account Executive" or, in the case of the Carrier/Federal group, "Senior Manager" or Sr. CAM") *("Covered Positions")*, in the ACS Anchorage office from April 30, 2010 through the date of judgment, *but provided their employment in a Covered Position commenced on or before March 14, 2019.*[26]

ACS argues that this definition would prevent additional plaintiffs from joining the class after the putative class members were first notified.[27] As it stands, ACS contends, the class definition could be interpreted to "allow subsequent inclusion of any individuals who are later hired into ACS sales positions that are at issue in this case, provided their hire date occurs on or before final judgment date."[28] ACS argues that this would cause undue administrative difficulty in processing the case and would violate its due process rights by creating a mechanism for "one-way intervention."[29]

Peterson does not oppose ACS's request that the class be amended but requests the following amended definition, which differs slightly from the one ACS proposes.

---

[25] Dkt. 357 at 7–8.

[26] *Id.*

[27] *Id.* at 1–2.

[28] *Id.* at 3.

[29] *Id.* at 4–6. ("The concept of 'one-way intervention' means 'the intervention of a plaintiff in a class action after an adjudication favoring the class had taken place.' *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995)").

> All current and former full-time exempt employees who worked for ACS in the job position which is currently titled "Client Account Manager (I, II, or III)," (formerly known as "Account Executive" or, in the case of the Carrier/Federal group, "Senior Manager" or "Sr. CAM"), in the ACS Anchorage office at any point between April 30, 2010 and March 14, 2019.[30]

Peterson argues that a definition which retains the reference to the "date of judgment" alongside "March 14, 2019" is unduly confusing—if not superfluous.[31] Peterson notes that the only dates relevant to the definition of the class are April 30, 2010 and March 14, 2019.[32] The date of judgment, Peterson claims, is only relevant inasmuch as plaintiffs seek damages up to the date of final judgment.[33]

Here, the proposed modification does not significantly change numerosity, commonality or typicality, under Rule 23(a).[34] Furthermore, the modification decreases "the likely difficulties in managing a class action" under Rule 23(b)(3)(D). Under the current definition, putative class members could be continually added to this case. Because class members must be afforded an opportunity to opt-out under Rule 23, it would present ministerial difficulties to repeatedly notify putative class members throughout the litigation. Therefore, the Court finds that modification is appropriate under Rule 23(b). Additionally, the modification requires no additional discovery and is generally agreed to by the Parties,[35] neutralizing any prejudice. In light of these considerations,

---

[30] Dkt. 362 at 3.

[31] *Id.*

[32] *Id.* at 3–4.

[33] *Id*. at 4.

[34] In fact, the proposed modifications make no changes to the legal claims at issue or the status of class members notified on or before March 14, 2019. Therefore, the Court's analysis of the Rule 23(a) factors in its Class Certification Order is unchanged.

[35] *See* Dkts. 357 and 362.

the Court finds that modifying the class to include only individuals employed by ACS from April 30, 2010 to March 14, 2019 is appropriate.

Accordingly, ACS's Motion to Amend is **GRANTED**. The Class Certification Order at docket 300 is **HEREBY AMENDED** to define the class as the follows:

> All current and former full-time exempt employees who worked for ACS in the job position which is currently titled "Client Account Manager (I, II, or III)," (formerly known as "Account Executive" or, in the case of the Carrier/Federal group, "Senior Manager" or "Sr. CAM"), in the ACS Anchorage office at any point between April 30, 2010 and March 14, 2019.

### B. ACS's Motion Regarding Managers

ACS Motion Regarding Managers raises four questions related to eight absent class members who currently manage or directly supervise other class members: (1) whether the class definition should be amended to exclude the MCMs due to a conflict of interest with the non-manager class members;[36] (2) if not, whether ACS may communicate *ex parte* with the MCMs concerning their supervision of class members;[37] (3) whether Class Counsel can communicate *ex parte* with the MCMs about their supervision of class members;[38] and (4) if the class definition is not amended and ACS is not allowed to communicate *ex parte* with the MCMs about their subordinates, whether ACS will be allowed to conduct additional depositions.[39] The Court considers each question in turn.

---

[36] Dkts. 363 at 17; 373 at 3–6.

[37] Dkts. 363 at 8–12; 373 at 6–9.

[38] Dkts. 363 at 14–17; 373 at 9.

[39] Dkt. 373 at 9–10.

1. <u>Whether the Class Definition Should Exclude the MCMs.</u>

ACS argues that the inclusion of the MCMs in the class creates an intra-class conflict of interest.[40] The eight MCMs at issue are: Kimberly Booth, Jeffery Glaser, Stephen Heckel, John Hoff, Ernest Hurst, Scott Johnson, Sean Lindamood, and Brian Solomon.[41] ACS attempts to articulate a conflict between the MCMs and non-manager class members. ACS argues that the MCMs supervised a sizable portion of the class—37 members.[42] This means that the MCMs were responsible for aspects of hiring, evaluating, and training class members.[43] Further, ACS alleges, the MCMs may have had a hand in assigning quotas to their subordinates.[44] ACS also contends that the nature of the MCMs' supervision and their observations about their subordinates are highly relevant to the case and important to the defense.[45] These facts, ACS concludes, establish a conflict between the MCMs and the remainder of the class.[46] It does not.

There is no *per se* rule concerning whether a named plaintiff can adequately represent employees at different levels of the employment hierarchy, such as subordinates representing supervisors.[47] In *Staton*, the Ninth Circuit held that the "question of whether employees at different levels of the internal hierarchy have potentially conflicting interests is context-specific and

---

[40] Dkts. 363 at 17; 373 at 3–6.

[41] Dkt. 363 at 4.

[42] *Id.* Currently, there are 74 members of the class. Dkt. 365-1 (List of Class Members).

[43] Dkt. 375-3 at 4–6 (Elder Deposition).

[44] Dkts. 373 at 5; 375-3 at 4–6 (Deposition Transcript).

[45] Dkt. 363 at 8–12.

[46] Dkt. 373 at 5.

[47] *Staton.*, 327 F.3d at 958.

depends upon the particular claims alleged in a case."[48] The *Staton* Court found there was adequacy

of representation where the defendant failed to identify a substantive conflict of interest.[49] A

substantive conflict of interest is more likely to exist in cases where the defendant shows a member

of the class implemented the challenged policy while other members of the class suffered under

it.[50]

Here, the Court must determine whether ACS has shown that the MCMs' interests are

opposed to those of the other class members in light of the context and claims of this case. ACS

has not shown that all the MCMs have a substantive conflict of interest to those of the class. This

class action revolves around whether ACS misclassified the Client Account Managers ("CAMs")

as overtime-exempt employees.[51] As in *Staton*, the mere fact that the named MCMs may have

supervised other class members is not dispositive.[52]

ACS does not provide sufficient evidence that all of the named MCMs were ultimately

responsible for classifying the CAMs as being overtime-exempt—the wrongful conduct alleged in

the Complaint. There is no indication that all MCMs were responsible for setting ACS policy

---

[48] *Id*.

[49] *Id* at 958–59.

[50] *Donaldson v. Microsoft Corp.*, 205 F.R.D. 558, 568 (W.D. Wash. 2001). In *Donaldson*, the Western District of Washington found that, in a case challenging race and gender discrimination in employee evaluations, the manager class members responsible for making evaluations ought to be excluded. *See also King v. Enterprise Rent–A–Car Co.*, 231 F.R.D. 255 (E.D. Mich. 2004) (denying a motion for class certification in an employment action alleging race discrimination where "certain Plaintiffs also acted in a supervisory capacity over other Plaintiffs and participated in the promotion process for those members."); *Bacon v. Honda of America Mfg., Inc.*, 205 F.R.D. 466 (S.D. Ohio 2001) (finding a conflict where some class members are placed "in the conflicting position of having to defend their actions against a discrimination challenge.").

[51] Dkt. 52 at 17–19 (First Amended Complaint).

[52] *See Staton*, 327 F.3d at 958.

relating to the CAMs' compensation. In fact, Sean Elder, a manager at ACS, testified in a deposition that he had a quota assigned to his team and he, in turn, assigned individual quotas to his team members.[53] This suggests that the quota-based compensation policy was determined at a higher organizational level and that MCMs were only responsible for implementing aspects of the established policy. Therefore, the evidence does not indicate that all MCMs were directly involved in the decision to classify the CAMs as overtime-exempt.

The Court is similarly unpersuaded that the MCMs having information that is important to the defense creates a conflict of interest. As ACS asserts, it is likely that the MCMs will have a great deal of valuable testimony related to the nature of work done by the CAMs under their supervision.[54] ACS has not explained why a class member whose testimony is likely relevant to the case makes the class member's interests opposed to that of the rest of the class. Therefore, ACS has not demonstrated a substantive conflict of interests that is common to all the MCMs.

However, ACS identifies the specific example of Lindamood, ACS's Sales Vice President and an MCM.[55] ACS provides evidence that Lindamood, as an officer of the company, is more closely linked to setting compensation policy relating to the CAMs.[56] Further, during a Fair Labor Standards Act audit in 2011 to determine whether the CAMs were entitled to overtime, Lindamood filed a "type classification document for each of [his] employees."[57] This demonstrates that Lindamood was more closely involved with the decision to classify the CAMs as overtime-exempt

---

[53] Dkt. 375-3 at 4–6.

[54] Dkt. 363 at 8–12.

[55] Dkts. 363 at 5; 373 at 4.

[56] Dkt. 375-1 at 5 (Deposition Transcript).

[57] Dkt. 375-2 at 4 (Deposition Transcript).

than other MCMs.[58] Thus, he may have directed, or substantially participated in, the wrongful

conduct alleged in this action. Additionally, Lindamood's status as a class member appears to

conflict with his fiduciary obligations as an officer of ACS.[59] By virtue of Lindamood's close

connection to the wrongful conduct alleged in this case and the additional conflicts caused by his

status as a corporate officer, the ACS has borne its burden to demonstrate that Lindamood ought

to be excluded from the class.

Accordingly, ACS's request that the MCMs be excluded from the class is **GRANTED IN**

**PART** as to Lindamood and **DENIED IN PART** as to the remaining MCMs.

2. Whether ACS May Communicate *Ex Parte* with MCMs Concerning Their Supervision
of Class Members

ACS claims that it must be permitted to have access to the MCMs "as potential defense

witnesses" with information regarding how, when, and where the CAMs worked.[60] Peterson argues

that after a class has been certified, the rules of professional conduct apply in full, including Alaska

Rule of Professional Conduct 4.2, which prohibits counsel, in representing a client, from

contacting a represented opposing party.[61]

> After a court has certified a case as a class action and the time for exclusions has
> expired, the attorney for the named plaintiff represents all class members who are
> otherwise unrepresented by counsel. Defense counsel must observe the rules of
> ethical conduct in these circumstances and communicate with the opposing parties

---

[58] There is no evidence that the other MCMs filled out similar "type classification documents."

[59] *Alvest, Inc. v. Superior Oil Corporation,* 398 P. 2d 213, 215 (Alaska 1965) (*citing Guth v. Loft, Inc.,* 5 A.2d 503 (Del. 1939)) ("A corporate officer or director stands in a fiduciary relationship to his corporation. Out of this relationship arises the duty of reasonably protecting the interests of the corporation."); *Mills Acquisition Co. v. McMillan, Inc.*, 559 A.2d 1261, 1280 (Del. 1988) ("Corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests.") (*citing Guth,* 5 A.2d 503).

[60] Dkt. 363 at 11.

[61] Dkt. 371 at 10.

through their attorney, who is counsel for the class . . . .The court may allow the defendant to communicate with actual class members in the ordinary course of business, as long as the communications do not relate to the claims involved in the litigation . . . . Furthermore, [the] defendant may not attempt to solicit dismissals with prejudice, releases, or covenants not to sue from individual members of the existing class after the class has been certified and the time for exclusion has expired, except under conditions specified by the court to protect the rights of absent class members.[62]

Several cases in this Circuit have prohibited defense counsel from conducting *ex parte* communications with class members regarding the subject-matter of the class litigation.[63] In each case, the defendants sought to interview class members as important fact witnesses during the preparation of defendants' case.[64] And, in each case, the courts prohibited further contact with class-members absent the consent of class counsel or leave of the court.[65]

The Court is not persuaded that ACS's limited ability to communicate with class members warrants deviation from the Rules of Professional Conduct. As discussed above, the MCMs are likely important witnesses with information related to Peterson's claims.[66] However, merely because a represented party has important information does not vitiate Alaska Rule of Professional Conduct 4.2. ACS has numerous tools at its disposal to obtain evidence from MCMs. ACS may conduct depositions or issue interrogatories as allowed under the Federal Rules of Civil Procedure. Additionally, the Parties may agree to informal interviews with MCMs in the presence of Class

---

[62] *Cobell v. Norton*, 212 F.R.D. 14, 17 (D.D.C. 2002) (citing 3 Newberg on Class Actions § 15.18 (3d ed. 1992)).

[63] *See e.g. Campbell v. PricewaterhouseCoopers, LLP*, No. CIV. S-06-2376 LKK, 2012 WL 1355742, at *2 (E.D. Cal. Apr. 18, 2012); *Bower v. Bunker Hill Co.*, 689 F. Supp. 1032, 1033 (E.D. Wash. 1985).

[64] *Campbell*, 2012 WL 1355742, at *2; *Bower*, 689 F. Supp. at 1033.

[65] *Campbell*, 2012 WL 1355742, at *3; *Bower*, 689 F. Supp. at 1034.

[66] Dkt. 363 at 8–12.

Counsel. In light of these existing avenues of discovery, the Court finds no reason to grant ACS unfettered access to a represented party.

Accordingly, ACS's request to have *ex parte* communications with the MCMs is **DENIED**. ACS is **HEREBY ORDERED** to refrain from discussing the subject of the litigation with any class member unless it has received the prior consent of Class Counsel or leave of the Court.

3. Whether Class Counsel May Communicate *Ex Parte* with MCMs Concerning Their Supervision of Class Members

ACS argues that Class Counsel should not be allowed to have *ex parte* communication with the MCMs regarding their subordinates because the MCMs are "managing-speaking agents" for ACS.[67] Essentially, ACS argues that because MCMs have "speaking authority" for ACS *ex parte* contact by Class Counsel regarding their subordinates' claims would violate Alaska Rule of Professional Conduct 4.2.[68]

The comment for Alaska Rule of Professional Conduct 4.2 states "in the case of a represented organization, this Rule prohibits communications by a lawyer concerning the matter with persons having managerial responsibility on behalf of an organization. Consent of the organization's lawyer is not required for communication with a former constituent." However, "if a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule."[69]

Here, of the eight MCMs identified by ACS, five are no longer employed by ACS. Under Rule 4.2, Class Counsel need not seek prior permission to communicate with the five MCMs who

---

[67] *Id.* at 14–17.

[68] *Id.* at 16–17.

[69] Alaska Rule of Professional Conduct 4.2 comment.

are no longer employed by ACS. Only three MCMs are still employed by ACS: Stephen Heckel, Scott Johnson, and Sean Lindamood.[70] Because Heckel and Johnson are represented in this matter by Class Counsel, "the consent by that counsel to a communication will be sufficient for purposes of [Rule 4.2]."[71] However, as discussed above, Lindamood is excluded from the class and is no longer an MCM. Therefore, Class Counsel no longer represents Lindamood and is precluded from having *ex parte* contact with him regarding this litigation unless ACS gives its consent.[72]

Accordingly, ACS's request that Class Counsel be prohibited from conducting *ex parte* communications with the MCMs is **DENIED** as to Kimberly Booth, Jeffery Glaser, Stephen Heckel, John Hoff, Ernest Hurst, Scott Johnson, and Brian Solomon and **GRANTED** as to Sean Lindamood. Class Counsel is **HEREBY ORDERED** to refrain from discussing the subject of the litigation with Sean Lindamood unless it has received the prior consent of ACS's Counsel or leave of the Court.

    4.   Whether ACS Will Be Allowed to Conduct Additional Depositions of MCMs

It is unnecessary for the Court to allow additional depositions at this time. ACS has not identified with particularity with which MCMs it wishes to conduct additional depositions or the number of additional depositions that are required. Further, in light of the Court's disposition of the contentious issues discussed above, it is now expected that the Parties will be able to negotiate appropriate discovery procedures relating to the MCMs.

Accordingly, ACS's request to conduct additional depositions with the MCMs is **DENIED WITHOUT PREJUDICE**. The Parties are **HEREBY ORDERED** to meet and confer within

---

[70] Dkt. 372 at 4.

[71] Alaska Rule of Professional Conduct 4.2 comment.

[72] *See id.*

fourteen (14) days of this Order to negotiate discovery procedures which will allow ACS sufficient opportunity to gather necessary information from the MCMs. Specifically, the Parties should be prepared to discuss whether ACS will need to conduct additional depositions of MCMs.

## V.    CONCLUSION

For the foregoing reasons, ACS's Motion to Amend at docket 357 is **GRANTED** and ACS's Motion Regarding Managers at docket 363 is **GRANTED IN PART** and **DENIED IN PART**. The Court **HEREBY ORDERS** as follows:

1. The Class Certification Order at docket 300 be amended to define the class as:

   All current and former full-time exempt employees who worked for ACS in the job position which is currently titled "Client Account Manager (I, II, or III)," (formerly known as "Account Executive" or, in the case of the Carrier/Federal group, "Senior Manager" or "Sr. CAM"), in the ACS Anchorage office at any point between April 30, 2010 and March 14, 2019.

2. Sean Lindamood be excluded from the Class.

3. ACS refrain from discussing the subject of the litigation with any class member unless it has received the prior consent of Class Counsel or leave of the Court.

4. Class Counsel refrain from discussing the subject of the litigation with Sean Lindamood unless it has received the prior consent of ACS's Counsel or leave of the Court.

5. The Parties meet and confer within fourteen (14) days of this Order to negotiate discovery procedures which will allow ACS sufficient opportunity to gather necessary information from the MCMs.

6. The Parties file a joint status report on the outcome of their negotiations within twenty-one (21) days of this Order.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 26th day of November, 2019.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE