IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| LAURA LEE PETERSON, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiffs,<br><br>    v.<br><br>ALASKA COMMUNICATIONS SYSTEMS GROUP, INC. AND ALAKSA COMMUNCATIONS SYSTEMS HOLDINGS, INC., d/b/a ALASKA COMMUNICATIONS<br><br>                Defendants. | Case No. 3:12-cv-00090-TMB-MMS<br><br>ORDER ON DEFENDANTS' MOTION TO COMPEL TESTIMONY (DKT. 423) |

## I.    INTRODUCTION

The matter comes before the Court on Plaintiff Laura Lee Peterson's[1] Motion to Compel Testimony under Rule 30(b)(6) (the "Motion").[2] Plaintiffs moved for expedited consideration of the Motion, which the Court denied.[3] Defendants filed a response opposing the Motion.[4] For the reasons discussed below, the Motion to Compel is **DENIED**.

## II.    BACKGROUND

This class action arises out of alleged violations by Defendants of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., and the Alaska Wage and Hour Act ("AWHA"), Alaska

---

[1] Peterson bring suit on behalf of herself an all others similar situated (collectively "Plaintiffs").

[2] Dkt. 423 (Motion).

[3] Dkts. 425 (Order Requesting Expedited Consideration); 430 (Text Order).

[4] Dkt. 431 (Defendants' Opposition).

1

Stat. §§ 23.10.050, *et seq.*[5] Former ACS employee Peterson filed a wage claim with the Alaska Department of Labor and Workforce Development (the "Alaska DOL") in 2011.[6] The Alaska DOL determined that Peterson was not exempt from the overtime provisions of the AWHA and was therefore entitled to overtime benefits; the Department declined to comment, however, as to whether Peterson was exempt as a matter of federal law under the FLSA.[7]

In 2012, Peterson filed the present suit against Defendants.[8] In their Amended Complaint, Plaintiffs allege that Defendants, as Plaintiffs' employer, "systematically denied the sales, service assurance, and marketing employees . . . basic overtime pay mandated by [FLSA] and [AWHA]."[9] Plaintiffs allege that Defendants "misclassif[ied] these employees as exempt from the benefits of both federal and state overtime laws" and forced, and continue to force, these employees "to complete false time sheets indicating that they do not work overtime hours."[10] The Court conditionally certified the collective action under the FLSA on December 17, 2014.[11] On

---

[5] Dkts. 1 (Complaint); 52 (Amended Complaint).

[6] *See* Dkt. 63-1 at 4 (Medina Declar. Ex. 1).

[7] *Id.*

[8] Dkt 1.

[9] Dkt. 52 at 3.

[10] *Id.*

[11] Dkt. 100 (Order Granting Motion to Conditionally Certify Class). Following conditional certification of the FLSA collective action, twenty-one additional individuals (the "Opt-In Plaintiffs" or the "collective action members") initially opted-in to the action by filing notices with the Court. *See* Dkts. 10; 13; 19; 121–23; 128; 133; 134; 136–39. However, several subsequently withdrew, *see* Dkts. 178; 203–04; 263; 266; and the District Court removed one, Linda Gutierrez, from the action "after she repeatedly failed to respond to counsel's attempts to contact her, and per stipulation by the parties," *see* Dkt. 389 at 3 (Order re Defendants' Motion to Compel Testimony) (citing Dkt. 233 (Text Order)).

August 28, 2018, the Court granted Plaintiffs' Motion for Certification of a Rule 23 Class Action under AWHA.[12]

In August and September of 2015, Plaintiffs conducted depositions of ten ACS employees designated as witnesses under Federal Rule of Civil Procedure ("Rule") 30(b)(6).[13]

A. *Plaintiffs' Motion to Compel Rule 30(b)(6) Depositions*

On November 2, 2020, Plaintiffs filed the instant Motion, seeking to compel Defendants to provide additional depositions and testimony under Rule 30(b)(6) on a limited number of damages-related topics.[14] In preparing for expert discovery, Plaintiffs determined that it was necessary to obtain additional Rule 30(b)(6) testimony on a few topics to facilitate Plaintiffs' expert's damages analysis.[15] On November 11, 2020, Defendants filed their Opposition.[16] Plaintiffs then filed a Reply.[17] Fact discovery closed on November 13, 2020.[18] Nevertheless, the Court may consider the merits of Plaintiffs' Motion.[19]

---

[12] Dkt. 300.

[13] Dkts. 423 at 2–3; 431 at 1–3, 19; 423-2 (Plaintiffs' Notice of 30(b)(6) Depo.).

[14] Dkt. 423 at 2.

[15] *Id.* at 3–4.

[16] Dkt. 431.

[17] Dkts. 434 (Reply); 435 (Plaintiffs' Counsel Koster Decl. & Attachments).

[18] Dkt. 396 (Scheduling Order).

[19] *See, e.g.*, *Price v. Wiese*, No.: 3:16-cv-1174-CAB-AHG, 2019 WL 6918201, at *1 (S.D. Cal. Dec. 19, 2019) ("[T]the Court *sua sponte* reopened discovery . . . for the limited purpose of permitting the parties to take one another's depositions and extended the pretrial motions deadline accordingly."); *Puletu v. Fishing Co. of Alaska, Inc.*, No. C05-1752RSM, 2008 WL 2242455, at *2, *2 n.2 (W.D. Wash. May 29, 2008) ("Indeed, it is common for district courts to *sua sponte* extend deadlines."); *Garrison v. Bautista*, No. 2:13–cv–0479 JAM KJN P, 2014 WL 2987756, at *5 (E.D. Cal. July 1, 2014) ("[I]n light of the delay in addressing these matters, the court will, sua sponte, extend the dispositive motion deadline for a period of three months.").

3

## III. LEGAL STANDARD

Rule 26(b), governing discovery between parties, provides in relevant part:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

. . .

On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside of the scope permitted by Rule 26(b)(1).[20]

Rule 30(b)(6) provides that, "[i]n its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination."[21] "The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each

---

[20] Fed. R. Civ. P. 26(b)(1), (2)(C).

[21] Fed. R. Civ. P. 30(b)(6).

4

Case 3:12-cv-00090-TMB-MMS   Document 436   Filed 11/22/20   Page 4 of 15

person designated will testify."[22] The Rule 30(b)(6) deposition notice "serves a unique function" because "it is the sworn corporate admission that is binding on the corporation."[23]

A Rule 30(b)(6) designee's role "is to provide the entity's interpretation of events and documents."[24] The designee need not have personal knowledge as to all relevant facts; "however, the designee must become educated and gain the requested knowledge to the extent reasonably available."[25] Additionally, "[a] corporation may also satisfy its Rule 30(b)(6) obligation by offering to be bound by prior deposition testimony regarding a noticed Rule 30(b)(6) topic."[26]

In comparison, the testimony of an individual is distinct from the testimony of an entity,[27] and discovery is not automatically cumulative merely because it can be obtained through individual depositions, rather than Rule 30(b)(6).[28] However, "the court has an obligation to

---

[22] Fed. R. Civ. P. 30(b)(6).

[23] *Doe v. County of Kern*, No.: 1:15–cv–01641–JLT, 2017 WL 1383282, at *9 (E.D. Cal. Apr. 18, 2017) (quotation marks and citation omitted).

[24] *La. Pac. Corp. v. Money Market 1 Institute. Inv. Dealer*, 285 F.R.D. 481, 486 (N.D. Cal. 2012) (citing *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D. N.C. 1996)).

[25] *Id.* (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Werner–Masuda,* 390 F. Supp. 2d 479, 487 (D. Md. 2005) (recognizing that a Rule 30(b)(6) deposition represents the entity's knowledge and not that of the individual deponent)).

[26] *EEOC v. Boeing Co.*, No. CV 05–03034–PHX–FJM, 2007 WL 1146446, at *2 (D. Ariz. Apr. 18, 2007) (citation omitted); *see also Requa v. C.B. Fleet Holding Co., Inc.*, No. 06–cv–01981–PSF–MEH, 2007 WL 2221146, at *2 (D. Colo. July 31, 2007) (prior testimony can be designated by a corporation to satisfy a Rule 30(b)(6) deposition).

[27] *La. Pac. Corp.*, 285 F.R.D. at 487 (citing *Sabre v. First Dominion Cap., LLC,* No. 01–0214, 2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001) ("A deposition pursuant to Rule 30(b)(6) is substantially different from a witness's deposition as an individual. A 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity.")).

[28] *Id.* (citing *Kelly v. Provident Life & Acc. Ins. Co.*, No. 04cv807–AJB (BGS), 2011 WL 2448276, at *4 (S.D. Cal. June 20, 2011) ("Plaintiff is entitled to the knowledge of the corporation and the corporation's positions on matters clearly relevant and discoverable in this phase of the case.

5

prevent a party from using a Rule 30(b)(6) deposition to harass the opposing party or to subject the opposing party to unreasonably burdensome or cumulative discovery[.]"[29]

Multiple depositions of the same party are governed by Fed. R. Civ. P. 30(a)(2)(A)(ii) which, absent the parties' stipulation, requires a party to obtain leave of court to depose a deponent who has already been deposed. If so requested, a court "must" grant leave to the extent consistent with Fed. R. Civ. P. 26(b)(2).[30] The Ninth Circuit has not decided whether a corporation is a "deponent" subject to the limitations of Rule 30(a)(2)(A)(ii), or whether those limitations apply only to individual deponents. District courts have taken different views on whether leave is required.[31]

---

Therefore, any testimony provided by employees as individuals does not satisfy the need for Plaintiff to obtain binding testimony from the corporate entity."); *Mitchell Eng'g v. City & County of San Francisco*, No. C 08–04022 SI, 2010 WL 455290, at *1 (N.D. Cal. Feb. 2, 2010) ("Even if the general topics to be addressed at the 30(b)(6) deposition will overlap to some extent, the questions asked and the answers given might not.").

[29] *La. Pac. Corp.*, 285 F.R.D. at 487 (citing Fed. R. Civ. P. 26(b)(2)(C)).

[30] *Burdick v. Union Sec. Ins. Co.*, No. CV 07-4028 ABC(JCx), 2008 WL 5102851, at *2 (C.D. Cal. Dec. 8, 2008) (citing *In re Sulfuric Acid Antitrust Litig.*, No. 03 C 4576, 2005 WL 1994105, at *2 (N.D. Ill. 2005)).

[31] *Heath v. Google LLC*, No. 15-cv-01824-BLF (VKD), 2018 WL 4491368, at *2–4 (N.D. Cal. Sept. 19, 2018) (concluding that plaintiffs should be permitted to conduct a second Rule 30(b)(6) deposition on defendant, on a narrower topic than initially sought in plaintiffs' second Rule 30(b)(6) deposition notice); *Behrend v. Comcast Corp.*, No. CV 09-05435-VBF (AGRx), 2009 WL 10698965, at *7 (C.D. Cal. Aug. 18, 2009) ("[T]here is a split of authority as to [third party's] objection that Comcast was required to seek leave of court before issuing the Rule 30(b)(6) subpoena."); *see also Burdick*, No. CV 07-4028 ABC(JCx), 2008 WL 5102851, at *3 ("This court agrees with the reasoning and decisions of those courts which have held that the prior judicial approval requirement applies to deposition notices and subpoenas issued to corporations pursuant to Rule 30(b)(6) . . . Neither the text of the rule nor the committee's note exempts Rule 30(b)(6) depositions from the leave requirement in the event of a second deposition of a party already deposed. ) (citing *In re Sulfuric Acid Antitrust Litig.*, No. 03 C 4576, 2005 WL 1994105, 2005 WL 1994105, at *3 ("There is nothing in the text, history, or purpose of Rule 30 that supports the conclusion that 'for purposes of' the prior judicial approval requirement for successive depositions, Rule 30(b)(6) depositions should be treated differently from depositions of individuals.); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001) (affirming

6

## IV.  ANALYSIS

After consideration of the applicable factors in Rule 26 and the recent deposition testimony obtained by Plaintiffs, the Court **DENIES** Plaintiffs' Motion to Compel additional Rule 30(b)(6) discovery.

Here, Plaintiffs originally conducted Rule 30(b)(6) depositions in the Summer of 2015 "on over a dozen topics" with a focus on issues necessary for class certification.[32] Plaintiffs claim that Defendants' 30(b)(6) designee was unable to answer basic questions about Salesforce records at the prior 30(b)(6) deposition conducted during pre-certification discovery.[33] However, Plaintiffs did not object at that time to the completeness or thoroughness of the testimony.[34] Plaintiffs also seek additional Rule 30(b)(6) testimony relating to damages.[35]

It was not until October 13, 2020, that Plaintiffs served Defendants with a "Supplemental/Amended" Rule 30(b)(6) Notice unilaterally setting an October 29, 2020 deposition date.[36] Plaintiffs allege that after hearing no response from Defendants, Plaintiffs reached out on October 20, 2020.[37] Plaintiffs allege that in correspondence with defense counsel,

---

district court's decision to quash deposition subpoena and to issue protective order vis-a-vis non-defendant corporation because successive Rule 30(b)(6) deposition subpoena issued without leave of court was invalid)).

[32] Dkts. 423 at 2–3; 431 at 1; 424-2 (Plaintiffs' Notice of 30(b)(6) Depositions).

[33] Dkts. 423 at 2, 10; 424-3 at 5 (Email Exchange). Salesforce appears to be a sales tracking database. Dkt. 424-2 at 10.

[34] Dkt. 431 at 12; *see also* Dkts. 432-5 (Marshall Depo.); 424-3 at 6.

[35] Dkt. 423 at 11–14.

[36] Dkts. 423 at 2, 4; 424-2 (Amended Notice).

[37] Dkt. 423 at 5.

7

defense counsel proposed a discovery *quid pro quo*: that Defendants would be amenable to producing a 30(b)(6) deponent on the condition that Plaintiffs allow Defendants to depose absent class members.[38] On October 27, 2020, Plaintiffs told Defendants they would not agree to additional absent class depositions because such consent would "flout the Court's ruling and impose burdens on absent class members," and the following day Defendants confirmed they would not produce additional Rule 30(b)(6) witnesses to be deposed.[39] Plaintiffs then filed the instant motion to compel.[40] After Defendants refused to present a 30(b)(6) witness, Plaintiffs noticed five fact witness depositions for the week of November 9, 2020,[41] and subsequently re-deposed four ACS managers.[42]

> Plaintiffs' "Supplemental/Amended" Rule 30(b)(6) Notice seeks testimony regarding:
>
> three of the originally noticed topics—i.e., Topics 4 (Time Keeping), 11 (Time Stamped Data/ESI—sources of time-stamped ESI or event data records involving Class Members), and 12 (Time Stamped Data/ESI—retention, collection, and production of documents (electronic and physical) related to Class Members)—to obtain answers to questions that Defendants' prior 30(b)(6) designee was unable to answer concerning Salesforce (i.e., Topic 11), to obtain corporate testimony in response to recent representations made by Defendants' counsel that implicate the document retention topic (i.e., Topic 12), and to understand what changes, if any, have occurred during the last five years with respect to time keeping and time-stamped data/ESI (i.e., Topics 4, 11, and 12). . . . [And] deposition testimony concerning Defendants' payroll records and data (i.e., Topic 13); the addition of one limited topic was prompted by Plaintiffs' examination of damages-related payroll documents in preparation for upcoming expert discovery (including payroll documents recently produced for absent Class Members)[.][43]

---

[38] Dkts. 423 at 5; 424-3 at 3.

[39] Dkts. 423 at 2 n.1, 5–6; 424-3 at 2.

[40] Dkt. 423.

[41] *Id.* at 6 n.6.

[42] *See* Dkts. 431 at 7–10; 434 at 3 n.8, 4 n.9, 6 n.13.

[43] Dkt. 423 at 4, 7–14. Plaintiffs state that "Topics 4, 11, and 12 of Plaintiffs' October 13, 2020 30(b)(6) Notice are virtually identical to Topics 4, 11, and 12 of the August 18, 2015 30(b)(6)

8

Plaintiffs argue they have identified Salesforce as an important source of time-stamped ESI for purposes of their damages analysis, and Defendants' last 30(b)(6) designee was inadequately prepared or sufficiently knowledgeable to answer a number of basic questions about Salesforce.[44] Plaintiffs also argue that Defendants should be compelled to produce a 30(b)(6) witness to address what, if any, changes in time keeping and time-stamped data/ESI have occurred since the 30(b)(6) depositions that took place over five years ago and because the class includes employees who worked at ACS at any point between April 2010 and March 2019, the five-year-old testimony "is potentially stale" for certain class members.[45] Plaintiffs argue that Defendants should also be compelled to produce a 30(b)(6) witness "to elucidate recent representations by Defendants regarding the non-existence of certain records.[46] Finally, Plaintiffs contend Defendants should be compelled to produce a 30(b)(6) witness to address Defendants' payroll practices and clarify the meaning of terms listed within Defendants' payroll documents, including recently produced payroll records for absent class members.[47]

Moreover, Plaintiffs argue the discovery sought satisfies Rule 26(b)(1) because it is highly relevant, proportional to the needs of the case and its likely benefit strongly outweighs any burdens on Defendants.[48] Plaintiffs contend that the information sought is relevant for their damages

---

Notice, apart from the fact that Topic 12 now consists of fewer subtopics." *Id.* at 4 n.4 (citing Koster Decl., Ex. B, October 13, 2020 30(b)(6) Notice at 6 n.1, 7 n.2, 8 n.4, 9 n.5)).

[44] Dkt. 423 at 7–8, 10.

[45] *Id.* at 11–12 (noting this testimony covered Topics 4, 11, and 12).

[46] *Id.* at 11–13.

[47] *Id.* at 11, 13–14 (noting this testimony covered Topic 13).

[48] *Id.* at 16–18.

preparation to ensure they are not at "an informative disadvantage, relative to Defendants" and the discovery is highly targeted and therefore proportional to the needs of the case and is not unduly burdensome—as tacitly acknowledge by Defendants who raised the discovery *quid pro quo*.[49] Accordingly, Plaintiffs argue the Court should grant their Motion and compel Defendants to submit to additional 30(b)(6) depositions.[50]

Defendants contend that their witness who testified about Salesforce was prepared and any issues the designated witness may have had in answering specific questions was the result of Plaintiffs' vague and unclarified requests or Plaintiffs' questions exceeding the scope of relevant information.[51] Further, Defendants argue, class counsel did not object to the witness's testimony and has therefore waived any subsequent objections.[52]

Defendants argue that Plaintiffs were already able to depose ten corporate designees between August 26–September 3, 2015, at great time, expense, and preparation to both parties.[53] At the close of the 2015 depositions, Plaintiffs' counsel raised no complaints or concerns and waited five years, on the eve of the close of discovery, to raise objections.[54] Additionally, Defendants point out that when they did not automatically agree to schedule additional Rule 30(b)(6) depositions, Plaintiffs threated to depose "'individuals who we believe are likely to have

---

[49] *Id.* at 17–18; *see also* Dkt. 434 at 10–11.

[50] Dkt. 423 at 9–11.

[51] Dkt. 431 at 11–17.

[52] *Id.* at 17–18.

[53] Dkts. 431 at 3–6; 432 at ¶¶ 6– 7; *see also* Dkt. 423 at 2 n.2.

[54] Dkt. 431 at 5–6.

10

knowledge.'"⁵⁵ A threat, Defendants contend, Plaintiffs followed through with by "noticing the deposition of five ACS manages, four of whom were previous 30(b)(6) designees; Mike Wilson, Dierdre Williams, Michael Morris and Lynn Concepcion-Glover."⁵⁶ Plaintiffs have since deposed three ACS managers: Wilson, Williams, and Morris.⁵⁷

Defendants argue that lengthy individual depositions taken last week of ACS managers (who previously appeared as designated witnesses in 2015) demonstrate that Plaintiffs misrepresented the real reason for seeking to reopen the 30(b)(6) deposition, which has been to accomplish a complete "do over" on the designated topics.⁵⁸ Further, given "the many hours spent [last] week have accomplished what class counsel really sought all along and there is no remaining *bona fide* need to reopen the 30(b)(6) deposition."⁵⁹

Defendants state that on November 9, 2020, Plaintiffs' counsel deposed Mike Wilson for three hours, asking questions that "were largely repetitive of the kinds of questions he had answered during the 2015 30(b)(6) deposition[.]"⁶⁰ Defendants point out that at the conclusion of Wilson's deposition, ACS counsel stated ACS endorsed Wilson's testimony "as that of the corporation" thereby mooting any remaining need to reopen Rule 30(b)(6) depositions.⁶¹ On

---

⁵⁵ *Id.* at 6 (quoting Dkt. 432-15 (Email Exchange)).

⁵⁶ *Id.* at 7 (citing Dkt. 432-17 (Email Exchange & Depo. Notice)).

⁵⁷ *Id.* at 19.

⁵⁸ *Id.* at 2.

⁵⁹ *Id.*

⁶⁰ *Id.* at 7–8; 432 at ¶¶ 25–26.

⁶¹ Dkts. 431 at 8; 432 at ¶ 27.

November 10, 2020, Plaintiffs' counsel deposed Dierdre Williams for a second time;[62] in this instance, for Topic 4 (time reporting) and the single new topic (13) sought by plaintiffs: Payroll Records and Data.[63] Williams's second deposition focused primarily on the several payroll data subcategories sought in Plaintiffs' current 30(b)(6) notice, and Williams answered numerous questions about "subtopic a: 'types of compensation/payments reflected in the payroll records and data.'" [64] Williams answered questions about subtopic b: "the meaning of all terms that reflect payments . . . in payroll registers and other payroll records and data."[65] She also answered questions on "subtopic c": "'the format in which payroll records and data are stored,'" and "subtopic d: 'the location and maintenance of payroll records and data.'"[66] Moreover, Defendants state that ACS's counsel endorsed Williams's deposition testimony as that of the corporation, thereby mooting any remaining need for reopening the 30(b)(6) deposition.[67]

On November 11, 2020, Mike Morris, who was also deposed in 2015, was deposed for an additional six hours.[68] Defendants state that Morris covered all the Topic 11 and Topic 12 subtopics raised by Plaintiffs, including questioning him regarding the missing records.[69] ACS's

---

[62] *See* Dkt. 432-13 (Williams's 2015 Depo.).

[63] Dkt. 431 at 8.

[64] *Id.*

[65] *Id.* at 8–9.

[66] *Id.*; Dkt. 432 at ¶¶ 28–30.

[67] Dkt. 431 at 8–9, 19. However, counsel's declaration only contains averments that ACS endorsed Morris and Wilson's testimony. *See* Dkt. 432 at ¶¶ 27, 31.

[68] Dkt. 431 at 9.

[69] Dkts. 431 at 9–10, 19; 432 at ¶ 31.

12

counsel endorsed Morris's deposition testimony as that of the corporation, thereby mooting any remaining need for reopening the 30(b)(6) deposition. [70]

On November 13, 2020, Plaintiffs deposed Lynn Concepcion-Glover, who provided information regarding landline phone records, and time stamped state/ESI topics 11(a), 11(c) –(k), and 11(n)–(p), and provided her assumptions about Salesforce terminology—though admitted she was unfamiliar with Salesforce records.[71]

Plaintiffs, in their Reply, counter that even following four fact depositions on ACS managers, they still lack sufficient details on various topics including Salesforce records and terminology, payroll practices and records, "time-stamped data/ESI" terminology, and information regarding Defendants' claims of missing records.[72] Plaintiffs contend that information regarding why the records are missing especially important given Plaintiffs' potential need to show that Defendants improperly failed to retain earlier landline records, "which are a source of time-stamped data and pertinent to [a] damages analysis."[73] Additionally, Plaintiffs argue that they diligently sought testimony last week regarding Defendant payroll practices, but Defendants failed to produce the current head of payroll for a fact deposition.[74]

---

[70] Dkt. 432 at ¶ 31.

[71] *See* Dkts. 434 at 3 n.8, 4 n.9, 6 n.13, 10 n.26 (noting deponents did not provide "testimony regarding the meaning of terms within reports or query reports" including "such data/ESI and regarding the retention, collection, and production of such data/ESI"); 435-9 (Concepcion-Glover Depo.).

[72] Dkt. 434 at 4–10, 10 n.26.

[73] Dkts. 434 at 10 n.26; *see also id.* at 2, 2 n.1 (stating "[t]his is not the first time that Defendants have deleted or failed to retain data" and noting "Defendants deleted years of computer login-in/log-off activity records spanning 2015-2017.").

[74] *Id.* at 9.

This is far from the first discovery dispute to arise in this case,[75] and the parties continue to demonstrate an inability to resolve discovery disputes amicably and without court intervention. Despite the Court's previous limitations on pre-certification discovery,[76] based upon the facts presented to this Court, and the considerations set forth in Fed. R. Civ. P. 26(b)(2), this Court finds that Plaintiffs had ample opportunity by discovery to obtain the information sought by the second deposition notice.[77]

There was no need to wait until the eleventh hour, immediately prior to the close of fact discovery, and after five years had elapsed from the time of the initial Rule 30(b)(6) deposition. Additionally, Plaintiffs acknowledge that most of the topics in the Amended Notice "are substantively identical to the August 2015 30(b)(6),"[78] cutting against Plaintiffs' argument such depositions would not be cumulative and unnecessary. Moreover, the additional depositions Plaintiffs accomplished in November—to which Defendants agreed to be bound—obviates the need to reopen Rule 30(b)(6) depositions. Although Plaintiffs argue that "fact witness depositions

---

[75] *See, e.g.*, Dkts. 40; 259; 389; 413; 429.

[76] *See* Dkt. No. 153 (Stipulation: Scheduling Order Re Class Claims) (describing stage of the case in which 30(b)(6) depositions proceeded as "[p]re-certification class discovery, that is, discovery necessary for determining whether the claims brought in this action may be certified under Federal Rule of Civil Procedure 23")*;* Dkt. No. 40, Order at 7–9 (holding that "the appropriate scope of precertification discovery is that information necessary to prove the class is certifiable, which does not necessarily include broad merits discovery"; denying in part Plaintiff Peterson's motion to compel certain damages-related records during pre-certification class discovery and ruling that "extensive discovery into the merits and damages of the case [during precertification class discovery] is not warranted").

[77] *See Burdick*, No. CV 07-4028 ABC(JCx), 2008 WL 5102851, at *3.

[78] Dkt. 423 at 18 ("[T]hree of the four noticed topics are substantively identical to the August 2015 30(b)(6)").

14

are not a substitute for the 30(b)(6) testimony Plaintiffs seek" and "are an inferior option,"[79] it appears Plaintiffs obtained discoverable testimony on the topics sought in their Amended Notice during the November 2020 depositions, even if the testimony was not as complete as Plaintiffs wish. Further, Plaintiffs' dissatisfaction with the contents of the responses and documents produced does not convince this Court that Defendants, five years after initial Rule 30(6)(b) depositions and after the close of discovery, should be compelled to produce additional Rule 30(b)(6) testimony.[80] Accordingly, the Motion to Compel at Docket 423 is **DENIED**.[81]

## V. CONCLUSION

Accordingly, Plaintiffs' Motion is **DENIED.**

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 22nd day of November 2020.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[79] Dkt. 423 at 6 n.6; *see also* Dkt. 434 at 3–4 (Plaintiffs confirm that following the recent fact depositions, the "scope of 30b(b)(6) testimony Plaintiffs seek is substantially narrower.").

[80] *See* Dkt. 434 at 2–3, 6 n.14. A party does not have a right to compel depositions merely to test the adequacy of opposing party's preservation or production efforts. *See* Fed. R. Civ. P. 37(a)(3)(B), (e); *see also* Fed. R. Civ. P. 26; Fed. R. Civ. P. 34.

[81] As previously stated, it remains an open question as to whether the party seeking additional Rule 30(B)(6) depositions must seek leave of the court to reopen such discovery. *See Behrend*, No. CV 09-05435-VBF (AGRx), 2009 WL 10698965, at *7. Plaintiffs contend that no leave from the court is required to obtain further 30(b)(6) testimony. Dkt. 423 at 14–16. Conversely, Defendants argue that here the topics sought in the second deposition are, for the most part, identical to those sought in the first 30(b)(6) depositions, and Plaintiffs must establish good cause for re-opening the depositions. Dkt. 431 at 10. However, the Court need not decide whether leave to conduct additional Rule 30(b)(6) depositions is required because even if leave is unnecessary, Plaintiffs' Motion fails on the merits.