# UNITED STATES DISTRICT COURT
## DISTRICT OF ALASKA

| | |
|---|---|
| LAURA LEE PETERSON, Individually and on Behalf of All Others Similarly Situated, | Case No. 3:12-cv-00090-TMB-MMS |
| Plaintiffs, | **ORDER ON PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE CLASS SETTLEMENT (DKT. 493) and MOTION FOR ATTORNEY'S FEES AND COSTS (DKT. 484)** |
| v. | |
| ALASKA COMMUNICATIONS SYSTEMS GROUP, INC. AND ALASKA COMMUNICATIONS SYSTEMS HOLDINGS, INC., d/b/a ALASKA COMMUNICATIONS, | |
| Defendants. | |

## I.     INTRODUCTION

This matter is before the Court on Plaintiff Laura Lee Peterson's, Individually and on Behalf of All Others Similarly Situated, Motion for Final Approval of the Class Settlement (the "Final Approval Motion")[1] and Motion for Attorney's Fees and Costs ("Attorney's Fees Motion").[2] Defendants Alaska Communications Systems Group, Inc. and Alaska Communications Systems Holdings, Inc. (collectively the "Defendants" or "ACS") do not oppose the Attorney's Fees Motion.[3] The Final Approval Hearing was held on January 12, 2022.[4]

---

[1] Dkt. 493 (Final Approval Motion).

[2] Dkt. 484 (Attorney's Fees Motion).

[3] Dkt. 487 (Non-Opposition to Attorney's Fees Motion).

[4] Dkt. 499 (Minute Entry). This hearing is often also referred to as a fairness hearing. *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011).

Plaintiffs seek to recover unpaid overtime wages.[5] The stipulated settlement agreement ("Settlement Agreement" or "Agreement") approved in this class action provides class members with more than $1 million in *cy pres* awards while also setting aside $45,000 for class representative service awards, $688,875 for class counsel's attorney's fees, $300,000 for out-of-pocket expenses, and $15,000 for settlement administrator costs. No one has objected to the terms of the stipulated settlement and only one class member has requested exclusion from the class. But even so, the Court recognizes that it "should not greenlight [the settlement] . . . just because the parties profess that their . . . deal is 'all right, all right, all right.'"[6]

For the reasons discussed below, the Final Approval Motion at Docket 493 and Attorney's Fees Motion at Docket 484 are **GRANTED**.

## II.    BACKGROUND

In 2012, Plaintiff Peterson filed a class action lawsuit against Defendants on behalf of herself and a class of similarly situated plaintiffs.[7] The Complaint was later amended in March 2014.[8] The Plaintiffs, who worked for ACS as client account managers ("CAMs"), allege that ACS violated the federal Fair Labor Standards Act ("FLSA") and its state counterpart, the Alaska Wage and Hour Act ("AWHA"), by improperly classifying CAMs as overtime-exempt salaried employees.[9] As a result, Plaintiffs assert ACS failed to pay the appropriate overtime wages.[10] The

---

[5] Dkt. 52 (First Amended Complaint)

[6] *Briseño v. Henderson*, 998 F.3d 1014, 1018 (9th Cir. 2021).

[7] Dkt. 1 (Complaint).

[8] Dkt. 52.

[9] Dkt. 300 (Order Certifying Class); *see also* Dkt. 52.

[10] *See* Dkt. 52.

Court conditionally certified the FLSA collective action in 2014[11] and certified the Rule 23 class in 2018.[12] The class currently contains 74 members.[13]

### A. Settlement

In May 2021, the parties reached a stipulated settlement agreement, which was fully executed on August 20, 2021.[14] The Agreement resolves all of class Plaintiffs' claims against Defendants in exchange for a $2,087,500 non-reversionary payment.[15] The Agreement provides that each class member will receive a share of the net settlement available to class members based on a system of "Salary Points" and "Commission Points" calculated from their individual employment records.[16] Class members are expected to receive an average pre-tax award of $14,000.[17] The largest individual payment will exceed $60,000.[18] The named plaintiff and class representatives will also receive a service/incentive award—Peterson will receive $30,000 and Shephard will receive $15,000.[19]

---

[11] Dkt. 100 (Order Conditionally Certifying the Class).

[12] Dkt. 300.

[13] Dkt. 493. Of the 74 current class members, 73 are part of the Rule 23 class and 16 are part of the FLSA opt-in collective action class. Dkt. 494 at 7–8, 25 (Palmer Declaration).

[14] Dkt. 477 (Motion for Preliminary Approval); Dkt. 494-1 (Settlement Agreement).

[15] Dkt. 494-1 at 10 (Any settlement checks that are not cashed within six months will be redistributed to other class members who timely cashed their checks. After all checks are cashed, any residual settlement money will be distributed to a *cy pres* beneficiary, Alaska Legal Services Corporation, for the "provision of legal services on behalf of Alaskan employees.").

[16] *Id.* at 12–14; *see also* Dkt. 495 at ¶ 20 (Cofinco Declaration).

[17] Dkt. 493 at 14; Dkt. 495 at ¶ 20.

[18] Dkt. 493 at 14; Dkt. 495 at ¶ 20.

[19] Dkt. 494-1 at 19–20.

## B. Preliminary Approval

The Court preliminarily approved the Agreement on September 28, 2021.[20] In doing so, the Court approved the parties' class settlement notice and the distribution schedule for the notices and appointed CPT Group, Inc. ("CPT") as the settlement administrator.[21] CPT mailed the class settlement notices to the class members on November 3, 2021.[22]

## C. Exclusion Request

CPT received one untimely request for exclusion and no objections from the class members.[23] Class member Andra Brown initially submitted an exclusion request via email on November 23, 2021, which CPT deemed invalid because the Settlement Agreement requires requests for exclusion to be "personally signed."[24] On December 6, CPT notified Brown that her request was improper. Brown mailed a signed request on December 21, after the deadline.[25] CPT deemed the request invalid because it had not been postmarked by the December 18 deadline.[26] But after conferring, the parties agreed that Brown's request should be deemed valid.[27]

---

[20] Dkt. 480.

[21] *Id.*

[22] Dkt. 495 at 3. Seven of the 74 notices were initially returned. CPT re-mailed the seven notices, and none of those were returned to the sender. *Id.* at 4.

[23] Dkt. 495-2 (Brown Email).

[24] *Id.*

[25] Dkt. 495-3 (Brown Letter) (the request was late because Brown was travelling).

[26] *Id.* Brown's request for exclusion was otherwise valid.

[27] Dkt. 493 at 7; Dkt. 494 at ¶ 60.

### D. Attorney's Fees and Costs

Class counsel, Sanford Heisler Sharp, LLP, seeks $688,875 in attorney's fees, one third of the total settlement payment.[28] Class counsel reports to have spent over 11,000 hours litigating this case.[29] Over the last nine years, class counsel has spent time and money:

> investigating the legal and factual allegations of overtime violations affecting the Class Members; drafting the pleadings; engaging in extensive fact and expert discovery, which included reviewing and analyzing voluminous amounts of documents and data, taking and defending dozens of depositions, propounding written discovery and responding to Defendants' extensive discovery requests (which required Class Counsel to spend substantial time gathering information from the Class Representatives and numerous Class Members), conducting meet and confer sessions with ACS's counsel, litigating a number of discovery motions, and working with a damages expert to formulate an analysis of each Class Member's damages and evaluate Defendants' expert's report; participating in multiple mediations; briefing successful motions for conditional certification of the FLSA collective action and Rule 23 certification of the class action; successfully opposing Defendants' Rule 23(f) petition; opposing Defendants' motion for summary judgment and the many other motions filed during this lengthy litigation; negotiating the terms of the Settlement Agreement; and seeking and obtaining preliminary approval.[30]

In addition, class counsel seeks reimbursement for $272,654.49 of out-of-pocket costs[31] and $12,500 for CPT's settlement administration costs.[32]

---

[28] Dkt. 484 at 6; Dkt. 493 at 10–11.

[29] *See* Dkt. 485-1 (Time Summary); Dkt. 484 at 4; Dkt. 494 at 11.

[30] Dkt. 484 at 4–5.

[31] *See* Dkt. 485-2 (Itemized Case Expenses). Class counsel do not anticipate any further costs. Dkt. 484 at 11.

[32] Dkt. 493 at 12 (Class counsel seeks $12,500 of the $15,000 agreed upon maximum amount for reimbursement of CPT's costs under the Settlement Agreement).

5

### III.     LEGAL STANDARDS

#### A.  Rule 23 Certified Class Action Settlements

Rule 23(e) provides that the "claims, issues, or defense of a certified class . . . may be settled . . . only with the court's approval." District courts may approve certified class settlements "only after a hearing and only on finding that it is fair, reasonable, and adequate."[33] A settlement is fair, reasonable, and adequate if:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>   - (i)    the costs, risks, and delay of trial and appeal;
>   - (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   - (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
>   - (iv)   any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.[34]

Before Rule 23 was amended to require the above analysis, the Ninth Circuit created its own multi-factor test to evaluate the fairness of class action settlements. The test seeks to "'ensure[] that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly

---

[33] Fed. R. Civ. P. 23(e)(2).

[34] *Id.*

6

where complex class action litigation is concerned."[35] The factors, known as the *Hanlon* factors, include:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[36]

### B. FLSA Collective Actions

FLSA collective action settlements have a "less discrete framework" for review than Rule 23 class action settlements.[37] Courts have "a 'considerably less stringent' obligation to ensure fairness of the settlement in a FLSA collective action than a Rule 23 action because parties who do not opt in are not bound by the settlement."[38] "In reviewing a[n] FLSA settlement, a district court must determine whether the settlement represents a 'fair and reasonable resolution of a bona

---

[35] *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (alterations in original) (internal quotations omitted) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 568 (9th Cir. 2019) (en banc)).

[36] *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The factors, which predate the 2018 revisions to Rule 23, still apply. *See, e.g.*, *Greer v. Dick's Sporting Goods, Inc.*, 2020 WL 5535399 at *2 (E.D. Cal. Sept. 15, 2020).

[37] *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 607 (E.D. Cal. 2015); *see also McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007).

[38] *Millan*, 310 F.R.D. at 607 (quoting *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010)).

7

fide dispute.'"[39] "A bona fide dispute exists when there are legitimate questions about 'the existence and extent of Defendant's FLSA liability.'"[40]

### C. Attorney's Fees

Like the settlement itself, district courts have "an independent obligation to ensure that [any attorneys' fee] award . . . is reasonable, even if the parties have already agreed to an amount."[41] "Because the relationship between class counsel and class members turns adversarial at the fee-setting stage, district courts assume a fiduciary role that requires close scrutiny of class counsel's requests for fees and expenses from the common fund."[42] The Ninth Circuit provides a non-exhaustive list of factors, sometimes called the *Vizcaino* factors, to evaluate the reasonableness of attorney's fee awards:

> (1) the extent to which class counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; (4) the market rate for the particular field of law; (5) the burdens class counsel experienced while litigating the case; and (6) whether the case was handled on a contingency basis.[43]

"Ultimately, district courts must ensure their fee awards are 'supported by findings that take into account all of the circumstances of the case.'"[44]

---

[39] *Selk v. Pioneer Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016) (quoting *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor, Emp. Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

[40] *Id.* (quoting *Ambrosino v. Home Depot. U.S.A., Inc.,* No. 11cv1319 L(MDD), 2014 WL 1671489 (S.D. Cal. Apr. 28, 2014)).

[41] *Briseño*, 998 F.3d at 1022 (alteration in original) (quoting *Bluetooth*, 654 F.3d at 941).

[42] *In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020).

[43] *Id.*

[44] *Id.* (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002)).

8

In addition, district courts "should scrutinize agreements for 'subtle signs that class counsel have allowed pursuit of their own self-interest . . . to infect the negotiations,'" even where class certification has already occurred.[45] The Ninth Circuit has identified three such "subtle signs" of collusion:

(1) "when counsel receive[s] a disproportionate distribution of the settlement";
(2) "when the parties negotiate a 'clear sailing arrangement,'" under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and
(3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class.[46]

The existence of any of these signs in a class settlement agreement requires district courts to apply "heightened scrutiny."[47]

## IV.     ANALYSIS

### A.  *The Proposed Attorney's Fee and Costs Award is Reasonable*

The Court finds $688,875 to be a reasonable attorney's fee award for class counsel and that class counsel should be reimbursed not more than $300,000 for the litigation costs it incurred in prosecuting this case.[48] To make this determination, the Court applies the *Vizcaino* factors, which are typically used "when assessing requests for attorneys' fees calculated pursuant to the

---

[45] *Briseño*, 998 F.3d at 1022 (alteration in original) (quoting *Bluetooth*, 654 F.3d at 947).

[46] *Id.* at 1023 (quoting *Bluetooth*, 654 F.3d at 947).

[47] *Id.* at 1023–25.

[48] Dkt. 484 at 6.

percentage-of-recovery method" and cross-checks its analysis with the lodestar method.[49] Moreover, the Court does not detect any signs that Class Counsel has colluded.

At the outset, the Court finds that the requested attorney's fees for class counsel do not represent a disproportionate amount of the settlement proceeds. Where a settlement's benefit to a class is readily quantifiable, it is well within the trial court's discretion to award attorney's fees based on a percentage of the common fund in lieu of calculating the lodestar amount, provided the award does not result in a windfall for the attorneys.[50] Here, the requested attorney's fees represent one-third of the Gross Settlement Amount ("GSA").[51] One-third of the GSA is typical given the nature and claims in the case, the fact class counsel accepted the case on a pure contingency basis, and the market rate in the Ninth Circuit.[52] When cross-referencing the requested amount, the Court also notes that 33 percent of the GSA represents a fraction of what would otherwise be the lodestar amount. Class counsel spent over 11,000 hours litigating this case over the last decade and estimates the lodestar value to be well over $6 million.[53]

---

[49] *In re Optical Disk Drive Products Antitrust Litigation*, 959 F.3d at 930 (citing *Vizcaino*, 290 F.3d at 1052); *see also id.* at 929 ("District courts have discretion to choose which method they use to calculate fees, but their discretion must be exercised to reach a reasonable result.").

[50] *Bluetooth*, 654 F.3d at 942.

[51] Dkt. 484.

[52] *See, e.g.*, *Aichele*, 2015 WL 5286028, at *6 ("Attorneys regularly contract for contingent fees between 30% and 40%"); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (approving award of approximately 33.3% of fund in wage and hour class action and recognizing such award as falling within the "typical range of acceptable attorneys' fees in the Ninth Circuit.").

[53] Dkt. 493 at 22.

The Court also considers the extent to which class counsel achieved exceptional results for the class when assessing the reasonableness of the proposed attorney's fee award. Here, class counsel set out to recover unpaid overtime wages, and the Settlement Agreement ultimately results in a payment to each class member based on their work history with ACS. The Settlement Agreement will provide meaningful relief to the class members. Although it is not determinative, the Court finds it notable that not a single class member objected to the Settlement Agreement. The terms of the Settlement Agreement ensure that class members will receive nearly one half of the non-reversionary payment. The average class member is set to receive over $14,000, and the highest payment to a class member is estimated to exceed $60,000.[54] Further the settlement amount paid to class members represents approximately one-third of the amount the Plaintiffs seek based on ACS's time stamped records.[55] If the parties continue to litigate this case and ACS were to prevail on its pending motion for summary judgment or during trial, the class members could risk recovery altogether.

The Court also finds the risk class counsel undertook to litigate this case over the last decade weighs in favor of a determination that the requested attorney's fees are reasonable. In addition to class counsel's time, they "advanced over $270,000 of [their] own funds to cover reasonable expenses in this matter."[56] By settling this case, Plaintiffs will avoid the risk and expense of ongoing motions practice, including the pending motion for summary judgment filed

---

[54] Dkt. 494 at ¶¶ 22, 24.

[55] *Id.* at ¶¶ 15–16. Plaintiffs' calculation that they are owed $3 million based on time-stamped records includes "overtime pay, liquidated damages, and pre-judgment interest." Dkt. 484 at 10.

[56] Dkt. 484 at 16.

by ACS and an anticipated motion to decertify the class.[57] It is not unreasonable for the Plaintiffs to be concerned that a trial could be a costly endeavor without any guarantee of success.

Moreover, the Court does not detect "subtle signs that class counsel have allowed pursuit of their own self-interest . . . to infect the negotiations."[58] Here, the Court does not find that class counsel will receive a disproportionate distribution of the settlement, nor does the stipulated agreement include a "clear sailing arrangement" or a "kicker" or "reverter" clause.[59]

Based on the extensive fact and expert discovery conducted in this case and the substantive motion practice, the Court further concludes that class counsel's request to be reimbursed for its expenses up to $300,000 is reasonable.

Based on the above analysis, the Court determines class counsel's fee and costs request is reasonable and **GRANTS** Plaintiffs' Attorney's Fees Motion at Docket 484.

### B. *The Settlement Agreement is fair, reasonable, and adequate pursuant to Rule 23(e)*

The Court finds that the Settlement Agreement meets both the Ninth Circuit's *Hanlon* factors and the Rule 23(e) criteria.

#### 1. The *Hanlon* Factors

All but one of the *Hanlon* factors weigh heavily in favor of a conclusion that the Settlement Agreement is fair, reasonable, and adequate. Factors (1) and (2), the strength of the plaintiffs' case and the risk, expense, complexity, and likely duration of further litigation, weigh in favor of settlement. The parties have been litigating this case since 2012. As the Plaintiffs argue, a trial

---

[57] *Id.* at 11.

[58] *Briseño*, 998 F.3d at 1022 (alteration in original) (quoting *Bluetooth*, 654 F.3d at 947).

[59] *Id.* at 1023 (quoting *Bluetooth*, 654 F.3d at 947).

would expose them to substantial risks because ACS continues to contest liability and damages and ACS has threatened to move to decertify the class.[60] If the case did not settle, the parties would face a pending motion for summary judgment and an estimated four-week trial.[61] By settling this case, the Plaintiffs avoid the risk and expense of further litigation, which would likely cut into any hypothetical recovery class members may ultimately receive. The plaintiffs concede that the resources required to further litigate these issues "could very well outweigh any added recovery obtained through continued litigation."[62] Settlement appears to present meaningful monetary compensation to the class members while also avoiding additional costs and the risk of loss at trial. Settlement at this time therefore satisfies *Hanlon* factors (1) and (2).

Factor (3), the risk of maintaining class action status throughout the trial, also weighs in favor of settlement. Ongoing litigation could risk class decertification as ACS has threatened.[63] Settlement obviates any such risk and satisfies factor (3).

The Court also finds that factor (4), the amount offered in settlement, weighs in favor of settlement. As the Court has already noted in this order, the Settlement Agreement offers an average pre-tax award of $14,000 to class members, with the largest individual payment to exceed $60,000.[64] Plaintiffs assert this amount provides "meaningful redress" to the class members.[65]

---

[60] Dkt. 493 at 13–15; *see also* Dkt. 459 at 21–35 (ACS Motion for Summary Judgment).

[61] *Id.*

[62] Dkt. 493 at 15.

[63] *Id.* at 14.

[64] *Id.*; Dkt. 495 at ¶ 20.

[65] Dkt. 493 at 15.

13

Plaintiffs also argue that the $2,087,050 sum is fair, reasonable, and adequate when viewed in total. After receiving ACS's expert report on damages and using only time-stamped work data, Plaintiffs' damages expert estimated the class members' total FLSA and AWHA damages to be approximately $3 million, including liquidated damages and pre-judgment interest.[66] Plaintiffs argue that the proposed settlement amount is fair as a whole because it comprises approximately 70 percent of their damages expert's $3 million estimate and approximately 25 percent of the best-case scenario $8.5 million estimate. Ninth Circuit courts have found settlement agreements comprising between one and 35 percent of the total damages to be fair settlement amounts.[67]

Next, the Court finds clear evidence that Factor (5), the extent of discovery completed and the stage of the proceedings, weighs in favor of final approval. Plaintiffs have litigated this case for nearly ten years. The parties completed extensive fact discovery and were approaching the end of expert discovery.[68] Over the course of this case the parties collectively produced over 190,000 pages of documents and conducted at least 30 depositions, with Plaintiffs conducting 18.[69] Given the extensive discovery completed, factor (5) weighs in favor of final approval.

Finally, factors (6) and (8), the experience and views of counsel and the reaction of class members to the proposed settlement, weigh in favor of final approval. The Court has repeatedly recognized that class counsel are experienced and support the Settlement Agreement.[70] As experienced class counsel, the Court finds that their opinions and recommendations regarding the

---

[66] Dkt. 494 at ¶¶ 33–34.

[67] *Id.* at 16–18.

[68] Dkt. 494 at ¶ 30; *see also* Dkt. 493 at 18 (quoting Dkt. 480 at 2).

[69] Dkt. 494 at 8.

[70] *Id.* at 18 (quoting Dkt. 480 at 2).

fairness of class settlements are entitled to "great" or "considerable weight."[71] Separately, none of the 74 class members object to the settlement, and only one class member has requested exclusion from it. Even factoring in the single exclusion request, the settlement will feature a 98.5 percent participation rate.[72] This participation rate constitutes "a resounding endorsement of the Settlement Agreement and counsels heavily in favor of granting final approval."[73] Because no class members object to the settlement and only one member has opted out, the class members' reaction to the settlement in this case is substantially positive. Factors (6) and (8) therefore weigh in favor of final approval.

Finally, the Court notes that factor (7), the presence of a governmental participant, does not apply to its analysis.

### 2. Rule 23(e)

The settlement also satisfies the remaining Rule 23(e) criteria not contemplated in the *Hanlon* factors. First, the class representatives and class counsel have adequately represented the class members. In its 2018 order certifying the class, the Court found that Plaintiffs and class counsel would adequately represent the class members.[74] In the absence of new conflicts of interest or lack of diligent representation, this criterion is met. Second, there is no indication that the parties failed to negotiate at arm's length. The parties reached a settlement following a two-day mediation after years of litigation.[75] Third, the relief appears adequate when considering the costs, risks, and

---

[71] *Id.* at 19.

[72] *Id.* at 7.

[73] Dkt. 493 at 20.

[74] Dkt. 300 at 27–28.

[75] Dkt. 494-1 ¶ at 41 (Joint Stipulation of Class Settlement and Release).

15

delay of trial and appeal. In large part, the Plaintiffs will obtain the relief they initially sought—monetary damages in the form of "unpaid wages and liquidated damages" pursuant to FLSA and AWHA, pre- and post- judgment interest, and attorney's fees and costs.[76] The Settlement Agreement provides monetary relief to the Plaintiffs and attorney's fees and expenses.[77] Fourth, there is no indication that the method of distributing class members' payments will be ineffective. In fact, the Settlement Agreement appears to maximize payments to class members.[78] The settlement administrator will calculate and mail each class member their settlement payment, including any redistributions of other members' uncashed checks, without requiring class members to file claims.[79] Two rounds of distribution of settlement payments are intended to maximize payments to class members. Finally, as the Court found above, class counsel's requested attorney's fees are reasonable.

Consistent with the Court's order granting Rule 23 class certification in August 2018,[80] but for settlement purposes only, the Court issues the following findings with regards to the Rule 23 Class:

a.  Plaintiffs satisfy the numerosity requirement under Federal Rule of Civil Procedure 23(a)(1);

b.  Plaintiffs satisfy the commonality requirement under Federal Rule of Civil Procedure 23(a)(2);

---

[76] Dkt. 52 at 19–20.

[77] Dkt. 494-1 at 12–21.

[78] *See* Dkt. 495-1 (Notice of Settlement).

[79] Dkt. 478-1 at 12–15; Dkt. 493 at 22.

[80] *See* Dkt. No. 300.

c. Plaintiffs satisfy the typicality requirement under Federal Rule of Civil Procedure 23(a)(3);

d. Plaintiffs satisfy the adequacy requirement under Federal Rule of Civil Procedure 23(a)(4); and

e. Plaintiffs satisfy the predominance and superiority requirements under Federal Rule of Civil Procedure 23(b)(3).

For purposes of settlement only, pursuant to Federal Rule of Civil Procedure 23, the Court approves final certification of the Rule 23 Class, defined as:

> All current and former full-time exempt employees who worked for ACS in the job position which is currently titled "Client Account Manager (I, II, or III)" or "Sr. CAM" (formerly known as "Account Executive" or, in the case of the Carrier/Federal group, "Senior Manager"), in the ACS Anchorage office at any point between April 30, 2010 and March 14, 2019, with the exception of Sean Lindamood.

### C. The Settlement Agreement Comports with the FLSA

The Court also approves the Settlement Agreement pursuant to the FLSA. The framework for evaluating FLSA settlements is "less discrete" than for Rule 23 class actions. The FLSA requires courts to evaluate whether a proposed resolution is a fair and reasonable resolution of a bona fide dispute. The Court previously certified Plaintiffs' conditional collective action class under the FLSA.[81] The Court now independently finds that the Settlement Agreement represents a fair and reasonable resolution of a bona fide dispute. First, the parties insist there remain "some doubt . . . that the plaintiffs would succeed on the merits" at trial.[82] ACS continues to contest liability and damages based on legal and fact-based theories as outlined in its unresolved motion

---

[81] *Selk*, 159 F. Supp. 3d at 1172 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1355).

[82] *Id.* (quoting *Collins v. Sanderson Farms*, 568 F. Supp. 2d 714, 719–20 (E.D. La. 2008)).

for summary judgment.[83] Second, based on the Court's Rule 23 analysis above, the Court finds

that the stipulated agreement represents a fair and reasonable resolution of the case. Furthermore,

it is not apparent that the Plaintiffs will succeed on the merits or receive a better recovery if the

case proceeds to trial.[84]

Because there remains a bona fide issue and the stipulated settlement represents a fair and

reasonable resolution, the Court **APPROVES** the Settlement Agreement pursuant to the FLSA.

The Court makes the following findings for settlement purposes only:

The FLSA Collective Members share a similar issue of law or fact material to the disposition of their FLSA claims, including the shared issue of whether ACS misclassified them as exempt from overtime under the FLSA.

For purposes of settlement only, pursuant to 29 U.S.C. § 216(b), the Court also approves

final certification of the FLSA Collective Action, defined as:

All current and former full-time exempt employees who worked for ACS in the job position which is currently titled "Client Account Manager (I, II, or III)" or "Sr. CAM" (formerly known as "Account Executive" or, in the case of the Carrier/Federal group, "Senior Manager"), in the ACS Anchorage office who filed a consent to join form to participate in the FLSA collective action and neither subsequently withdrew from the collective action nor were removed from the FLSA collective action by the Court for non-responsiveness.

### D. The Class Representative Service Awards are Reasonable

The Court finds the proposed service/incentive awards—$30,000 for Peterson and $15,000

for Shephard—are reasonable. Incentive awards "are discretionary[] and are intended to

compensate class representatives for work done on behalf of the class, to make up for financial or

reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness

---

[83] *See generally* Dkt. 459.

[84] *See id.*

to act as a private attorney general."[85] "A class representative must justify an incentive award through 'evidence demonstrating the quality of plaintiff's representative service,' such as 'substantial efforts taken as class representative to justify the discrepancy between [their] award and those of the unnamed plaintiffs.'"[86]

Peterson, the original named plaintiff, initially tried to resolve her dispute with ACS without judicial involvement.[87] But when ACS denied her request, Peterson filed a charge with the Alaska Department of Labor and Workforce Development.[88] Ultimately, Peterson located class counsel and filed this suit.[89] Throughout the course of the litigation, Peterson (1) sat for a full-day deposition; (2) helped class counsel prepare for and attended depositions, (3) "worked extensively" with class counsel to prepare declarations in support of the FLSA conditional certification and Rule 23 class certification motions, and (4) participated in three days of mediation.[90] In her sworn affidavit, Peterson also asserts that her participation in the case curtailed her opportunities to find telecommunications employment in Alaska.[91]

---

[85] *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

[86] *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (quoting *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008)).

[87] *Id.* at 26.

[88] Dkt. 493 at 25–26; Dkt. 496 (Peterson Declaration).

[89] Dkt. 493 at 25–26; Dkt. 496.

[90] Dkt. 496 at 4-5.

[91] *Id.* at 29; *see also* Dkt. 300 at 27–28.

Shephard joined this case as an Opt-in Plaintiff more than six years ago and was later designated a Class Representative in August 2018.[92] During her involvement in this case, she sat for a deposition, responded to discovery requests, prepared a declaration in support of the class certification motion, provided class counsel with information related to the prosecution of this case, and attended mediation.[93]

It is within the Court's discretion to award service/incentive awards.[94] It is clear that the class representatives both performed valuable work on behalf of the class by sitting for depositions, participating in mediation, assisting class counsel with discovery, and preparing affidavits. It is further evident that Peterson has been the driving force behind this lawsuit. And even before this lawsuit was filed, Peterson took the initiative to try to resolve the dispute without judicial resources, both by using ACS's internal dispute resolution processes and by seeking the assistance of the State of Alaska.[95] The Court also finds that as the lead plaintiff, Peterson has risked her professional reputation and for a period of time struggled to find a job in the telecommunications industry.[96] Moreover, the Court finds that the proposed service awards are not excessive relative to the average estimated settlement award for class members. Here, the incentive awards represent only two percent of the total settlement or approximately four percent of the net settlement to class members. Class members are expected to receive an average pre-tax award of $14,000.[97] Finally,

---

[92] Dkt. 493 at 28–30; Dkt. 497 (Shephard Declaration).

[93] Dkt. 493 at 29; Dkt. 497 at 4.

[94] *Rodriguez*, 563 F.3d at 958.

[95] Dkt. 496 at 4.

[96] *Id.* at 5.

[97] Dkt. 493 at 14; Dkt. 495 at ¶ 20.

none of the class members have objected to the proposed service awards, therefore, the Court **APPROVES** of a $30,000 service award for Peterson and $15,000 service award for Shephard.

### E. The Court Approves the Fees and Costs sought for the Settlement Administrator

Next, the Court approves a payment of $12,500 to CPT as the settlement administrator. The parties initially agreed that the settlement administrator's costs would not exceed $15,000. Given that to date the settlement administrator has performed its job of notifying the parties about the negotiated settlement and presumably will distribute payments pursuant to the terms of the Settlement Agreement, the Court **APPROVES** a final amount of $12,500 for settlement administrator costs.[98]

### F. The Court Finds the Cy Pres Beneficiary Award Fair and Reasonable

The Court finds that the distribution of any residual monies to Alaska Legal Services Corporation ("ALSC") for the provision of legal services on behalf of employees is an appropriate *cy pres* remedy. Therefore, the Court **APPROVES** the *cy pres* distribution provided for in the Settlement and finds that it is fair and reasonable.

### G. The Court Finds Class member Brown's Request for Exclusion Valid

Finally, the Court grants the parties request to determine class member Brown's late request for exclusion from the settlement valid. Brown initially emailed CPT her first request to opt-out of the settlement on November 23, 2021. It was not until December 6 that CPT notified Brown that her request was invalid because she had not "personally signed" the request, as required by the Settlement Agreement.[99] Brown then mailed a signed request on December 21, after the

---

[98] Dkt. 494-1 at ¶ 91.

[99] *Id.*

opt-out deadline.[100] Although Brown's valid request was late, the parties agree that Brown's request to opt-out should be deemed valid.[101]

The Court finds that the parties were on notice of Brown's intent to request exclusion, neither party opposes Brown's request for exclusion, and her exclusion will not negatively impact the other class members. Accordingly, the Court **GRANTS** the request to exclude Andra Brown from this settlement.

## V. CONCLUSION

For the above reasons, Plaintiffs' Motion for Final Approval of the Class Settlement at Docket 493 and Plaintiffs' Motion for Attorneys' Fees and Costs at Docket 484 are hereby **GRANTED** in their entirety. The Court hereby **APPROVES** the Settlement Agreement as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e) and as meeting the applicable standards for settlement under the FLSA. The Settlement is approved.[102] The terms of the Settlement Agreement at Docket 494-1 are incorporated and made part of this Order, as if copied herein, and shall be effective, implemented, and enforced as provided in the Settlement Agreement. The Parties to the Settlement Agreement are directed to effectuate its terms.

IT IS HEREBY ORDERED that as no objection to the Settlement has been filed, the Effective Date of the Settlement is forty (40) calendar days after the date of entry of this Order.

---

[100] Dkt. 495-3 (Brown Letter) (the request was late because Brown was travelling).

[101] Dkt. 493 at 7; Dkt. 494 at ¶ 60.

[102] The Court, however, does not retain continuing jurisdiction over issues that may arise related to the interpretation, implementation, and enforcement of the Settlement Agreement.

IT IS HEREBY ORDERED that, upon the Effective Date of the Settlement, Settlement Class Members will fully release and discharge the Released Parties from the Released Claims, as defined below:

    a.  "Released Claims" means the following: Any and all claims that were or could have been pled in the Complaint under state or federal wage and hour laws (including without limitation, the Alaska Wage and Hour Act and the federal Fair Labor Standards Act), arising out of the same transactions, series of connected transactions, occurrences, or nucleus of operative facts that form the basis of the claims that were alleged in the Complaint, including without limitation, any claims that Settlement Class Members were not paid overtime when working greater than eight hours in a day or forty hours in a week for ACS, as well as all derivative claims for pre-judgment and post-judgment interest, penalties, liquidated damages, and attorneys' fees and costs. However, "Released Claims" does not include or cover claims relating to any actions or omissions occurring after the Preliminary Approval Date.

///

//

/

23

IT IS HEREBY ORDERED that the Court enters final judgment on the Class Claims in accordance with the terms of the Settlement and this Order, and the entire Lawsuit is dismissed with prejudice and without costs to any Party.[103] By virtue of this Order, all Settlement Class Members, including Class Representatives Peterson and Shephard, are bound by the Settlement Agreement and permanently barred from prosecuting Released Claims against any of the Released Parties, as those terms are defined in the Settlement and this Order.

IT IS SO ORDERED.

DATED at Anchorage, Alaska this 14th day of March, 2022.

*/s/   Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[103] By dismissing this case with prejudice, the Court closes this matter and enters final judgment. Any party seeking judicial assistance with matters related to the interpretation, implementation, or enforcement of the Settlement Agreement will be required to file a new cause of action.

24